| CIVIL MINUTES – GENERAL | | | ‘O’ |
|---|---|---|---|
| Case No. | 2:18-cv-05422-CAS-GJSx | Date | December 26, 2018 |
| Title | GAIL THOMPSON v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**  (IN CHAMBERS) - DEFENDANT TRANSAMERICA'S MOTION TO DISMISS (Filed September 19, 2018, dkt. [45])

## I.    INTRODUCTION

On June 18, 2018, plaintiff Gail Thompson, as an individual and as power of attorney for Lois Thompson, filed a class action complaint against Transamerica Life Insurance Company ("Transamerica") challenging monthly deduction rate ("MDR") increases for Transamerica TransUltra 115 and TransSurvivor 115 universal life policies (collectively, the "Policies"). Dkt. 1 ("Compl."). Specifically, the Complaint alleges claims for: (1) breach of contract; (2) contract breach of the implied covenant of good faith and fair dealing; (3) tortious breach of the duty of good faith and fair dealing; (4) violation of California's Unfair Competition Law ("UCL"), pursuant to Cal. Bus. & Prof. Code §§ 17200, et seq.; (5) declaratory relief; and (6) elder abuse pursuant to Cal. Welf. & Inst. Code § 15610, et seq. Id.

On September 19, 2018, Transamerica moved to dismiss this action for lack of personal jurisdiction and improper venue, and to dismiss plaintiff Lois Thompson and plaintiffs' claims with respect to TransUltra 115 Policies for lack of standing. Dkt. 45-1 ("Mot."). Transamerica also moved to dismiss each of plaintiffs' claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Id. On October 18, 2018, the Court granted the parties' stipulation to conduct limited jurisdictional discovery. Dkt. 50. Plaintiffs filed an opposition on November 19, 2018. Dkt. 59-2 ("Opp'n"). Transamerica filed a reply on December 10, 2018. Dkt. 72 ("Reply"). On December 14, 2018, plaintiffs voluntarily dismissed Lois Thompson's claims under Federal Rule of Civil Procedure 41(a)(1). Dkt. 79.

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-05422-CAS-GJSx | Date | December 26, 2018 |
| Title | GAIL THOMPSON v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

The Court held a hearing on December 17, 2018.  Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.   BACKGROUND

### A.      Background on Universal Life Policies

Unlike whole life insurance policies that require fixed monthly premium payments, the premiums required for universal life policies are flexible and need only be sufficient to cover the monthly cost of insurance charges.  Id. ¶ 21.  Premium payments are deposited in an accumulation account from which monthly deduction and expense charges are deducted.  Id.  The accumulation account is credited with monthly interest at a non-guaranteed declared rate, but not less than the guaranteed interest rate specified in the policy contract.  Id.  Universal life insurance policies allow policyholders to modify the amount and frequency of premium payments as long as their policy contains sufficient cash value to cover monthly deductions.  Id.

### B.      Plaintiff's Life Insurance Policy

On or about July 1, 2000, Transamerica issued a TransSurvivor 115 universal life insurance policy to joint insureds Lois Thompson and her husband, Emory Thompson, with a face amount of $500,000.  Compl. ¶ 10.  Plaintiff Gail Thompson is the owner and primary beneficiary of the TransSurvivor 115 policy.  Id.  The policy was issued from Transamerica's Los Angeles, California office.  Id., Ex. A, Thompson TransSurvivor 115 Policy ("Policy").

### C.      The Terms of Transamerica's TransSurvivor 115 and TransUltra 115 Life Insurance Policies

The TransSurvivor 115 product is a joint life universal policy, and the TransUltra 115 product is a single life universal policy (collectively, "Policies").  Compl. ¶ 27.  The Policies are flexible-premium, universal life policies that permit the policy owner to determine the premium payment amounts after the expiration of an initial 5-year period during which specified minimum premium payments are required.  Id.  Policyholders can adjust both the amount and frequency of their premium payments so long as the Policy accumulation value is sufficient to cover the monthly deduction charges due under the Policies.  Id. ¶ 28. The Policies generally include a surrender period and mature at age

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:18-cv-05422-CAS-GJSx | Date | December 26, 2018 |
| Title | GAIL THOMPSON v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

115. Id. Under the uniform provisions of the Policies, an "Accumulation Value" is established for each Policy, into which the policyholder's premium payments are deposited. Id. at 29. The accumulation account earns interest at a declared interest rate not less than the guaranteed interest rate of 4% specified in the Policy. Id.

At the end of each month, Transamerica withdraws a monthly deduction from the account. Id. ¶ 30. The monthly deduction is determined by adding: (a) the application of a "Monthly Deduction Rate" ("MDR") to the difference between the death benefit and the accumulation value at the beginning of the year; (b) the monthly deduction for any policy riders; and (c) a policy fee. Id. The MDR is the most costly and important component of the monthly deduction charge. Id. ¶ 31.

The Policies included an option for consumers to purchase a "No-Lapse Endorsement." Id. ¶ 32. Under the No-Lapse Endorsement, Transamerica promised to provide guaranteed coverage ensuring that the Policy would remain in effect even if the Policy's accumulation value was insufficient to cover the required monthly deductions withdrawn from the accumulation account. Id. ¶ 3. In order for the No-Lapse Endorsement to apply, the policyholder must pay a specified premium, for a specified period extending to age 100. Id. ¶ 32. If the policyholder fails to timely pay the specified premium in any month, then the no-lapse guarantee terminates, in which event the Policy will lapse unless there is sufficient account value and/or additional premiums are paid to cover the current monthly deduction charges. Id.

### D.     Transamerica's Increase to the Monthly Deduction Rate

The Policies contain the same provisions that constrain Transamerica's discretion to set or increase the MDRs in several different ways. Id. ¶ 38.

First, the Policies contain the following contractual provisions limiting Transmerica's ability to increase the MDRs (the "Cost Factor Provision"):

> Any change in the monthly deduction rates will be prospective and will be subject to our expectations as to future cost factors. Such cost factors may include but are not limited to: mortality; expenses; interest; persistency; and any applicable federal, state and local taxes.

