# EXHIBIT A

**BONNETT FAIRBOURN**
  **FRIEDMAN & BALINT, PC**
Andrew S. Friedman (*Pro Hac Vice*)
afriedman@bffb.com
Francis J. Balint, Jr. (*Pro Hac Vice*)
fbalint@bffb.com
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Tel: (602) 274-1100
Fax: (602) 274-1199

**CONSUMER WATCHDOG**
Harvey Rosenfield (SBN: 123082)
harvey@consumerwatchdog.org
Jerry Flanagan (SBN: 271272)
jerry@consumerwatchdog.org
6330 San Vicente Blvd., Suite 250
Los Angeles, CA 90048
Tel: (310) 392-0522
Fax: (310) 392-8874
[Additional Counsel on Signature Page]

**THE MOSKOWITZ LAW FIRM**
Adam M. Moskowitz (*Pro Hac Vice*)
adam@moskowitz-law.com
Howard Bushman (*Pro Hac Vice*)
howard@moskowitz-law.com
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
Tel: (305) 479-5508
Fax: (786) 298-5737

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

GAIL THOMPSON, et al.,

      Plaintiffs,

      vs.

TRANSAMERICA LIFE INSURANCE
COMPANY,

      Defendant.

Case No. 2:18-cv-05422-CAS-GJSx

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL**

Hon. Christina A. Snyder
Hearing Date: November 25, 2019
Time: 10:00 am
Court: Courtroom 8D
Complaint filed: June 18, 2018

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................ 1

II.    THE COMMON NATURE OF CLASS PLAINTIFFS'
       BREACH OF CONTRACT CLAIM ................................................. 3

III.   THE PROPOSED CLASS DEFINITIONS ...................................... 7

IV.    LEGAL ARGUMENT ...................................................................... 9

       A.    Class Certification ................................................................. 9

       B.    The Proposed Classes Satisfy the Requirements of Rule 23(a) ........... 9

             1.  Numerosity ................................................................... 9

             2.  Commonality ............................................................... 10

             3.  Typicality ..................................................................... 12

             4.  Adequacy ..................................................................... 13

       C.    The Proposed Classes Satisfy the Requirements of Rule 23(b)(3) .... 14

             1.  Predominance ............................................................... 14

                 a.  Common Liability Issues Predominate ................... 14

                 b.  In Discharging its Duty to Enforce the Unambiguous
                     Terms of the Policy Contract, the Court May Consider
                     Expert Testimony as to the Terms with Technical Meaning ... 19

                 c.  Common Remedy Issues Also Predominate ............ 20

             2.  Superiority ................................................................... 22

       D.    The Proposed Classes Are Properly Certified under Rule 23(b)(2) .. 24

V.     APPOINTMENT OF CLASS COUNSEL ..................................... 25

VI.    RELIEF REQUESTED .................................................................... 25

i

1

# TABLE OF AUTHORITIES

2

<u>CASES</u>                                                                                                    <u>PAGES</u>

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................... 14

*Apple Glen Inv'rs, L.P. v. Express Scripts, Inc.*,
  700 F. App'x 935 (11th Cir. 2017) ................................................... 20

*Ballard v. Equifax Check Servs., Inc.*,
  186 F.R.D. 589 (E.D. Cal. 1999) ...................................................... 10

*Bateman v. Am. Multi-Cinema, Inc.*,
  623 F.3d 708 (9th Cir. 2010)............................................................. 23

*Bristol-Myers Squibb Co. v. Superior Court*,
  137 S. Ct. 1773 (2017) ......................................................................... 2

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ............................................................................. 8

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ............................................................................. 20

*Crown, Cork & Seal Co. v. Parker*,
  462 U.S. 345 (1983) ............................................................................. 9

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011)............................................................. 12

*Feller v. Transamerica Life Ins. Co.*,
  No. 2:16-cv-01378-CAS-AJW, 2017 WL 6496803
  (C.D. Cal. Dec. 11, 2017)............................................................Passim

*Fleisher v. Phoenix Life Ins. Co. ("Phoenix")*,
  No. 11 Civ. 8405 (CM), 2013 WL 12224042
  (S.D.N.Y. July 12, 2013) ....................................................... 2, 12, 18

*Freeman Invs., L.P. v. Pac. Life Ins. Co.*,
  704 F.3d 1110 (9th Cir. 2013)........................................................... 20

*Gartin v. S & M NuTec LLC*,
  245 F.R.D. 429 (C.D. Cal. 2007) ...................................................... 14

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) ........................................................................... 10

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*GIC Real Estate, Inc. v. ACE Am. Ins. Co.*,
   No. 17-cv-03143-SK, 2018 WL 5310832 (N.D. Cal. Aug. 20, 2018),
   *order clarified*, 2018 WL 5310776 (N.D. Cal. Sept. 25, 2018) ........................ 20

*Gillis v. Respond Power, LLC*,
   677 F. App'x 752 (3d Cir. 2017)................................................................ 17

*Haley v. Medtronic, Inc.*,
   169 F.R.D. 643 (C.D. Cal. 1996) ............................................................... 9

*Hanks v. Lincoln Life & Annuity Co. of New York ("VOYA")*,
   330 F.R.D. 374 (S.D.N.Y. 2019) .............................................. 2, 12, 17, 18, 24

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)........................................................ 12, 13, 14

*Healthy Futures of Texas v. Dep't of Health & Human Servs.*,
   326 F.R.D. 1 (D.D.C. 2018) ....................................................................... 8

*In re Conseco Life Ins. Co. Cost of Ins. Litig. ("Conseco COI")*,
   No. ML 04-1610 AHM (Mcx.), 2005 WL 5678842
   (C.D. Cal. April 26, 2005)........................................................................ 2

*In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig ("Conseco LifeTrend")*,
   270 F.R.D. 521 (N.D. Cal. 2010) ....................................................2, 11, 12, 17

*In re Juniper Networks, Inc. Sec. Litig.*,
   264 F.R.D. 584 (N.D. Cal. 2009) .............................................................. 24

*In re Med. Capital Sec. Litig.*,
   No. SACV-09-1048 DOC (RNBx), 2011 WL 5067208
   (C.D. Cal. July 26, 2011)......................................................................... 15

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000)...................................................................... 9

*In re Shopping Carts Antitrust Litig.*,
   M.D.L. No. 451-CLB, 1983 WL 1950 (S.D.N.Y. Nov. 18, 1983)..................... 8

*Kamakahi v. Am. Soc'y for Reprod.*,
   305 F.R.D. 164 (N.D. Cal. 2015) .............................................................. 21

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir. 2004)............................................................ 11, 17

*Kleiner v. First Nat'l Bank*,
   97 F.R.D. 683 (N.D. Ga. 1983) ................................................................ 15

*Kolbe v. BAC Home Loans Servicing, LP*,
   738 F.3d 432 (1st Cir. 2013) .................................................................... 18

*Kona Tech. Corp. v. S. Pac. Transp. Co.*,
   225 F.3d 595 (5th Cir. 2000)................................................................. 19

*Leszczynski v. Allianz Ins.*,
   176 F.R.D. 659 (S.D. Fla. 1997) .......................................................... 11

*Leyva v. Medline Indus. Inc.*,
   716 F.3d 510 (9th Cir. 2013)........................................................ 20, 21

*Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001) ............................................................. 14

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
   238 F.R.D. 482 (C.D. Cal. 2006)......................................................... 13

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
   Nos. CV-05-6838 and CV-05-8908-CAS(MANx),
   2015 WL 12592726 (C.D. Cal. Mar. 17, 2015) .................................... 13

*Pac. Fuel Co. v. Shell Oil Co.*,
   No. CV 06-0225 AG (AJWx), 2008 WL 11336467
   (C.D. Cal. Jan. 24, 2008) .................................................................... 19

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014)............................................................... 24

*Peoples v. Sebring Capital Corp.*,
   No. 01 C 5676, 2002 WL 406979 (N.D. Ill. Mar. 15, 2002).................. 17

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) ............................................................... 10

*Robin Drug Co. v. PharmaCare Mgmt. Servs., Inc.*,
   No. Civ.033397(PAM/RLE), 2004 WL 1088330
   (D. Minn. May 13, 2004) .................................................................... 17

*Romero v. Producers Dairy Foods, Inc.*,
   235 F.R.D. 474 (E.D. Cal. 2006) ........................................................ 14

*Saulsberry v. Meridian Fin. Servs., Inc.*,
   No. CV 14-6256 JGB (JPRx), 2016 WL 3456939
   (C.D. Cal. Apr. 14, 2016) ................................................................... 10

*Shipley v. Pittsburgh & L.E.R. Co.*,
   83 F. Supp. 722 (W.D. Pa. 1949) ........................................................ 19

*U.S. Bank Nat'l Ass'n v. PHL Variable Life Ins. Co.*,
   112 F. Supp. 3d 122 (S.D.N.Y. 2015).................................................... 4

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996)............................................................... 22

iv

*Wal-Mart Stores, Inc., v. Dukes,*
  564 U.S. 338 (2011) ................................................................. 9

*Wolin v. Jaguar Land Rover N. Am., LLC,*
  617 F.3d 1168 (9th Cir. 2010) ................................................. 12

*Yokoyama v. Midland Nat'l Life Ins. Co.,*
  594 F.3d 1087 (9th Cir. 2010) ................................................. 20

*Yue v. Conseco Life Ins. Co. ("Yue"),*
  CV 08-1506 AHM (JTLx), 2009 WL 10671418
  (C.D. Cal. Dec. 7, 2009) ..................................................... 2, 24

*Yue v. Conseco Life Ins. Co.,*
  282 F.R.D. 469 (C.D. Cal. 2012) ............................................ 13

*Zinser v. Accufix Research Inst., Inc.,*
  253 F.3d 1180 (9th Cir.), *opinion amended on denial of reh'g,*
  273 F.3d 1266 (9th Cir. 2001) ................................................ 23

STATUTES

Cal. Civ. Code § 1644 ................................................................ 19

RULES

Fed. R. Civ. P. 23(a) ................................................................... 9

Fed. R. Civ. P. 23(a)(1) ............................................................... 9

Fed. R. Civ. P. 23(a)(2) ............................................................. 10

Fed. R. Civ. P. 23(a)(3) ............................................................. 12

Fed. R. Civ. P. 23(a)(4) ............................................................. 13

Fed. R. Civ. P. 23(b)(2) ............................................................. 24

Fed. R. Civ. P. 23(b)(3) .......................................... 14, 20, 22, 23

Fed. R. Civ. P. 23(g)(1)(A) ........................................................ 25

OTHER AUTHORITIES

2 Farnsworth, *Farnsworth on Contracts*, § 7.11 (3d ed. 2004) .............. 17

Restatement (Second) of Contracts § 202(3) (1981) ............................ 19

Restatement (Second) of Contracts § 211(2) (1981) ............................ 17

v

## I.    INTRODUCTION

The Court is well-familiar with the issues raised by this motion for class certification.

In 2015 and 2016, Defendant Transamerica Life Insurance Company ("TLIC") announced increases in the monthly deduction rates ("MDRs") used to calculate the Monthly Deduction ("MD") charges withdrawn from the accumulation accounts of certain of its universal life insurance policies. Shortly thereafter, TLIC policyowners filed a series of lawsuits challenging the contractual authority of TLIC to impose the MDR increases, five of which were eventually consolidated before the Court under the first-filed case, *Feller v. Transamerica Life Insurance Company*, No. 2:16-cv-01378 CAS (AJWx) ("*Feller*").

In *Feller*, the Court granted certification of a litigation class consisting of all TLIC policyowners with an in-force policy adversely affected by the challenged MDR increases. *Feller*, 2017 WL 6496803 (C.D. Cal. Dec. 11, 2017). The Court certified the nationwide litigation class under both Rule 23(b)(2) and (b)(3). 2017 WL 6496803, at *18. TLIC ultimately agreed to resolve the claims alleged in *Feller* through a class settlement that included all TLIC policyowners impacted by the challenged MDR increases, whether their policy remained in-force or had terminated (though lapse, surrender or payment of the death benefit). *Feller* Final Approval Order [*Feller* Dkt. 444 at 5].

During the *Feller* litigation, TLIC announced a ***new*** series of increases in the MDRs (collectively, the "MDR Increases") used to calculate the MD charges withdrawn from the accumulation accounts of two different groups of universal life insurance policies, known as the "TransUltra 115" policies and the "TransSurvivor 115" policies (collectively, the "Class Policies"). The MDR Increases on the TransUltra Policies, which went into effect on October 1, 2017, raised the otherwise applicable MDRs by 58%. The MDR Increase on the TransSurvivor Policies, which went into effect on June 1, 2018, increased the MDRs on one group by 47% and

1  phased in MDR increases on the remaining policies equaling a staggering 169%
2  over a three-year period.

3       Plaintiff Gail Thompson promptly initiated this first-filed action challenging
4  TLIC's authority to impose the MDR Increases, alleging the same causes of action
5  deemed actionable and certifiable in *Feller*. In denying TLIC's motion to dismiss
6  Plaintiff Thompson's claims, the Court sustained both (a) those claims, and (b) its
7  jurisdiction over those claims asserted on behalf of TLIC policy owners residing
8  outside of California, declining to extend the Supreme Court's ruling in *Bristol-*
9  *Myers Squibb Co. v. Superior Court,* 137 S. Ct. 1773 (2017), to the class action
10 context. [Dkt. 82 at 10-11]. On May 8, 2019, Plaintiff Thompson filed the First
11 Amended Complaint [Dkt. 91 ("FAC")], clarifying the class claims based on
12 interim discovery and adding eight additional named Plaintiffs (collectively, "Class
13 Plaintiffs"). TLIC filed its Answer on May 29, 2019. [Dkt. 98].