Id. ¶ 39. Second, the Policies with No-Lapse Endorsements contain the following

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-05422-CAS-GJSx | Date | December 26, 2018 |
| Title | GAIL THOMPSON v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

additional contractual limitation on Transamerica's ability to increase the MDRs (the "Non-Recoupment Provision"):

> We do not distribute past surplus or recover past losses by changing the monthly deduction rates.

Id. ¶ 40. Thus, plaintiff contends that, under the Policies, Transamerica may not increase MDRs to recoup past losses, to avoid future losses, to make the Policies more profitable than assumed at issuance, to avoid its obligations to pay guaranteed interest, or to avoid, subsidize, or defray the costs associated with its own no-lapse guarantees. Id. ¶ 43. Nor may Transamerica increase the MDRs when there is no reasonable expectation of future adverse changes in legitimate cost factors. Id.

Beginning in August of 2017, Transamerica announced the 2017 MDR Increases. Id. ¶ 45. Certain Policies were subject to a level rate increase of between 47% and 58%, while others were subject to a 39% increase on the next anniversary date, followed by another 39% increase in each of the two years, compounded each year. Id. ¶ 46. In the notices Transamerica provided to plaintiff and policyholders, Transamerica stated that the increases are "in addition to the customary increases that are associated with age" and that the increases are attributable to Transamerica's "current expectations about our future costs to provide this coverage." Id. ¶ 47. However, plaintiff alleges that the 2017 MDR Increases impermissibly operate to recoup losses in violation of the Non-Recoupment Provision, are not attributable to Transamerica's true expectations about future cost factors allowable under the Cost Factor Provision, and were adopted by Transamerica in bad faith as a pretext to avoid its own obligations under the Policies and the No-Lapse Endorsement by causing elderly policyholders to lapse or surrender their Policies. Id.

## III. LEGAL STANDARD

### A. Rule 12(b)(1)

A motion to dismiss an action pursuant to Fed. R. Civ. P. 12(b)(1) raises the objection that the federal court has no subject matter jurisdiction over the action. This defect may exist despite the formal sufficiency of the allegations in the complaint. T.B. Harms Co. v. Eliscu, 226 F. Supp. 337, 338 (S.D.N.Y. 1964), aff'd 339 F.2d 823 (2d Cir. 1964). When considering a Rule 12(b)(1) motion challenging the substance of jurisdictional allegations, the Court is not restricted to the face of the pleadings, but may

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL            'O'

| Case No. | 2:18-cv-05422-CAS-GJSx | Date | December 26, 2018 |
| Title | GAIL THOMPSON v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

review any evidence, such as declarations and testimony, to resolve any factual disputes concerning the existence of jurisdiction. See McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988).

### B.    Rule 12(b)(2)

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of establishing that jurisdiction is proper." Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008) (citation omitted). Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1127 (9th Cir. 2010) (quoting Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006). The plaintiff cannot simply rely on the "bare allegations" of its complaint; however, uncontroverted allegations in the complaint must be taken as true, and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).

Generally, personal jurisdiction exists if (1) it is permitted by the forum state's long-arm statute and (2) the "exercise of that jurisdiction does not violate federal due process." Pebble Beach, 453 F.3d at 1154–55. "California's long-arm statute is co-extensive with federal standards, so a federal court may exercise personal jurisdiction if doing so comports with federal constitutional due process." Boschetto, 539 F.3d at 1015. "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" Schwarzenegger, 374 F.3d at 801 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

### C.    Rule 12(b)(3)

Pursuant to Rule12(b)(3), a defendant may move to dismiss a complaint for improper venue. If an action is filed in the "wrong division or district" a court may dismiss the action or, "if it be in the interest of justice" transfer the action to an appropriate district or division. 28 U.S.C. § 1406(a). In federal courts, the determination of where venue is appropriate "is governed entirely by statute." Zumba Fitness, LLC v. Brage, No. CV 11-5361-GHK (CWx), 2011 WL 4732812 (C.D. Cal. Oct. 6, 2011) (citing

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:18-cv-05422-CAS-GJSx | Date | December 26, 2018 |
| Title | GAIL THOMPSON v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Leroy v. Great W. United Corp., 443 U.S. 173, 181 (1979)). When deciding a motion to dismiss for improper venue, unlike a Rule 12(b)(6) motion, the court need not accept the pleadings as true and may consider facts outside the pleadings. See R.A. Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996). Once a defendant raises an objection to venue, the plaintiff bears the burden of establishing that the selected venue is proper. Rio Properties, Inc. v. Rio Intern. Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002). To defeat a motion to dismiss for improper venue, the plaintiff need only make a prima facie showing of proper venue.

### D. Rule 12(b)(6)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. (internal citations omitted).

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a

| CIVIL MINUTES – GENERAL | | 'O' | |
|---|---|---|---|
| Case No. | 2:18-cv-05422-CAS-GJSx | Date | December 26, 2018 |
| Title | GAIL THOMPSON v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV.     DISCUSSION

### A.     Standing

Transamerica contends that plaintiff Gail Thompson lacks standing to bring claims on behalf of persons owning TransUltra 115 Policies because Thompson owns a TransSurvivor 115 Policy. Mot. at 11. Plaintiff responds that the TransSurvivor and TransUltra Policies contain the same constraints on Transamerica's ability to increase the MDRs, and that the scope of the putative plaintiff class remains to be determined in accordance with Federal Rule of Civil Procedure 23. Opp'n at 3. The parties essentially disagree about whether the disjuncture between plaintiff's claim and the claims of absent class members is a standing issue or a class certification issue. The Ninth Circuit's decision in Melendres v. Arpaio, 784 F.3d 1254 (9th Cir. 2014), controls and supports plaintiff's position. In Melendres, the Ninth Circuit explained the difference between a "standing approach" and a "class certification approach" to resolve the dissimilarities between the claims of named and unnamed plaintiffs:

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:18-cv-05422-CAS-GJSx | Date | December 26, 2018 |
| Title | GAIL THOMPSON v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

The "standing approach" treats dissimilarities between the claims of named and unnamed plaintiffs as affecting the "standing" of the named plaintiff to represent the class. In other words, if there is a disjuncture between the injuries suffered by named and unnamed plaintiffs, courts applying the standing approach would say the disjuncture deprived the named plaintiff of standing to obtain relief for the unnamed class members. The "class certification approach," on the other hand, holds that once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met.