14      As in *Feller*, courts across the country have consistently certified nationwide
15 classes in cases asserting breach of contract claims challenging the validity of such
16 across-the-board COI rate increases. *See, e.g., Hanks v. Lincoln Life & Annuity Co.*
17 *of New York* ("*VOYA*"), 330 F.R.D. 374, 382-83 (S.D.N.Y. 2019); *Fleisher v.*
18 *Phoenix Life Ins. Co.* ("*Phoenix*"), No. 11 Civ. 8405 (CM), 2013 WL 12224042, at
19 *14 (S.D.N.Y. July 12, 2013); *In re Conseco Life Ins. Co. LifeTrend Ins. Sales &*
20 *Mktg. Litig* (*"Conseco LifeTrend"*), 270 F.R.D. 521, 532 (N.D. Cal. 2010); *Yue v.*
21 *Conseco Life Ins. Co.*, CV 08-1506 AHM (JTLx), 2009 WL 10671418 (C.D. Cal.
22 Dec. 7, 2009) ("*Yue*"); *In re Conseco Life Ins. Co. Cost of Ins. Litig.*, No. ML 04-
23 1610 AHM (Mcx.), 2005 WL 5678842 (C.D. Cal. April 26, 2005) (*"Conseco*
24 *COI*").

25
26
27
28

In this motion, Class Plaintiffs seek class certification of their breach of contract claim[1] for two nationwide classes: one on behalf of the TransUltra Policyowners, and one on behalf of the TransSurvivor Policyowners.  Both classes include the owners of terminated Class Policies, whose breach of contract claims are identical to those holding the in-force Class Policies: namely, that the MDR Increases breached the same uniform, express terms of the standardized Class Policy contracts: (a) requiring that MDR Increases be based on TLIC's expectations with regard to "cost factors;" and (b) prohibiting MDR Increases that operate to recoup past losses. Furthermore, *all* Policyowners seek the same incidental damages for restitution of the unlawful overcharges withdrawn by TLIC. As in *Feller*, Plaintiffs in addition request certification of an injunctive relief class under Rule 23(b)(2).

Plaintiffs' motion is supported by the Declarations of Larry N. Stern ("Stern Decl."), the Declaration of Robert Mills ("Mills Decl."), the Declaration of Andrew S. Friedman ("Friedman Decl."), and the Court's file in this case.

## II.   THE COMMON NATURE OF CLASS PLAINTIFFS' BREACH OF CONTRACT CLAIM

Under the Class Policies, premiums are deposited into an accumulation account. Stern Decl. App. A, ¶ 1; Mills Decl. ¶ 20. Each month, TLIC credits the accumulation account with interest, but reduces the accumulation account by withdrawing the applicable MD charge. The Policyowner may alter the amount and frequency of the premium payments so long as the accumulation account contains sufficient value to cover the MD charges. *Id.* The MD charge is determined by adding together three amounts: a policy fee; a deduction for any policy riders; and

---

[1] FAC ¶¶ 125-132 (Count One). Class Plaintiffs have alleged in the alternative several other claims in addition to their breach of contract claims. FAC ¶¶ 140-167. Class Plaintiffs may upon completion of further discovery seek appropriate class certification of these alternative claims as well.

an amount derived by applying the applicable MDR to the Net Amount at Risk. Stern Decl. ¶¶ 13, 19.

The Class Policies all contain two common contractual provisions limiting TLIC's ability to increase the monthly deduction rates:

> Any change in the monthly deduction rates will be prospective and will be subject to our expectations as to future cost factors. Such cost factors may include but are not limited to: mortality; expenses; interest; persistency; and any applicable federal, state and local taxes (the "Cost Factor Provision"),

and:

> We do not distribute past surplus or recover past losses by changing the monthly deduction rates (the "Non-Recoupment Provision").

FAC ¶¶ 45-46; Stern Decl. ¶31; Friedman Decl. Ex. 3 at 16, 23 & Ex. 4 at 13

These two common contractual limitations have well-recognized actuarial meanings. Stern Decl. ¶ 32. The Cost Factor Provision provides that any increase in the MDRs must be based on properly determined expectations as to future "cost factors" (as opposed to revenues or profits). *Id.* ¶ 44. And the Non-Recoupment Provision prohibits TLIC from raising MDRs to increase the profitability of the Class Policies in future durations to a level higher than the profits projected for the Class Policies when they were priced based on appropriate pricing assumptions. *Id.* ¶ 55.[2]

Class Plaintiffs allege that TLIC's imposition of the MDR Increases breached both the Cost Factor Provision and the Non-Recoupment Provision. FAC ¶¶ 54-86.

---

[2] *See, e.g., U.S. Bank Nat'l Ass'n v. PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122, 153–54 (S.D.N.Y. 2015) (holding it was improper to increase a cost of insurance rate to recoup past losses). TLIC has acknowledged that the Non-Recoupment Provision constrains whatever discretion it may have to impose the MDR Increases. *Feller* Dkt. 193-2 & 209, at 5:25–27 ("Transamerica . . . may not increase the MDR to recover past losses."); *id.* at 26:12–14 ("Transamerica . . . cannot use an MDR increase to recoup past losses.").

1    Specifically, Class Plaintiffs assert, among other things, that the MDR Increases:

2    (a) are based on certain impermissible considerations that are not permitted by the

3    Cost Factor Provision; (b) are premised on improper assumptions concerning

4    TLIC's expected future experience with respect to certain of the cost factors that

5    are permitted by the Cost Factor Provision; and (c) improperly seek to recover past

6    losses in violation of the uniform Non-Recoupment Provision of the Class Policies.

7    Friedman Decl. ¶ 9; Stern Decl. ¶¶ 44-62.

8        Importantly, TLIC applied the ***same methodology*** to determine the MDR

9    Increases applied to each type of Class Policy. Stern Decl. ¶¶ 33-41. Testimony

10   from TLIC Actuary and Rule 30(b)(6) designate Joseph Daniel Mahoney, FSA,

11   MAAA, confirms that TLIC determined the MDR Increases using computer models

12   based on common actuarial assumptions:

13
14   Q. Now, your ASOP 2 memoranda described the methodology that
     was employed in connection with the 2017 MDR increases and the
15   2018 MDR increases, correct?

16   A. Correct.

17   Q. Let's – it's fair to say that Transamerica applied the same
18   methodology in determining the MDR increases applicable to all
     TransUltra 115 policies, correct?
19
     A. We had one methodology. So, yes.
20
                                    ***
21   Q. (BY MR. FRIEDMAN) So the same methodology was applied with
22   respect to determining MDR increases applicable to the TransSurvivor
     115 policies, correct?
23
24   A. Yeah. I think it's fair to say what the general methodology for all
     the policies was applied, yes. General methodology.
25   Friedman Decl. Ex. 2 at 244:21-245:21; *see also* Friedman Decl. ¶¶ 17-19.

26       Actuary Mahoney furthermore confirmed that the same percentage increase

27   was applied to all Policyowners holding each Class Policy product and that ***the***

28

                                         5

*increases do not in any way depend on the individual circumstances of any particular Class Member*:

> Q. Okay. So it's fair to say that a single percentage increase was developed and applied to the preexisting MDR schedule applicable to all of the TransUltra 115 policies that were encompassed by the increases, correct?
>
> A. Okay. That sounds correct.
>
> Q. So it's fair to say that the -- and that was a 58 percent MDR increase for TransUltra, right?
>
> A. Yes.
>
> Q. Okay. And it's fair to say that the MDR increase percentage applied to the 115 policies did not vary by underwriting risk class, correct?
>
> A. The increase did not vary by underwriting class.
>
> Q. And it did not vary by issue age, correct?
>
> A. It did not vary by issue age.
>
> Q. It did not vary by attained age, correct?
>
> A. It did not vary by attained age.
>
> Q. It did not vary by gender?
>
> A. It did not vary by gender.
>
> Q. Nor did it vary by face amount, correct?
>
> A. Did not vary by face amount.
>
>           \*\*\*
>
> Q. *It's fair to say that under the methodology that Transamerica applied to compute the 2017 MDR increases, the percentage increase that was applied to the TransUltra policies applied as a group and did not vary based upon individualized circumstances of any policy or policyholder?*
>
> A. *Correct.  We applied the same percentage to all of them*.