Id. at 1261–62 (internal quotation marks and citations omitted). After this discussion, the Ninth Circuit adopted the class certification approach and explained that "representative parties who have a direct and substantial interest have standing," and "the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation." Id. at 1262 (quoting 7AA Charles Alan Wright Et al., Federal Practice & Procedure § 1785.1 (3d ed.)). The Ninth Circuit specifically noted that under the class certification approach, "any issues regarding the relationship between the class representative and the passive class members—such as dissimilarity in injuries suffered—are relevant only to class certification, not to standing." Id. at 1262 (internal citations and quotation marks omitted).

Several district courts in the Ninth Circuit have since relied on Melendres to dismiss challenges to a plaintiff's standing to bring claims on behalf of absent class members concerning different products or investments. See, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Products Liab. Litig., MDL No. 2672 CRB(JSC), 2017 WL 3058563, at *4 (N.D. Cal. July 19, 2017) (explaining that Melendres foreclosed the defendants' argument that plaintiffs lacked standing to bring claims on behalf of persons or entities who purchased bonds in different tranches or offerings); Johnson v. Providence Health & Servs., No. C17-1779-JCC, 2018 WL 1427421, at *4 (W.D. Wash. March 22, 2018) (finding that the plaintiff was only required to establish standing with respect to the mutual fund that she invested in, and that the defendants' argument that the plaintiff did not have standing to assert claims based on mutual funds that she did not personally invest in "deal more with the issue of [the plaintiff's] adequacy as the named-plaintiff"); Johnson v. Fujitsu Tech. and Bus. of Am., Inc., 250 F. Supp. 3d 460, 465 (N.D. Cal. 2017) (declining to determine whether the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-05422-CAS-GJSx | Date | December 26, 2018 |
| Title | GAIL THOMPSON v. TRANSAMERICA LIFE INSURANCE COMPANY |

plaintiffs had standing in an ERISA retirement plan case to bring claims on behalf of putative class members who invested in options that the plaintiffs did not invest in because the defendants did not dispute that plaintiffs had standing to bring their own claims under ERISA); Stotz v. Mophie Inc., No. CV 16-8898-GW(FFMx), 2017 WL 1106104, at *5–6 (C.D. Cal. Feb. 27, 2017) ("whether Plaintiffs may be allowed to present claims on behalf of others in the class who have purchased similar, but not identical, products will therefore be determined . . . at the motion for class certification stage").

To the extent that Melendres may still require at least some threshold showing of similarity between the claims of the named plaintiff and claims on behalf of absent class members for purposes of determining standing, plaintiff easily meets this threshold. See Min Sook Shin v. Umeken, U.S.A., Inc., No. SACV 17-00315-CJC(SSx), 2017 WL 6885378, *4 n.3 (C.D. Cal. June 1, 2017) (holding that "Melendres is consistent with district court cases requiring a threshold showing of similarity to find that the named plaintiff has standing to assert claims based on products the named plaintiff did not encounter"). Plaintiff alleges that the TransSurvivor 115 and TransUltra 115 Policies are both universal life products with secondary guarantee benefits that permit the policy owner to determine the premium payment amounts after the expiration of an initial 5-year period. Compl. ¶¶ 27, 50. Transamerica allegedly used comparable interest assumptions in pricing both policies because they "were part of the same product line priced during the same interest rate environment, supported by the same classes of assets with similar durations." Id. ¶ 69. Both Policies contain identical limitations on Transamerica's discretion in increasing the MDRs. Id. ¶¶ 39–44. Plaintiff alleges that Transamerica breached those identical terms and provisions by increasing the MDRs to recoup past losses. Id. ¶¶ 53, 113. Although the policies and MDR increases may differ in some respects, these differences do not impact plaintiff's standing now but they may be relevant at the class certification stage.

Transamerica strongly resists this conclusion and argues that a breach of contract case requires a different analysis because a plaintiff can never have standing to sue on behalf of a contract that she is not a party to. See Reply at 3. However, the cases cited by Transamerica are inapposite as they either concern an individual action, pre-date Melendres or otherwise do not apply Melendres because they are from another circuit, or concern an entirely different issue of whether a plaintiff can bring claims on behalf of a class against a *different* defendant based on a contract to which the plaintiff is not a party. See id. Transamerica has not provided any compelling reason for this Court to apply a

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-05422-CAS-GJSx | Date | December 26, 2018 |
| Title | GAIL THOMPSON v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

more stringent standing analysis to plaintiff's claims on behalf of absent class members merely because she asserts breach of contract claims.

Accordingly, Transamerica's motion to dismiss plaintiff's claims based on the TransUltra 115 Policy is **DENIED**.

Transamerica also contends that plaintiff Lois Thompson lacks standing to bring her claims because she is neither an owner of or a beneficiary under the Policy. Plaintiffs filed a voluntary dismissal of Lois Thompson's claims. Dkt. 79. Accordingly, Transamerica's motion to dismiss Lois Thompson for lack of standing is **DENIED** as moot.

## B.     Personal Jurisdiction

Transamerica contends that the Court lacks personal jurisdiction over the claims of putative class members who are not citizens of California because the MDR increases at issue arise out of conduct occurring outside of California. Transamerica relies on the holding in Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County, 137 S. Ct. 1773, 1781 (2017), which held that each plaintiff in a mass-tort action must establish that its claim is properly advanced in the forum state, to argue that the Court must also demonstrate specific jurisdiction with respect to each non-resident class member. Mot. at 14. Both parties cite district court decisions either extending, or declining to extend, Bristol-Myers to the claims of putative class members in a class action. The Court finds the authorities cited by plaintiff to be persuasive. See, e.g., Gasser v. Kiss My Face, LLC, No. 17-cv-01675-JSC, 2018 WL 4538729, at *2 (N.D. Cal. Sept. 21, 2018) ("It is undisputed that the Court has personal jurisdiction of the named plaintiffs from California and New York . . . the Court does not understand how it can lack personal jurisdiction of persons who are not yet . . . parties to this action, that is, the putative class members."); In re Morning Song Bird Food Litig., No. 12cv01592 JAH-AGS, 2018 WL 1382746, at *5 (S.D. Cal. Mar. 19, 2018) ("While the claims of the non-resident named plaintiffs were pertinent to the issue of specific jurisdiction in Bristol-Myers, 'claims of unnamed class members are irrelevant to the question of specific jurisdiction.'") (citation omitted); Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc., No. 17-cv-00564 NC, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017) (declining to extend the holding in Bristol-Myers to class actions).