6

1   Friedman Decl. Ex. 2 at 247:22-248:9; 280:18-25 (emphasis added); *id.* at 250:19-

2   251:13 (same testimony with respect to the MDR Increases applicable to the

3   TransSurvivor Policies).

4          The MDR Increases accordingly had a common impact on all Class

5   Members, ██████████████████████████████████████████████████

6   ████████████████████████. Stern Decl. ¶¶ 36-41; Mills Decl.

7   ¶¶ 29-32, 38.  The overcharges sustained by each Class Member will be computed

8   using an objective mathematical formula comparing the actual MDs charged to the

9   Class Policies with the MDR charges that would have applied but for the MDR

10  Increases.  Mills Decl. ¶ 24. Not only are class overcharges susceptible to common

11  proof using a damages model applicable to all Class Members, but Plaintiffs'

12  economist expert has already computed the actual overcharges sustained by the

13  Class Members to date. *Id.* ¶¶ 29-33.  Thus, as of July 2019, TLIC already had

14  collected ██████████████████████ for the TransUltra Policies ███████

15  ████████████ for the TransSurvivor Policies (which did not go into effect until

16  mid-2018). *Id.* The magnitude of the overcharges will continue to grow as members

17  of the Classes continue to age, further increasing MDRs and magnifying the effect

18  of the MDR Increases over time.  *Id.*  ¶ 32.

19         As shown below, the controlling questions of contract interpretation and

20  enforcement raised in this case unquestionably present common liability ***and***

21  damages issues for all Class Members. Certification of the national classes for

22  purposes of litigating Class Plaintiffs' common breach of contract claim is therefore

23  appropriate for the same reasons the Court granted class certification in *Feller*.

24  **III.    THE PROPOSED CLASS DEFINITIONS**

25         Class Plaintiffs respectfully move the Court to certify their breach of express

26  contract claim on behalf of the following nationwide plaintiff classes ("the

27  Classes"):

28

7

1  All owners of TransUltra 115 series life insurance policies subjected
2  to the monthly deduction rate increase imposed by TLIC on or after
   October 1, 2017.

3  and:

4
5  All owners of TransSurvivor 115 series life insurance policies
   subjected to the monthly deduction rate increase imposed by TLIC on
6  or after June 1, 2018.

7  FAC, ¶ 111; Friedman Decl. ¶ 4.

8      Excluded from the Classes are: (a) the Honorable Christina A. Snyder, United

9  States District Court Judge of the Central District of California (or other Circuit,

10 District, or Magistrate Judge presiding over the Consolidated Actions through

11 which this matter is presented for settlement) and court personnel employed in

12 Judge Snyder's (or such other Judge's) chambers or courtroom; (b) TLIC and its

13 parents, affiliates, subsidiaries, successors, predecessors, and any entity in which

14 TLIC has a controlling interest and their current or former officers and directors;

15 (c) any officer or director of TLIC reported in its Annual Statements, or entity in

16 which TLIC had a controlling interest at any relevant time, any member of those

17 persons' immediate families and legal affiliates, heirs, controlling persons, agents,

18 successors and predecessors in interest or assigns of any such excluded person or

19 entity; (d) Policyholders who properly execute and timely file a request for

20 exclusion from the Classes; (e) those Policyowners challenging the cost of

21 insurance rate increase on an individual basis in pending or resolved actions against

22 TLIC;[3] and (f) the legal representatives, successors, or assigns of any of the

23

24 _____

   [3] *See Healthy Futures of Texas v. Dep't of Health & Human Servs.*, 326 F.R.D. 1,
25 9-10 (D.D.C. 2018) (class definition that excludes plaintiffs involved in ongoing or
   resolved litigation outside of the class action's judicial district was supported by
26 "no less an authority than the Supreme Court" (citing *Califano v. Yamasaki*, 442
   U.S. 682, 689 & 703 (1979)); *see, e.g., In re Shopping Carts Antitrust Litig.*, M.D.L.
27 No. 451-CLB, 1983 WL 1950, at *2 (S.D.N.Y. Nov. 18, 1983) (certifying
28

foregoing excluded Policyholders (but only then in their capacity as legal representative, successor, or assignee).  Friedman Decl. ¶ 4.

## IV.   LEGAL ARGUMENT

### A. Class Certification

"Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits; and (2) to protect the rights of persons who might not be able to present claims on an individual basis." *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 647 (C.D. Cal. 1996) (citing *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983)).

To certify a class action, plaintiffs must set forth facts demonstrating satisfaction of the four requirements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Dukes*, 564 U.S. at 345; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000); Fed. R. Civ. P. 23(a). In addition, the Court must then consider whether the class is maintainable under Rules 23(b)(2) and/or 23(b)(3). *Dukes*, 564 U.S. at 345.

Rule 23 requires the party seeking class certification to "affirmatively demonstrate . . . compliance with the Rule–that is, he must be prepared to prove that there are ***in fact*** sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350 (emphasis in original).  The Court must therefore conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Id*. at 350–51.

### B. The Proposed Classes Satisfy the Requirements of Rule 23(a)

#### 1. Numerosity

Rule 23(a)(l) requires the class to be so numerous that joinder of individual class members is impracticable. *See* Fed. R. Civ. P. 23(a)(1). "Courts have not required evidence of exact class size or the identities of class members to satisfy the

___

settlement class that excluded "those persons, firms or corporations which have elected to file individual actions against the defendants").

requirements of Rule 23(a)(l)." *Saulsberry v. Meridian Fin. Servs., Inc*., No. CV 14-6256 JGB (JPRx), 2016 WL 3456939, at *7 (C.D. Cal. Apr. 14, 2016) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)). "No exact number cut-off can be stated. Rather, the specific facts of each case must be examined." *Ballard v. Equifax Check Servs., Inc*., 186 F.R.D. 589, 594 (E.D. Cal. 1999).

Here, based on TLIC's records, the challenged MDR Increases have been imposed on 5,273 TransUltra Policies and 1,682 TransSurvivor Policies. Stern Decl. ¶ 28.  Numerosity is undoubtedly satisfied as to each proposed Class.

### 2. Commonality

Rule 23(a)(2) requires plaintiffs to show that "there are questions of law or fact common to the class." These common issues must be material to the resolution of the claims asserted and demonstrate that the putative class members "suffered the same injury." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982).

Confirming commonality here, TLIC Actuary Mahoney testified:

Q. … It's fair to say that under the methodology that Transamerica applied to compute the 2017 MDR increases, the percentage increase that was applied to the TransUltra policies applied as a group and did not vary based upon individualized circumstances of any policy or policyholder?

A. Correct. We applied the same percentage to all of them.

\*\*\*



Q. And if I asked you the same questions for the TransSurvivor policies and the 2018 MDR increases, the answers would be the same because the same methodology was applied, correct?