Accordingly, the Court declines to extend Bristol-Myers to this case. As Transamerica does not dispute that this Court may exercise personal jurisdiction over

| | CIVIL MINUTES – GENERAL | | 'O' | |
|---|---|---|---|---|
| Case No. | 2:18-cv-05422-CAS-GJSx | Date | December 26, 2018 | |
| Title | GAIL THOMPSON v. TRANSAMERICA LIFE INSURANCE COMPANY | | | |

plaintiff, the Court **DENIES** Transamerica's motion to dismiss for lack of personal jurisdiction.

## C.     Venue

Under the general venue statute, 28 U.S.C. § 1391, a civil action may be brought in any of the following:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). For venue purposes, corporations (and other entities that can sue or be sued in their own names) are "deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Moreover, in states with multiple districts such as California, a corporate defendant is deemed to "reside" in any district in which its "contacts" would subject it to personal jurisdiction at the time an action is commenced, if that district were a separate state; or, if there is no such district, in whichever district it has the "most significant" contacts. 28 U.S.C. § 1391(d).

Transamerica argues that venue is not proper in the Central District because plaintiff resides in the Southern District and the events giving rise to her claims occurred outside of California and primarily in Iowa. Mot. at 15. Plaintiff argues that because Transamerica did not contest that the Court has personal jurisdiction over it with respect to her claims, it is therefore subject to personal jurisdiction in the Central District for purposes of venue. Opp'n at 15. Transamerica does not respond to this argument in its reply.

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-05422-CAS-GJSx | Date | December 26, 2018 |
| Title | GAIL THOMPSON v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Transamerica waived its personal jurisdiction defense with respect to Thompson's claim because it omitted this defense in its motion to dismiss. See Fed. R. Civ. P. 12(h) and (g) ("A party waives any defense listed in Rule 12(b)(2)-(5) by . . . omitting it from a [Rule 12] motion" and cannot "make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier [Rule 12] motion."). And "[i]f an entity defendant waives its right to object to personal jurisdiction, it has ipso factor consented to venue . . . It is, after all, 'subject to personal jurisdiction with respect to the civil action in question.'" 14 D Wright & Miller, Fed. Prac. & Proc. Juris. § 3811.1 (4th ed.). See also AT&T Corp. v. Teliax, Inc., No. 16-cv-01914-WHO, 2016 WL 4241910, at *2 (N.D. Cal. Aug. 11, 2016) ("[B]ecause [defendant] did not contest personal jurisdiction, it is therefore 'subject to personal jurisdiction' in this district for the purposes of establishing venue"). The Court thus finds that venue is proper under § 1391(d) because Transamerica consented to venue by waiving its objection to personal jurisdiction.

Accordingly, the Court **DENIES** Transamerica's motion to dismiss for improper venue.

### D.    Failure to State a Claim

### i.    Breach of Contract

To state a claim for breach of contract under California law, a party must plead the existence of a contract, his or her performance of the contract or excuse for nonperformance, the defendant's breach, and resulting damage. Vaccarino v. MidlandNat. Life Ins., Co., 2011 WL 5593883, at *7 (C.D. Cal. Nov. 14, 2011) (citing Wall St. Network, Ltd. v. N.Y. Times Co., 164 Cal. App. 4th 1171, 1178 (2008)). Plaintiff alleges that Transamerica breached its policy contracts by increasing the MDR to avoid its obligation to pay credited interest and no-lapse obligations to plaintiff and to

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-05422-CAS-GJSx | Date | December 26, 2018 |
| Title | GAIL THOMPSON v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

recoup past losses. Plaintiff's breach of contract claim is based on violations of the "Cost Factor Provision"[1] and "Non-Recoupment Provision."[2]

Transamerica first argues that plaintiff cannot state a claim based on the allegation that Transamerica increased the MDR to avoid paying guaranteed interest because the plain language of the relevant provisions specifically allows Transamerica to consider interest when changing the MDR. Mot. at 16. To the extent plaintiff interprets these contracts to preclude consideration of interest costs in setting the MDR, the Court concludes that the Policy is not reasonably susceptible to plaintiff's interpretation. Accordingly, consistent with the Court's ruling in the Feller action, see Feller v. Transamerica Life Insurance Company, No. 2:16-cv-01378-CAS(AJWx), 2016 WL 6602561 (C.D. Cal. Nov. 8, 2016), plaintiff has failed to state a claim for liability based upon Transamerica's alleged consideration of its interest obligations in setting an MDR.

Transamerica then argues that plaintiff's breach of contract claim must be dismissed because plaintiff relies on an "actuarial meaning" rather than the plain meaning of the relevant provisions. At the pleading stage, "[w]hen reviewing whether a plaintiff has properly stated a cause of action for breach of contract, we must determine whether the alleged agreement is 'reasonably susceptible' to the meaning ascribed to it in the complaint." Hervey v. Mercury Casualty Co., 185 Cal. App. 4th 954, 964 (2010) (emphasis added) (citation omitted). "So long as the pleading does not place a clearly erroneous construction upon the provisions of the contract, in passing upon the sufficiency of the complaint, we must accept as correct plaintiff's allegations as to the meaning of the agreement." Marzec v. California Pub. Employees Ret. Sys., 236 Cal. App. 4th 889, 909 (2015) (citing Aragon–Haas v. Family Security Ins. Services, Inc., 231 Cal. App. 3d 232, 239 (1991)). Where the terms of the policy are unambiguous, the Court will not infer a limitation on defendants which is not supported by the language of the policy. See Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter

---

[1] This refers to the language: "Any change in the monthly deduction rates will be prospective and will be subject to our expectations as to future cost factors. Such cost factors may include but are not limited to: mortality; expenses; interest; persistency; and any applicable federal, state and local taxes." Compl. ¶ 39.