A. That would be true.

Freidman Decl. Ex. 2 at 280:18-25; 290:1-13.

The commonality analysis for class members seeking recourse for the MDR Increases at issue in this case is thus the same as the analysis conducted by the Court for those seeking judicial recourse for the MDR increases challenged in *Feller*. *See Feller*, 2017 WL 6496803, at *6-7. Whether in-force or terminated, "[a]ll of the policies at issue contain the standardized non-recoupment provision that plaintiffs contend [TLIC] breached through its MDR increase." *Id.* at *6. TLIC's liability to owners of both in-force and terminated Class Policies turns on whether TLIC had the contractual authority to impose the MDR Increases given the Class Policies' standardized uniform Cost Factor and Non-Recoupment Provisions. Stern Decl. ¶ 43. Any idiosyncratic circumstances of the individual Policyowners are irrelevant, especially differences in circumstances arising ***after*** TLIC's imposition of the MDR Increases.

Furthermore, as this Court concluded in certifying the Policy classes in *Feller*, "[g]iven that courts have recognized that the law relating to the elements of a claim for breach of contract do not vary greatly from state to state, the issue of breach with respect to the non-recoupment provision is also common to all prospective class members." *Feller*, 2017 WL 6496803, at *6 (citing, *e.g.*, *Conseco LifeTrend*, 270 F.R.D. at 529 ("[Defendant] overstates the extent of any variations in state contract law, including as to the definition of breach, the existence of causation and damages requirements, and the admissibility of extrinsic evidence.") (citing *Klay v. Humana, Inc.*, 382 F.3d 1241, 1262–63 (11th Cir. 2004) and *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 672 (S.D. Fla. 1997) for the proposition that "[the] law[s] relating to the elements of a claim for breach of contract do not vary greatly from state-to-state")). As was the case with the policies in *Feller*, "[a]ny isolated or relatively minor variations in state law with respect to breach may be handled at trial by grouping similar state laws together." *Feller* 2017 WL

11

1   6496803, at *6 (citing *Conseco LifeTrend*, 270 F.R.D. 521 at 529).

2   Accordingly, as in *Feller*, commonality is easily met. *See also, e.g., VOYA*,
3   330 F.R.D. at 380. (concluding commonality satisfied where "a COI rate increase
4   was made based on the same analysis for all putative class members"); *Phoenix*,
5   2013 WL 12224042, at *9 (concluding commonality satisfied in COI Increases
6   challenge; common questions included whether "the basis for the increase was
7   unsupported by an enumerated factor in the contract" and whether "the increase was
8   applied discriminatorily rather than, as the contract requires, to all insureds in the
9   same class); *Conseco LifeTrend*, 270 F.R.D. at 530 ("as long as plaintiffs are willing
10  to attempt to prove their claims based solely on the policy documents, and not on
11  any oral representations made by sales agents, the Court does not believe that a
12  significant amount of individualized proof will be required.").

13  **3. Typicality**

14  Rule 23 next requires that "the claims or defenses of the representative
15  parties" be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).
16  "The purpose of the typicality requirement is to assure that the interest of the named
17  representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover*
18  *N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted). "The test of
19  typicality is whether other members have the same or similar injury, whether the
20  action is based on conduct which is not unique to the named plaintiffs, and whether
21  other class members have been injured by the same course of conduct." *Ellis v.*
22  *Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (citation and internal
23  quotation marks omitted). Thus, typicality is satisfied if the Class Plaintiffs' claims
24  are "reasonably co-extensive with those of absent class members; they need not be
25  substantially identical." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir.
26  1998).

27  Typicality is satisfied here because Class Plaintiffs each owned a Class
28  Policy subjected to the challenged MDR Increases. Friedman Decl. ¶ 24 & Exs. 7-

12

14. Faced with similar facts, this Court in *Feller* soundly concluded that:

> [P]laintiffs' injuries—with respect to the National Class and the California Subclasses—are "reasonably co-extensive" with those of other putative class members, insofar as each potential representative owns a policy that was subjected to the MDR increase. *See Hanlon*, 150 F.3d at 1020. These named representatives allege a course of conduct by [TLIC]—the setting of the MDR increases—common across the classes. Therefore, the typicality requirement is met.

*Feller*, 2017 WL 6496803, at *8. The same is true here.

### 4. Adequacy

The final Rule 23(a) requirement is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry involves whether "the named plaintiffs and their counsel have any conflicts of interest with other class members" and whether "the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020.

The adequacy requirement is met in this case because Class Plaintiffs' interests as the proposed class representative are completely coextensive with those of the unnamed members of the proposed Class.  Friedman Decl. ¶ 25 & Exs. 7-14 at ¶ 6. Class Plaintiffs understand and pledge to fulfill their obligations as class representatives. Friedman Decl. ¶ 25 & Exs. 7-14 at ¶¶ 4-5.  In addition, Class Plaintiffs' chosen counsel is highly experienced in class action litigation, including actions against major life insurance companies. *See* Friedman Decl. ¶¶ 26-29 & Exs. 15-17; *see, e.g., Yue v. Conseco Life Ins. Co.*, 282 F.R.D. 469, 479 (C.D. Cal. 2012) (certifying policyowner class with BFFB as class counsel); *Negrete v. Allianz Life Ins. Co. of N.Am.,* 238 F.R.D. 482, 489 (C.D. Cal. 2006) (same); *Negrete v. Allianz Life Ins. Co. of N. Am.*, Nos. CV-05-6838 and CV-05-8908-CAS(MANx), 2015 WL 12592726, at *13 (C.D. Cal. Mar. 17, 2015) (commending the "zealousness with which Class Counsel [BFFB] prosecuted this Action for nearly a decade, and the

13

1    exceptionally high quality of Class Counsel's representation of the Settlement Class

2    throughout that time").

3          **C. The Proposed Classes Satisfy the Requirements of Rule 23(b)(3)**

4          Under Rule 23(b)(3), class certification is appropriate if "the court finds that

5    [1] the questions of law or fact common to class members predominate over any

6    questions affecting only individual members, and that [2] a class action is superior

7    to other available methods for fairly and efficiently adjudicating the controversy."

8    Fed. R. Civ. P. 23(b)(3); *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v.*

9    *Las Vegas Sands, Inc*., 244 F.3d 1152, 1162–63 (9th Cir. 2001). Both requirements

10   are readily met here.

11             **1. Predominance**

12             **a.  Common Liability Issues Predominate**

13         "The Rule 23(b)(3) predominance inquiry tests whether the proposed classes

14   are sufficiently cohesive to warrant adjudication by representation." *Hanlon,* 150

15   F.3d at 1022 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

16   Predominance focuses on "the relationship between the common and individual

17   issues," requiring that the common issues be qualitatively substantial in relation to

18   any issues peculiar to individual class members. *Hanlon*, 150 F.3d at 1022. "When

19   one or more of the central issues in the action are common to the class and can be

20   said to predominate," a class action will be considered proper "even though other

21   matters will have to be tried separately." *Gartin v. S & M NuTec LLC*, 245 F.R.D.