[2] This refers to the language: "We do not distribute past surplus or recover past losses by changing the monthly deduction rates." Compl. ¶ 40.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:18-cv-05422-CAS-GJSx | Date | December 26, 2018 |
| Title | GAIL THOMPSON v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Group 2015) ("Croskey") ¶ 4:11 ("Clear and explicit' policy language governs.") (quoting <u>Powerine Oil Co., Inc. v. Supt. Ct.</u>, 37 Cal. 4th 377, 390 (2005)).

The provisions at issue here appear to be susceptible to plaintiff's interpretation that Transamerica may not increase MDRs to recoup past losses, to avoid future losses, to make the Policies more profitable than assumed at issuances, or to avoid, subsidize, or defray the costs associated with its own no-lapse guarantees, and that Transamerica may not increase MDRs when there is no reasonable expectation of future adverse changes in legitimate cost factors. <u>See</u> Compl. ¶ 43. Plaintiff alleges that the MDR increases breached the Policies' MDR provisions because they were not based on Transamerica's actual expectations as to future cost factors but were rather based on a number of impermissible factors. Compl. ¶¶ 6, 43–44, 47, 58, 60–61, 67, 70–77.

Accordingly, with the exception of the claim dismissed above, plaintiff has stated a claim for breach of contract based upon Transamerica's alleged attempt to avoid its obligation to pay its no-lapse obligations to plaintiff and to recoup past losses. In light of the foregoing, Transamerica's motion to dismiss plaintiff's breach of contract claim is **DENIED**.

### ii.     Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff's second claim for relief asserts that defendant violated the implied covenant of good faith and fair dealing by exercising its discretion over MDR changes in bad faith. Compl. ¶ 121. Transamerica argues that this claim fails for lack of causation because plaintiff does not allege she relied on the April 5, 2018 notice letter and because the Policy specifically permits MDR changes based on future cost factors.

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." <u>Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.</u>, 2 Cal. 4th 342, 371-72 (1992). "[W]here a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing." <u>McNeary–Calloway v. JP Morgan Chase Bank, N.A.</u>, 863 F.Supp.2d 928, 956 (N.D.Cal.2012) (quoting <u>Perdue v. Crocker Nat'l Bank</u>, 38 Cal.3d 913, 923, 216 Cal.Rptr. 345, 702 P.2d 503 (1985)). Nonetheless, the covenant of good faith may not "prohibit a party from doing that which is expressly permitted by an agreement." <u>Carma</u>, 2 Cal. 4th at 374. "In short, [the covenant of good faith and fair dealing] is an implied-in-law term of the contract.

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:18-cv-05422-CAS-GJSx | Date | December 26, 2018 |
| Title | GAIL THOMPSON v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Therefore, its breach will always result in a breach of the contract, although a breach of a consensual . . . contract term will not necessarily constitute a breach of the covenant." Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1393–94, 272 Cal. Rptr. 387, 399 (Ct. App. 1990), as modified on denial of reh'g (Oct. 31, 2001). "California law requires that a claim for breach of the implied covenant of good faith and fair dealing 'go beyond the statement of a mere contract breach' and not 'rel[y] on the same alleged acts [or] simply seek the same damages or other relief already claimed in a companion contract cause of action.'" Env't Furniture, Inc. v. Bina, 2010 WL 5060381, at *3 (C.D.Cal. Dec. 6, 2010) (quoting Careau & Co. v. Sec. Pac., 222 Cal.App.3d 1371, 1395, 272 Cal.Rptr. 387 (1990)). To allege a separate claim for breach of the covenant of good faith and fair dealing, plaintiff must allege bad faith conduct, "which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." Careau, 222 Cal. App. 3d at 1395.

Transamerica's arguments fail because plaintiff adequately alleges that defendant breached the covenant of good faith and fair dealing by relying on impermissible factors to increase the MDRs in bad faith. Moreover, plaintiff has adequately pleaded that Transamerica's bad faith conduct caused her harm by depriving her of the benefits of her policy, including the true accumulation value of her account and the guaranteed minimum interest rate on that account. Compl. ¶¶ 5, 26, 82, 87, 89, 113, 130.

Transamerica also argues that plaintiff cannot state a claim for breach of the implied covenant because the No-Lapse Endorsement prevents a lapse even if the accumulation value is zero. Mot. at 6, 18. Transamerica appears to be arguing that plaintiff cannot state that she was deprived of the benefit of the agreement due to the No-Lapse Endorsement. Transamerica's argument is unavailing because plaintiff's harm is not limited only to a possible lapse, but also the decrease in accumulation value and interest.

In light of the foregoing, defendant's motion to dismiss plaintiff's claim for breach of the implied covenant of good faith and fair dealing is **DENIED**.

### iii. Tortious Breach of Duty of Good Faith and Fair Dealing

Compensation for the breach of the covenant of good faith and fair dealing "has almost always been limited to contract rather than tort remedies." Foley v. Interactive Data Corp., 47 Cal. 3d 654, 683 (1988). One exception to that rule arises in breach of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                 'O'

| Case No. | 2:18-cv-05422-CAS-GJSx | Date | December 26, 2018 |
| Title | GAIL THOMPSON v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

covenant cases involving insurance policies.  Cates Constr., Inc. v. Talbot Partners, 21 Cal. 4th 28, 43 (1999).  Tort recovery in the insurance context is justified by a variety of policy reasons.  For one, "unlike most other contracts for goods or services, an insurance policy is characterized by elements of adhesion, public interest and fiduciary responsibility."  Id.  Insurance policies are also generally "not purchased for profit or advantage; rather, they are obtained for peace of mind and security in the event of an accident or other catastrophe."  Id.  And "[u]nlike other parties in contract who typically seek recourse in the marketplace in the event of a breach, an insured will not be able to find another insurance company willing to pay for a loss already incurred."  Id.; Griffin Dewatering Corp. v. Northern Ins. Co. of New York, 176 Cal. App. 4th 172, 195 (2006) ("It is important to recognize the reason for the possibility of tort, and perhaps even punitive damages on top of regular tort damages, for an insurance company's unreasonable breach of an insurance contract.  Insurance contracts are unique in that, if the insurer breaches them, the insured suffers a loss (often a catastrophic loss) that cannot, by definition, be compensated by obtaining another contract.").