22   429, 435 (C.D. Cal. 2007) (citation omitted). "Because no precise test can determine

23   whether common issues predominate, the Court must pragmatically assess the

24   entire action and the issues involved." *Romero v. Producers Dairy Foods, Inc*., 235

25   F.R.D. 474, 489 (E.D. Cal. 2006).

26         Common issues undoubtedly predominate with respect to the liability

27   elements of Plaintiffs' breach of express contract claim, which turns on TLIC's

28   common conduct in unilaterally developing and implementing the MDR Increases.

*Feller*, 2017 WL 6496803, at \*11; *accord In re Med. Capital Sec. Litig.*, No. SACV-09-1048 DOC (RNBx), 2011 WL 5067208, at \*3 (C.D. Cal. July 26, 2011) ("Courts routinely certify class actions involving breaches of form contracts."); *Kleiner v. First Nat'l Bank*, 97 F.R.D. 683, 692 (N.D. Ga. 1983) (noting that "claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action," and citing numerous cases in which such claims were certified). Specifically, the breach of contract claims for all Class Members turn on the proper interpretation and application of the same standardized contract terms, namely the Cost Factor and Non-Recoupment Provisions. And TLIC utilized the same methodology to determine the MDR Increases for all Class Policies applying common actuarial assumptions for the same product types. Friedman Decl. ¶¶ 17-21; Stern Decl. ¶¶ 33-41.

Accordingly, if TLIC breached its contracts with the named Plaintiffs when imposing the MDR Increases, then it necessarily breached the same standardized contract as to the other members of the Classes. As Actuary Mahoney testified:





Friedman Decl. Ex. 2 at 291:24-293:3.

Mr. Mahoney's testimony confirming that the claims of all Class Members will be determined through class-wide common proof is corroborated by the testimony of Plaintiffs' actuarial expert, Larry Stern. In his declaration, Actuary Stern explains how and why TLIC's own actions contradict the uniformly applicable actuarial constraints imposed by the Cost Factor and Non-Recoupment Provisions. Stern Decl. ¶¶ 42-63. In particular, Mr. Stern explains that the methodology applied by TLIC to determine the MDR Increases is fundamentally flawed and that the underlying methodological error impacts all Class Policies in the same fashion. *Id.* ¶¶46-47, 52, 60-63.

Because Plaintiffs' contract claims challenge the propriety of the MDR increase methodology itself and the assumptions used in the MDR increase models, TLIC's liability will be determined for all Class Policies through actuarial analysis based on data and facts applicable to all TransUltra and to all TransSurvivor Policies. Stern Decl. ¶ 43.

In short, whether TLIC used contractually impermissible and actuarially unwarranted assumptions to develop the priced-for profits and future expected profits for the Class Policies will be determined through evidence of TLIC's own actions common to every member of the Classes.

1    Since Plaintiffs' straightforward breach of contract claims are based on the

2  same uniform contract provisions and the same evidentiary proof of breach, the

3  predominance of common issues raised by those claims is not undermined by choice

4  of law nuances. *See Conseco LifeTrend,* 270 F.R.D. at 529 ("courts have recognized

5  that the law relating to the element of breach does not vary greatly from state to

6  state."); *Klay*, 382 F.3d at 1263 ("A breach is a breach is a breach, whether you are

7  on the sunny shores of California or enjoying a sweet autumn breeze in New

8  Jersey.").

9    Indeed, the interpretation of a standardized contract must necessarily be

10  uniform across all Class Policy owners holding the same form Policy.  *See Gillis v.*

11  *Respond Power, LLC*, 677 F. App'x 752, 756 (3d Cir. 2017) ("standard form

12  contracts should be interpreted uniformly as to all similarly situated signatories

13  whenever it is reasonable to do so, rendering individual, transaction-specific

14  interpretations inapposite."); *see also Robin Drug Co. v. PharmaCare Mgmt. Servs.,*

15  *Inc.*, No. Civ.033397(PAM/RLE), 2004 WL 1088330, at *4-5 (D. Minn. May 13,

16  2004) (concluding standardized contract term could be interpreted on a classwide –

17  not individual – basis); *Peoples v. Sebring Capital Corp.*, No. 01 C 5676, 2002 WL

18  406979, at *8 (N.D. Ill. Mar. 15, 2002) ("the court also rejects the broader notion

19  that," to interpret a standardized contract, it will "have to examine the parties' intent

20  on a transaction-by-transaction basis."). These principles apply with equal force in

21  class COI litigation. *See, e.g., VOYA*, 330 F.R.D. at 383 (concluding predominance

22  satisfied where "the dispute is 'based on standardized policy language'") (quoting

23  *Feller*, 2017 WL 6496803, at *11)).

24    The uniform interpretation of standardized contracts is such a universally

25  recognized principle of contract law that it is set forth in Restatement (Second) of

26  Contracts § 211(2) (1981) ("Section 211(2)"): "Such a writing is interpreted

27  wherever reasonable as treating alike all those similarly situated, without regard to

28  their knowledge or understanding of the standard terms of the writing." *Accord* 2

17

Farnsworth, Farnsworth on Contracts, § 7.11, at 304–05 (3d ed. 2004) ("This rule plainly subordinates the meaning that an individual party may have attached to the contract language to the goal of equality of treatment for parties that are similarly situated."); *see also Kolbe v. BAC Home Loans Servicing, LP*, 738 F.3d 432, 440–41 (1st Cir. 2013) (quoting Section 211(2) and Farnsworth, and stating that "[a] variety of state and federal courts have acknowledged this principle"). The objective interpretation of a standardized contract raises a common issue shared by Class Policy owners in every state.

When analyzing the predominance requirement for owners of the policies in *Feller*, the Court specifically found that "even if the standardized non-recoupment provision is ambiguous, plaintiffs' claims are still subject to a common method of proof under an objective test that looks to the 'reasonable expectations' of the insured." *Feller*, 2017 WL 6496803, at *11. Further, the Court concluded that "the ultimate issue of liability turns on ***[TLIC's] conduct*** with respect to increasing MDRs." *Id*. (emphasis in original). These conclusions equally apply to the claims asserted on behalf of owners of Class Policies subjected to the MDR Increases. *See, e.g., VOYA*, 330 F.R.D. at 382-83 (concluding predominance satisfied where "contract language at issue does not vary by individual class member" and the "justification for the increases appear to be the same across policies"); *Phoenix*, 2013 WL 12224042, at *13-14 (concluding the "case for class certification" is "*especially strong*" where contractual challenge to COI increase requires an assessment of the "single decision by [the insurer] to take action with respect to all class members" under "standardized insurance policy forms") (emphasis added).

In sum, regardless of whether the Class Policies are in-force or terminated, TLIC's liability is premised on its own standardized policy language and common alleged misconduct. Accordingly, Class Plaintiffs have satisfied their burden of showing that common questions predominate as to liability on behalf of the owners of all Class Policies subjected to the MDR Increases.