        Courts have generally limited tort remedies in the insurance context to cases involving insurers who have withheld benefits due under an insurance policy.  See, e.g., Benavides v. State Farm Gen. Ins. Co., 136 Cal. App. 4th 1241, 1250 (2006) ("an insured cannot maintain a claim for tortious breach of the implied covenant of good faith and fair dealing absent a covered loss"); Progressive West Ins. Co. v. Yolo County Superior Court, 135 Cal. App. 4th 263, 279 (2005) ("[T]he essence of the tort of the implied covenant of good faith and fair dealing is focused on the prompt payment of benefits due under the insurance policy, there is no cause of action for breach of the covenant . . . when no benefits are due."); Brizuela v. Calfarm Ins. Co., 116 Cal. App. 4th 578, 592 (2004) ("The gravamen of a claim for breach of the covenant of good faith and fair dealing, which sounds in both contract and tort, is the insured's refusal, without proper cause, to compensate the insured for a loss covered by the policy."); Adams v. United of Omaha Life Ins. Co., No. 12-CV-969 (JST), 2013 WL 12114060, at *4 (C.D. Cal. Aug. 14, 2013) ("In order to state a claim for breach of the implied covenant of good faith and fair dealing by an insurer, [a] plaintiff must allege that the insurer withheld payment of an insured's claim.") (internal quotation marks and citation omitted); U.S. Bank Nat. Ass'n v. PHL Variable Ins. Co., No. 2:11-CV-09517 (ODW), 2012 WL 1525012, at *2 (C.D. Cal. Apr. 26, 2012) ("To establish tort liability against an insurer for breach of the covenant, a plaintiff must show . . . benefits due under the policy were withheld . . .").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-05422-CAS-GJSx | Date | December 26, 2018 |
| Title | GAIL THOMPSON v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

As plaintiff notes in her opposition, this Court previously sustained similar claims for tortious breach at the pleading stage in Feller, 2016 WL 6602561, DCD Partners, LLC v. Transamerica Life Ins. Co., No. 2:15-cv-03238-CAS(VBKx), 2015 WL 5050513 (C.D. Cal. Aug. 24, 2015), and EFG Bank AG, Cayman Branch v. Transamerica Life Ins. Co., No. 2:16-cv-08104-CAS(AJWx), 2017 WL 3017596 (C.D. Cal. July 10, 2017). Opp'n at 22. In these cases, the Court found that the plaintiffs stated plausible claims for tortious breach based on allegations that Transamerica's MDR increases deprived them of benefits in the form of the accumulation value and monthly accrual of guaranteed interest upon the accumulated value in their accounts.

However, since these cases were decided, caselaw has developed differentiating benefits arising under the insurance component from benefits arising under the savings component of a universal life insurance policy. In EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co., 309 F. Supp. 3d 89 (S.D.N.Y. 2018), the court analyzed a similar claim for tortious breach and, while acknowledging it was a close question, held that a reduction in policy account values and guaranteed interest rates relates "solely to the distinct savings component of the policies." Id. at 96 (internal quotation marks and citation omitted). The court declined to extend the tort exception to the claim in that case because it did not arise from "the relationship between Plaintiffs as insureds and [the defendant] as insurer." Id.

In light of this reasoning, plaintiff's claim for tortious breach of the covenant of implied good faith and fair dealing does not appear to be viable to the extent this claim is based on the allegation that Transamerica has withheld the benefits of the value of her accumulation account and the amount of interest credited on her accumulation account. See Compl. ¶ 130. Plaintiff's claim does not fall neatly within the caselaw extending the tort remedy to the insurance context because she does not allege that there has been a covered loss requiring the payment of any *insurance* benefits, namely the death benefit, under the Policy.

However, plaintiff's allegations raise the question of whether tort remedies should be extended to a breach of the covenant of good faith and fair dealing when an insurer raises premiums in bad faith for the purpose of inducing elderly insureds to forfeit their life insurance policies, even though death benefits are not currently due under those policies. Cases that have extended the tort remedy outside the context of claims-related misconduct are instructive. In Spindle v. Travelers Ins. Companies, 66 Cal. App. 3d 951 (1977), a California Court of Appeal held that tort damages were available for the

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:18-cv-05422-CAS-GJSx | Date | December 26, 2018 |
| Title | GAIL THOMPSON v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

cancellation of an insurance policy for the improper motive of pressuring insureds to consent to a large increase in premiums.  There, the court explained:

> Conspiratorial conduct on the part of insurers to avoid the contractual liability they undertake is not countenanced in California, and the evolvement of the doctrine of the implied covenant of good faith and fair dealing *is* an expression of *public policy* in our state. We hold that this same doctrine is applicable to subject an insurer to liability to its insured for cancelling a malpractice insurance policy in accordance with permissible terms of the cancellation provisions of the policy, if the reasons for such cancellation are such as to make the cancellation a violation of the implied covenant of good faith and fair dealing. Plaintiff's amended complaint, therefore, has stated a cause of action against defendants.

Id. at 959 (citation omitted).  And in Helfand v. National Union Fire Ins. Co., 10 Cal. App. 4th 869 (1992), the California Court of Appeal upheld tort damages for an insurer's bad faith conduct in canceling a policy to avoid the payment of claims expected to come due in the final year.  The court explained that insured's loss was imminent and unavoidable at the time of cancellation, id. at 317, and analogized to a similar case, Home Ins. Co. of New York v. Heck, 65 Ill. 111 (1872), which asked, "Of what avail would it be, to take a policy against fire, to permit its cancellation when the fire is approaching?" id. at 114.

Here, plaintiff has alleged that Transamerica breached the terms of the Policies when increasing the MDRs, and that Transamerica increased the MDRs to cause policy lapses or surrenders before death benefits become due.  Compl. ¶ 82.  Policyholders have held these Policies for more than twenty years, were provided with illustrations using then-existing MDRs that did not provide any advance warning of a dramatic increase in MDRs, and are now unable to obtain alternative life insurance coverage due to their advanced age.  Compl. ¶¶ 89–91.  The Court concludes that the same policy justifications that subject an insurer to tort liability for claims-related misconduct are applicable in this case for the following reasons.