**b. In Discharging its Duty to Enforce the Unambiguous Terms of the Policy Contract, the Court May Consider Expert Testimony as to the Terms with Technical Meaning**

Although interpretation of the pertinent common Policy provisions is undeniably the province of the Court, to discharge that responsibility the Court may consider expert testimony explaining technical terms and concepts. *See, e.g., Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 611-12 (5th Cir. 2000) (recognizing "that a trial court's reliance on individuals experienced in a particular field for the purposes of obtaining explanation of the technical meaning of terms used in the industry is prudent") (internal quotation marks and citation omitted); *see also Pac. Fuel Co. v. Shell Oil Co*., No. CV 06-0225 AG (AJWx), 2008 WL 11336467, at *5 (C.D. Cal. Jan. 24, 2008) ("[I]n cases where the contractual language contains terms with specialized or technical meaning in a given industry, a qualified expert may assist the trier of fact by offering insight on the meaning of the language in the context of that industry."); *accord* Cal. Civ. Code § 1644 ("The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; ***unless used by the parties in a technical sense, . . . in which case the latter must be followed***.") (emphasis added); *see generally*, Restatement (Second) of Contracts § 202(3) (1981) ("[T]echnical terms and words of art are given their technical meaning when used in a transaction within their technical field.").

Thus, consideration of Mr. Stern's expert testimony with respect to the proper interpretation of technical terminology in the Policy contract (such as the permissible adjustment factors and assumptions relevant to a COI Increase determination under the Cost Factor Provision, or the actuarial meaning of the prohibition against "recouping past losses" under the Non-Recoupment Provision) is wholly appropriate and warranted and does not implicate the parol evidence rule. *See, e.g., Shipley v. Pittsburgh & L.E.R. Co.*, 83 F. Supp. 722, 744 (W.D. Pa. 1949)

("Neither the parol evidence rule nor the statute of frauds is violated by reading into a contract a translation of technical terms used, into words of general understanding."); *accord, Apple Glen Inv'rs, L.P. v. Express Scripts, Inc.*, 700 F. App'x 935, 939 (11th Cir. 2017) (noting courts have recognized that "evidence to show the meaning of technical terms, and the like, is not regarded as an exception to the parol evidence rule, because it does not contradict or vary the written instrument, but simply places the court in the position of the parties when they made the contract....") (citation omitted); *GIC Real Estate, Inc. v. ACE Am. Ins. Co.*, No. 17-cv-03143-SK, 2018 WL 5310832, at *6 (N.D. Cal. Aug. 20, 2018) ("Plaintiffs do not cite to [expert's] declaration to prove the parties' intent. Instead, his declaration addresses the meaning of 'real estate manager' in the relevant industry."), *order clarified*, No. 17-cv-03143-SK, 2018 WL 5310776 (N.D. Cal. Sept. 25, 2018); *see also Freeman Invs., L.P. v. Pac. Life Ins. Co.*, 704 F.3d 1110, 1115 (9th Cir. 2013) (reasoning even if the appropriate interpretation of policy terms were disputed, that issue "will turn on whether [plaintiffs] can convince the court . . . that theirs is the accepted meaning in the industry," and not on individual representations made to each insured).

### c. Common Remedy Issues Also Predominate

To satisfy Rule 23(b)(3)'s predominance standard, plaintiffs must demonstrate that "damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). However, as the Ninth Circuit has reiterated post-*Comcast*, "[i]n this circuit . . . damage calculations alone cannot defeat certification." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013) (quoting *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)). *Comcast* stands only for the proposition that "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability" for a class to be certified under Rule 23(b)(3). *Leyva*, 716 F.3d at 514. In

short, plaintiffs must propose a damages methodology that is tethered to their theory of liability. *Id.*

Here, Class Plaintiffs seek restitution and/or disgorgement of all overcharges withdrawn from each Policy's accumulation account by TLIC pursuant to the challenged MDR Increases. FAC at ECF 47.  All Class Members sustained injuries as a result of the MDR Increases.  Mills Decl. ¶¶ 26-33.  The account values of in-force and terminated Class Policies were reduced by the amount of overcharges resulting from the MD Increases. *Id.* ¶¶ 24, 29.[4]  This includes the MD overcharges reducing the account values of those Class Policies owned by Class Members who have satisfied the cumulative premium requirements of the No-Lapse Endorsement. *Id.* ¶ 33 & n.54.[5]

Restitution will be computed by the same methodology applicable to every Policy owner in each of the Classes, across both the in-force and terminated Class Policies: calculation of the difference between the MD charges imposed after the MDR Increases and the MD charges that would have been imposed but for the MDR Increases. Mills Decl. ¶¶ 24, 29. Because the MDR Increases produced a uniform percentage increase for each Class Policy plan code, this computation is a rote arithmetic calculation of the MD withdrawals based on TLIC's own computerized

_____

[4] Because the Classes are limited to owners of Class Policies subjected to the MDR Increases, Policies that terminated before any MD overcharges were deducted by TLIC are not included in the proposed Class definitions.

[5] The owners of Class Policies with no positive account values for which the No-Lapse Endorsement is in effect have also sustained quantifiable injuries. Mills Decl. ¶ 33 n.54.  Because the account values for those Policies are more "negative" (further under water) on TLIC's policy records as a result of the MD Increases, owners would be required to pay additional premiums to restore the impacted account values to a positive position, thereby enabling the policies to earn future interest credits. *Id*. And in any event, the mere possibility that the proposed arithmetic calculation could, for some members of the Classes, equate to zero is no bar to class certification. *See, e.g., Kamakahi v. Am. Soc'y for Reprod. Med.,* 305 F.R.D. 164, 188-89 (N.D. Cal. 2015); *see generally, Leyva*, 716 F.3d at 513.

business records. *Id.* ¶¶ 24-25, 29-30. *See, e.g., Feller*, 2017 WL 6496803, at *13 ("Transamerica has all of the data necessary to simply reverse the MDR overcharges and refund plaintiffs should it be found liable for plaintiffs' claims. Accordingly, plaintiffs have demonstrated that damages are calculable on a classwide basis").

Thus, to calculate the measure of incidental damages applicable to each Policy, Class Plaintiffs will employ the same methodology recognized by this Court in the *Feller* order granting class certification for the in-force Class Policies, with the only change being that Class Plaintiffs' experts will utilize the end-dates for each terminated Policy to determine the specific amounts they should receive to compensate for their individual overcharges. Mills Decl. ¶ 32 n.52. Applying this methodology will, as this Court agreed in *Feller*, be "rote arithmetic" based on the uniform MDR percentage increase. *Feller*, 2017 WL 6496803, at *13.

Indeed, any doubt over the feasibility of a class-wide damages computation is dispelled by the declaration of Plaintiffs' expert economist Mills, who has preliminarily calculated the actual damages as of July 2019 both for the Classes as a whole and for each Class Member based on the electronic policy data produced by TLIC. Mills Decl. ¶¶ 24-33. The magnitude of the overcharges will continue to grow as Plaintiffs and the other members of the Classes continue to age, further increasing MDRs and magnifying the effect of the MDR Increases over time. *Id.* ¶ 32.

### 2. Superiority

In addition to a predominance of common questions, Rule 23(b)(3) requires a class proponent to demonstrate that the class action is superior to other methods of adjudicating the controversy. *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1235 (9th Cir. 1996) (explaining that the party seeking certification needs to make a "showing [as to] why the class mechanism is superior to alternative methods of adjudication").

In determining superiority, the Court must consider the four factors of Rule 23(b)(3): (1) the interests members in the class have in individually controlling the prosecution or defense of the separate actions, (2) the extent and nature of any litigations concerning the controversy already commenced by or against members of the class, (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and (4) the difficulties likely encountered in the management of a class action. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190–92 (9th Cir.), *opinion amended on denial of reh'g,* 273 F.3d 1266 (9th Cir. 2001). "[C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Id.* at 1190 (citation omitted).

District courts may also consider "other, non-listed factors," as the Ninth Circuit reiterated:

> Superiority must be looked at from the point of view (1) of the judicial system, (2) of the potential class members, (3) of the present plaintiff, (4) of the attorneys for the litigants, (5) of the public at large, and (6) of the defendant. The listing is not necessarily in order of importance of the respective interests. Superiority must also be looked at from the point of view of the issues.

*Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 713 (9th Cir. 2010) (citation and quotation marks omitted).

Just as this Court concluded with regard to the classes of in-force policies in *Feller*, each of the four superiority factors "militates in favor of certification" here. *Feller*, 2017 WL 6496803, at *15. As the Court reasoned there,

> [t]he proposed class members have not demonstrated an interest in individually controlling the prosecution. The Court is unaware of any other actions initiated by members of the classes, and there do not appear to be any potential management problems, particularly with respect to interpretation of the unambiguous non-recoupment provision. Furthermore, "[w]here thousands of identical complaints

23

would have to be filed, it is superior to concentrate claims through a class action in a single forum." *In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 592 (N.D. Cal. 2009).

*Id.; see also* Friedman Decl. ¶¶ 30-32 (describing other known actions).  As in *Feller*, resolution on a class-wide basis will be "superior to other methods of resolving claims by members of the Class." *Feller*, 2017 WL 6496803, at *15; *see also VOYA*, 330 F.R.D. at 384 (same).

## D. The Proposed Classes Are Properly Certified under Rule 23(b)(2)

As in *Feller*, Plaintiffs here again also seek certification under Rule 23(b)(2) with respect to their claims for injunctive relief.  *Feller*, 2017 WL 6496803, at *15 ("for the very same reason the Court finds that common issues predominate with respect to Transamerica's conduct in implementing the MDR increases, if Transamerica's conduct amounts to breach or another type of unlawful conduct, it may be appropriate to order injunctive or declaratory relief applicable to the pertinent classes of policyholders" (citing *Yue*, 2009 WL 10671418, at *5) ("[C]lass certification is appropriate because [d]efendant has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."). Transamerica's continued imposition of the MDR increases once again affects all members of the proposed Classes in a shared way, such that injunctive relief enjoining these increases would be applicable to the class as a whole.  *Feller*, 2017 WL 6496803, at * 15; *see also*, *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (certification under Rule 23(b)(2) appropriate where "all members of the putative class . . . are allegedly exposed to a substantial risk of serious harm by a specified set of centralized . . . policies and practices of uniform . . . application"). Furthermore, applicable anti-discrimination insurance statutes and regulations require Transamerica to treat all Policyowners within the same policy class in the same fashion, essentially mandating common treatment. Friedman Decl. ¶¶ 17-20.

24

## V.    APPOINTMENT OF CLASS COUNSEL

Finally, Class Plaintiffs ask that the same counsel previously appointed as Co-Lead Class Counsel in *Feller* – Andrew S. Friedman of Bonnett Fairbourn Friedman & Balint, PC, Harvey Rosenfield and Jerry Flanagan of Consumer Watchdog, and Adam M. Moskowitz of The Moskowitz Law Firm – be appointed as Co-Lead Class Counsel for the Classes in this action, and that Class Plaintiffs' other co-counsel be recognized as additional Class Counsel. Friedman Decl. ¶ 26. Rule 23(g) governs the appointment of class counsel. In appointing class counsel, the Court is to consider: (1) "the work counsel has done," (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action," (3) "counsel's knowledge of the applicable law," and (4) "the resources [] counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Proposed Co-Lead Class Counsel have decades of experience handling class action litigation, have demonstrated a sound knowledge of the legal issues pertaining to TLIC MDR Increases in *Feller*, have retained experts needed to address the esoteric actuarial issues that will arise, and have successfully steered this putative class action past a motion to dismiss. Friedman Decl. ¶¶ 26-29.

## VI.   RELIEF REQUESTED

For each and all the foregoing reasons, the Court should:

(a)    certify the proposed Classes,

(b)    appoint Gail Thompson, Hans Sunder, Debra Lewis, Diana Lewis, and Marc Soble as Class Representatives of the TransSurvivor Class,

(c)    appoint Michael H. Stephens, Sandra Rosner, and Kathleen M. Swift as Class Representatives for the TransUltra Class,

(d)    appoint Andrew S. Friedman of Bonnett Fairbourn Friedman & Balint, PC, Harvey Rosenfield and Jerry Flanagan of Consumer Watchdog, and Adam M. Moskowitz of The Moskowitz Law Firm as Co-Lead Class Counsel for the Classes.

Dated:  September 24, 2019.

**BONNETT FAIRBOURN FRIEDMAN & BALINT, PC**

*/s/Andrew S. Friedman*
Andrew S. Friedman (*Pro Hac Vice*)
Francis J. Balint, Jr. (*Pro Hac Vice*)
2325 East Camelback Road, Suite 300
Phoenix, AZ 85016
Tel: (602) 274-1100
Fax: (602) 274-1199
afriedman@bffb.com
fbalint@bffb.com

**CONSUMER WATCHDOG**
Harvey Rosenfield (SBN 123082)
Jerry Flanagan (SBN 271272)
6330 San Vicente Blvd., Suite 250
Los Angeles, CA 90048
Tel: (310) 392-0522
Fax: (310) 392-8874
Harvey@consumerwatchdog.org
jerry@consumerwatchdog.org

**THE MOSKOWITZ LAW FIRM**
Adam M. Moskowitz (*Pro Hac Vice*)
Howard M. Bushman, Esq. (*Pro Hac Vice*)
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
Tel: (305) 740-1423
Fax: (786) 298-5737
adam@moskowitz-law.com
howard@moskowitz-law.com

26

**PATTERSON LAW GROUP**
James R. Patterson (SBN 211102)
Allison H. Goddard (SBN 211098)
Catherine S. Wicker (SBN 306494)
402 West Broadway, 29th Floor
San Diego, CA 92101
Tel: (619) 756-6990
Fax: (619) 756-6991
jim@pattersonlawgroup.com
ali@pattersonlawgroup.com
catherine@pattersonlawgroup.com

**BARRACK, RODOS & BACINE**
Stephen R. Basser (SBN 121590)
Mark R. Rosen (SBN 139506)
Samuel M. Ward (SBN 216562)
One America Plaza
600 West Broadway, Suite 900
San Diego, CA 92101
Tel: (619) 230-0800
Fax: (619) 230-1874
sbasser@barrack.com
sward@barrack.com
mrosen@barrack.com

**EMERSON SCOTT, LLP**
John G. Emerson (*to be admitted Pro Hac Vice*)
830 Apollo Lane
Houston, TX 77058
Tel: (281) 488-8854
Fax: (281) 488-8867
jemerson@emersonfirm.com

**EMERSON SCOTT, LLP**
David G. Scott (*to be admitted Pro Hac Vice*)
The Rozelle-Murphy House
1301 Scott Street
Little Rock, AR 72202
Tel: (501) 907-2555
Fax: (501) 907-2556
dscott@emersonfirm.com

*Attorneys for Plaintiffs*

27