First, Transamerica's ability to charge excessive premiums cannot be disciplined by the marketplace because new life insurance policies cannot be purchased on the lives of the insureds due to their advanced age.  Second, it is inconsequential that death benefits are not currently due under the Policies, because they will unavoidably become

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:18-cv-05422-CAS-GJSx | Date | December 26, 2018 |
| Title | GAIL THOMPSON v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

due, and the policyholders and insureds allegedly have nowhere else to turn to obtain the "peace of mind and security" that they bargained for when they purchased the Policies. Finally, "[c]onspiratorial conduct on the part of insurers to avoid the contractual liability they undertake is not countenanced in California." See Spindle, 66 Cal. App. 3d at 959. The Court concludes that extending the tort remedy to this context is justified to deter insurers from unreasonably increasing premiums to induce early surrender or lapses of life insurance policies held by people who cannot turn to the market and obtain another policy due to the advanced age of the insureds.

The Court recognizes that California Supreme Court declined to extend tort remedies in a case wherein the insurer had, in bad faith, retroactively billed an insured for an excessive premium. Jonathan Neil & Assocs., Inc. v. Jones, 33 Cal. 4th 917 (2004). There, the California Supreme Court explained that the tort remedy did not apply because: (1) an insurer's ability to charge excessive premiums is generally disciplined by competition in the marketplace; (2) the billing dispute did not deny the insured the benefits of the policy in the form of security against losses and third party liability; (3) the dispute did not require the insured to prosecute the insurer in order to enforce its rights; and (4) other traditional tort liabilities may be available to insureds who are wrongfully billed a retroactive premium. Id. at 939. The California Supreme Court's reasons for declining to extend the tort remedy in that case do not apply here. Moreover, the California Supreme Court explicitly left open the question of whether the cancellation of an insurance contract for improper motives could ever give rise to tort damages, and did not explicitly foreclose the possibility that a tort remedy may apply to a claim concerning impermissible premium increases that are intended to result in policy lapses or surrenders. Id. at 941.

Accordingly, the Court **DENIES** Transamerica's motion to dismiss plaintiff's tortious breach claim.

### iv.   Unfair Competition

To state a claim for violation of the UCL, a plaintiff must allege an "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Because [the UCL] is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." Boschma v. Home Loan Ctr., Inc., 198 Cal. App. 4th 230, 252 (Cal. Ct. App. 2011) (internal quotation marks and citation omitted).

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-05422-CAS-GJSx | Date | December 26, 2018 |
| Title | GAIL THOMPSON v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Plaintiff alleges that Transamerica violated the unfair prong of the UCL by:

(a)   Marketing and selling the Policies on the premise that they were a solid and good life insurance product that would provide a certain death benefit for a certain cost and duration and subsequently taking steps to prevent Policyholders from receiving the promised benefits from those Policies by suddenly, massively, and unlawfully increasing the cost of the Policies through the 2017 MDR Increases.

(b)   Imposing the 2017 MDR Increases even though Transamerica's expected future mortality has improved and is better than the mortality upon which the original MDR schedule is based -- in order to increase premiums, recoup past losses, and/or force its insureds to surrender (cancel) their Policies, all of which was, and is, contrary to, and precluded by, the express terms of the Policies. The Monthly Deduction charges were increased effective on policy anniversary dates after August 1, 2017, so that Transamerica could reduce the size of an unprofitable block of life insurance policies, to eliminate long-anticipated losses on the Policies, and to cause many of the Policyholders to surrender their Policies. Transamerica breached its duties under the Policies by improperly increasing the MDRs in order to recoup past losses and gain or retain an unfair competitive advantage over other life insurers.

(c)   After the sale of the Policies, continuing to send annual reports, policy servicing statements, illustrations and other documents and correspondence to Plaintiffs and the Class Members without disclosing that there would be sudden, dramatic, and cost prohibitive increases in the Monthly Deduction charges effective August 1, 2017.

(d)   Failing to provide any meaningful advance warning that it intended to massively and suddenly increase the Monthly Deduction charges effective August 1, 2017, through the 2017 MDR Increases.

(e)   Ultimately providing a false and misleading explanation to Plaintiffs and the Class Members of the grounds for the 2017 MDR Increases.

Compl. ¶ 135.

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-05422-CAS-GJSx | Date | December 26, 2018 |
| Title | GAIL THOMPSON v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

To state a claim under the "unfair" prong, a plaintiff must prove that a "business practice ... violates established public policy" or is "immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." Eisen v. Porsche Cars North America, Inc., 2012 WL 841019, *5 (C.D. Cal. Feb. 22, 2012) (citing McKell v. Washington Mut., Inc., 142 Cal. App. 4th 1457, 1473 (2006)). Transamerica argues that plaintiff's UCL claim sounds in fraud to the extent it is based on misrepresentations and omissions, and therefore plaintiff must meet the pleading requirements of Rule 9(b). See Mot. at 20. Plaintiff, however, specifically alleges that her claim arises under the "unfair" prong of the UCL. And at oral argument, plaintiff's counsel explicitly stipulated that plaintiff is not bringing any claims under the UCL based on fraud. The Court finds that, fairly read, plaintiff's alleged UCL violations are all based on the theory that Transamerica raised the MDR in an unconscionable manner and are sufficient to state a claim under the "unfair" prong of the UCL. Although plaintiff alleges that Transamerica failed to notify plaintiff of the MDR increase and then provided a false explanation for the grounds of the MDR increase, plaintiff does not allege that Transamerica made these misrepresentations or omissions for the purpose of inducing action by the plaintiff.

Second, Transamerica argues that the No-Lapse Endorsement precludes plaintiff from experiencing any actionable harm. Mot. at 20–21. Transamerica's argument fails because plaintiff's alleged harm is at least partly based on the MDR increase's effect on the cash value of the Policy. Next, Transamerica argues that violation (b) fails because a company's pursuit of profits, in and of itself, is not an unfair business practice. Mot. at 22. This argument fails because plaintiff sufficiently alleges that Transamerica's motivations were improper and thus these issues are better decided on a more developed factual record.

Transamerica also argues that plaintiff's UCL claim fails because she has an adequate remedy at law. Mot. at 20. Plaintiff responds that the risk of ongoing current and future harm from the new MDR increases is a harm that breach of contract damages alone cannot address. Opp'n at 26. The Court declines to find, at this stage, that plaintiff has an adequate remedy at law.

Accordingly, the Court **DENIES** Transamerica's motion to dismiss plaintiff's UCL claim.

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-05422-CAS-GJSx | Date | December 26, 2018 |
| Title | GAIL THOMPSON v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

### v. Declaratory Relief

Plaintiff seeks a declaration that the "2017 MDR Increases are unlawful and in material breach of the Policies' terms . . ." Compl. ¶ 144. Transamerica argues that plaintiff's declaratory relief claim is duplicative of plaintiff's breach of contract claim as both require the Court to interpret the relevant language and determine if the MDR increases violated the Policies. Mot. at 24.

"The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." Fed. R. Civ. Proc. 57. Moreover, declaratory relief is proper "where a breach of contract claim will not settle all of the contractual issues concerning which plaintiff seeks declaratory relief." StreamCast Networks, Inc. v. IBIS LLC., 2006 WL 5720345, at *4 (C.D. Cal. May 2, 2006). It is unclear at this juncture whether resolution of plaintiff's breach of contract claim would necessarily resolve the parties' prospective rights under the Policies. To the extent declaratory relief may overlap with plaintiff's other requests for relief, plaintiff may be required to make an election of remedies if she prevails on multiple claims.

Accordingly, Transamerica's motion to dismiss plaintiff's declaratory relief claim is **DENIED**.

### vi. Elder Abuse

Plaintiff's final claim for relief alleges elder abuse in violation of California's Welfare and Institutions Code §§ 15610, et seq. Plaintiff alleges that, by increasing the MDR on policies held by the elderly, Transamerica "took, depleted, appropriated and/or retained Plaintiffs' and the Class members' personal property in bad faith for a wrongful use and/or with the intent to defraud." Compl. ¶ 148.

California's elder abuse laws make additional damages available to a prevailing plaintiff who proves abuse of an elder, or a person age 65 years or older. The Act defines various acts as "abuse of an elder," including "[p]hysical abuse, neglect, financial abuse, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering." Cal. Welf. & Instit. Code § 15610.07(a). Each of these types of elder abuse is further defined elsewhere in the Act.

At issue here is alleged "financial abuse," which occurs when a person or entity "takes, secretes, appropriates, obtains, or retains real or personal property of an elder or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-05422-CAS-GJSx | Date | December 26, 2018 |
|----------|------------------------|------|-------------------|
| Title | GAIL THOMPSON v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

dependent adult for a wrongful use or with intent to defraud, or both." Id. § 15610.30(a)(1). The taking or retaining of property for "wrongful use" is further defined as a taking of property where the person or entity "knew or should have known that this conduct is likely to be harmful to the elder." Id. § 15610.30(b). And "taking" is defined as depriving an elder of any real or personal property by a number of means, including "by means of an agreement." Id. § 15610.30(c).

Transamerica argues that, in order to state an elder abuse claim, plaintiff must sufficiently allege a breach of contract claim, or a claims handling violation that is traditionally considered bad faith in the insurance context. The case Transamerica relies on for this proposition, Paslay v. State Farm Gen. Ins. Co., 248 Cal. App. 4th 658 (2016), does not impose such requirements. The Court finds that plaintiff has adequately alleged elder abuse with respect to Transamerica's alleged taking of plaintiff's property for a wrongful use.

Transamerica also contends that plaintiff must meet Rule 9(b)'s heightened pleading requirements to the extent her elder abuse claim is grounded in fraud. Id. (citing Trapp v. Chase Home Fin., LLC, No. 5:09-cv-01178-DEW-PJW, 2010 WL 4703864, at *5 (C.D. Cal. Nov. 12, 2010)). See also Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1105 (9th Cir. 2003) ("where fraud is not an essential element of a claim, only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)"). Plaintiff contends that she made no averments of fraud in her complaint, but the complaint does, in fact, include some averments of fraud. See Compl. ¶ 148 (By imposing the MDR Increase, Transamerica took plaintiff's personal property "with the intent to defraud"); id. ¶ 149 ("Transamerica is guilty of . . . fraud"). Plaintiff does not allege with particularity how she was defrauded, or what omission or misrepresentation she relied on. Accordingly, plaintiff fails to state an elder abuse claim based on fraud.

Defendant's motion to dismiss plaintiff's elder abuse claim is **DENIED** to the extent her claim is based on wrongful use. The Court **DISMISSES** plaintiff's elder abuse claim to the extent it is based on fraud.

## V.   CONCLUSION

The Court **DENIES** defendant's motion to dismiss plaintiff's claims based on the TransUltra 115 Policy for lack of standing.

| CIVIL MINUTES – GENERAL | | **'O'** | |
|---|---|---|---|
| Case No. | 2:18-cv-05422-CAS-GJSx | Date | December 26, 2018 |
| Title | GAIL THOMPSON v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

The Court **DENIES** as moot defendant's motion to dismiss plaintiff Lois Thompson for lack of standing.

The Court **DENIES** defendant's motion to dismiss for lack of personal jurisdiction.

The Court **DENIES** defendant's motion to dismiss for improper venue.

The Court **DISMISSES** plaintiff's breach of contract claim to the extent it is based on Transamerica's alleged consideration of its interest obligations in setting an MDR. The Court otherwise **DENIES** defendant's motion to dismiss plaintiff's breach of contract claim.

The Court **DENIES** defendant's motion to dismiss plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

The Court **DENIES** defendant's motion to dismiss plaintiff's claim for tortious breach of the implied covenant of good faith and fair dealing.

The Court **DENIES** defendant's motion to dismiss plaintiff's UCL claim.

The Court **DENIES** defendant's motion to dismiss plaintiff's claim for declaratory relief.

The Court **DENIES** defendant's motion to dismiss plaintiff's claim for elder abuse to the extent her claim is based on wrongful use. The Court **DISMISSES** plaintiff's elder abuse claim to the extent it is based on fraud.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |