FILED
CLERK, U.S. DISTRICT COURT

July 30, 2020

CENTRAL DISTRICT OF CALIFORNIA
BY: _____CMJ_____ DEPUTY

Stuart Brafman, Trustee
Sher Family Trust
Policy No. 000060051266

July 28, 2020

Clerk of the Court
U.S. District Court
Central District of California
350 W. First Street, Suite 4311
Los Angeles, CA 90012

Re:   *Gail Thompson v. Transamerica*, Case No. 2:18-cv-05422 CAS (GJSx), Class Action

## OBJECTIONS TO SETTLEMENT

We are the owner and grantor/insured of a life insurance policy issued by Transamerica, TransSurvivor 115, Policy No. 000060051266, and a member of the class in this action. We object to the settlement.

We file these objections reluctantly. We, too, desire to resolve this dispute. This is moreover a complex matter in which we have no experience or expertise. Further, all the essential facts pertaining to our policy are in the control of Transamerica which has repeatedly denied us access to or provided us with erroneous information. Despite these obstacles, we have been able -- with considerable effort -- to evaluate the impact of the settlement on us with a reasonable degree of accuracy, if not precision. We are deeply disappointed with the settlement.

We set out our objections in detail below. Briefly, the settlement permits Transamerica to implement the entire challenged rate increases and provides little meaningful relief to the class. Remarkably, the Notice to the Class does not adequately disclose this to the policyholders.

We have two further concerns regarding Transamerica, which bear directly on the settlement.

We bought our policy for, in the jargon of the insurance industry, "peace of mind." Instead, for the past 2 years, we have found ourselves in a combat zone. Transamerica has literally made war on us and all policyholders. It has imposed massive new charges, repeatedly pressured us to cancel our policy, sent us misleading doomsday scenarios, and refused to provide basic information on our policy. Nothing in the settlement acknowledges this serious problem. Nor does it provide relief from these abuses. The settlement should provide commitments from

Clerk of the Court
July 28, 2020
Page 2

Transamerica to stop these practices and respond to policyholders' requests for information. Perhaps there should be an appointment of a neutral umpire to whom policyholders can turn.

Our second concern is that we find nothing in this settlement that prevents Transamerica from charging the entire $88 million settlement back to the policyholders through monthly deductions. Astonishingly, Transamerica is already doing so in our case. Recent information we received from Transamerica shows that it will shortly (October 2020) impose an unprecedented 68% customary increase on us. This increase will be the largest percentage increase by far in the 21-year history of our policy. This new increase exceeds every prior such increase by more than 200%. It is even greater than the extraordinary 39% increases being challenged in this proceeding. This new increase completely wipes out our settlement credit, nullifying the settlement's most important benefit. It is more than ironic that in the midst of a settlement touted as providing policyholders relief from increases, Transamerica brazenly imposes the highest increase in the 21-year history of our policy. Yet, none of this is before the court. We discuss this new Transamerica scheme in Section III below.

Overall, what we find most perplexing is that our negative view of the settlement is so at odds with the court's preliminary approval. We think the reason for this is that the one-sided record before the court did not provide a single fact or any analysis critical of the settlement. The record in support of the preliminary approval order is lengthy, filled with boilerplate, has descriptions of counsels' time spent, qualifications, etc., but surprisingly little on how the settlement actually impacts individual class members. The court was not even provided an estimate of the total damages incurred or claimed, without which the value or fairness of the $88 million settlement fund cannot be measured.

The major purpose of our filing is to fill that void in the record -- to balance the record, and provide the court with one class member's first-hand experience and view as to how the settlement impacts us. The objections we raise are nevertheless common to the class.

I.   OUR EXPERIENCE WITH TRANSAMERICA.

To understand our objections, some brief background is necessary.

We purchased our policy from Transamerica in 1999, and paid our premium promptly every year since.[1] Unexpectedly, Transamerica sent us a letter dated August 24, 2018, stating that it was increasing our deduction rate by "39% compounded" over each of the next 3 years (the letter is appended, marked Att. 1). The letter described these extraordinary increases as "significant," erroneously warned that we may need to pay "additional premiums," and strikingly urged us to consider an outright "surrender" of our policy. We had no idea what the letter meant.

---

[1] Our policy is held in a family trust. The two joint insureds are 82- and 85-year olds with cancer histories; the beneficiaries of the policy are their two children. The signers of this letter, the trustee and grantor/insured, are lawyers in their mid-eighties; the latter is the author.

Clerk of the Court
July 28, 2020
Page 3

But when your life insurance company tells you that it is making a "change" so significant that you may want to cancel your policy, it is alarming.

Since receiving the 2018 letter imposing the increases, we and our insurance agent have spent countless hours seeking information from Transamerica in an attempt to understand and evaluate these increases. We estimate we have had some 20 or more exchanges with Transamerica -- letters, emails, and numerous phone calls. Despite specific and repeated requests, we have rarely been given the information requested (examples of the correspondence are enclosed, Atts. 2, 3, 4, 5, 6, and 7). Transamerica's responses to our requests vary: frequently it tells us the increases are within its "discretion" (Atts. 3 and 5), and therefore none of our business; sometimes we are told the information is "proprietary"; a surprising number of times we are given incorrect information; most often however our requests are simply ignored, and Transamerica responds with irrelevant boilerplate descriptions of our policy (Atts. 3 and 5).

Transamerica's culture of stonewalling has prevented us from making informed evaluations, not only of the increases, but also of the settlement. For example, knowing the amount of our first year's increase is essential to evaluating the settlement as the settlement credit to each policyholder is determined largely by that number. Transamerica constructed that essential number by taking 39% of something bewilderingly called "original monthly deduction rate" (Att. 1). We have repeatedly asked Transamerica for this number, and they repeatedly ignored our request (Atts. 2, 3, and 4). Recently, we tried to uncover this number using a different strategy: we asked Transamerica for the dollar amount of the "increased" deductions taken from our account through December 31, 2019 (Att. 8). Transamerica's June 8, 2020, response did not answer the question we asked, but instead gave us the "total" deductions (Att. 9), which we already have and is useless.

To complete the picture of our experience with Transamerica, we attach two unsolicited letters from it to us dealing with the increases. They are dated May 15, 2019, and May 8, 2020 (Atts. 10 and 11). We assume all policyholders received similar letters. Both letters follow the format of the August 24 letter. The letters warn us again that Transamerica's higher rates could result in "[a]dditional premiums," adds a new threat that our policy could "lapse," and, for the second and third time, urges us to consider surrendering our policy (Att. 10, p. 2; Att. 11, p. 2). Both letters contain material misstatements of fact which bear directly on the settlement. Two examples follow.

The May 8, 2020, letter, sent after the settlement was signed, says that our "second rate increase" is to begin on our next anniversary date, October 14, 2020 (Att. 11, p. 1; Appendix, Notes 2 and 3). This conflicts with the premise of the settlement agreement, as well as Transamerica's prior letter which considers the upcoming increase our third and final, not the second. (For some time, we thought this letter meant there were now four, not three increases, or that the first one did not take place.) Our agent spoke to Transamerica a number of times seeking clarification. On June 10, 2020, Transamerica wrote our agent a short, elliptical letter supposedly designed to clear up the conflict. The letter incredibly misstated the date again, twice; it also added our first and second increases, 1 plus 1, and got a "total of 3" (Att. 12).

Clerk of the Court
July 28, 2020
Page 4

Eventually, after further discussions with Transamerica, our agent was finally advised that our third increase indeed starts October 2020.

The second material misrepresentation is found in the Appendix to the May 8, 2020, letter (Att. 11). This one is inexplicable. The Appendix is a chart showing the extraordinary 39% surcharge column ("Increased . . . Rates") being applied for each of the next 17 years. This is incompatible with Transamerica's position that these increases cease after 3 years. It also conflicts with the settlement. We and our agent have asked Transamerica to explain this misrepresentation. No one at Transamerica can explain why the chart sent to us shows these continuing increases.

Our experience with Transamerica is not unique. In fact, it appears typical. As class counsel alleges in the amended complaint in this case: "Transamerica also has created obstacles that preclude Policyholders from obtaining the information they need to evaluate their options" (Amended Complaint, ¶ 92). Transamerica maintains "shadow account values" not available to the policyholders (Amended Complaint, ¶ 32). It has created a system whereby policyholders are often given "confusing or conflicting answers to their questions" (Amended Complaint, ¶ 92). The information supplied by Transamerica is deliberately designed to provoke policy surrenders (Amended Complaint, ¶ 89). Transamerica's goal is to "wipe" these policies from its books (¶ 89).[2]

Against this background, we next explain our objections.

II.    THE CREDIT TO THE INDIVIDUAL CLASS MEMBERS IS *DE MINIMIS*.

Class counsel claims, without explanation, that the $88 million settlement fund equates to a 100% refund to each policyholder of the amount it has been overcharged through December 31, 2019 (Memorandum in Support of Preliminary Approval, p. 18). Assuming that is so, applying the settlement to our policy, we find the credit of little value. It is *de minimis*.

We start our analysis, using Transamerica's projections, to create a straightforward chart comparing our accumulation policy values before and after the increases. Here is what the chart shows:[3]

---

[2] It would be interesting and relevant to know, after this 3-year campaign, how many policyholders surrendered their policies.

[3] The chart is based on Transamerica's projections appended to Attachment 2. The "after" column is dated September 7, 2018, immediately following the announced increases. The "before" column is dated October 26, 2016, the latest available for the period before the extraordinary increases. Transamerica refused to provide us a 2017 projection, which was a tactic designed "to induce elderly policyholders to surrender their policies" (Amended Complaint, ¶ 93).

Clerk of the Court
July 28, 2020
Page 5

| BEGINNING YEAR | TRANSAMERICA'S ESTIMATED VALUES BEFORE INCREASES | TRANSAMERICA'S ESTIMATED VALUES AFTER INCREASES | DIFFERENCE LOSS |
|---|---|---|---|
| 2018 | $ 874,803 | $ 868,822 | $    5,981 |
| 2019 | 929,678 | 906,678 | 23,100 |
| 2020 | 983,489 | 922,871 | 60,618 |
| 2021 | 1,035,750 | 928,507 | 107,243 |
| 2022 | 1,085,902 | 920,912 | 164,990 |
| 2023 | 1,133,365 | 897,025 | 236,340 |
| 2024 | 1,177,523 | 853,108 | 324,415 |
| 2025 | 1,217,750 | 784,621 | 433,129 |
| 2026 | 1,253,386 | 685,852 | 567,534 |
| 2027 | 1,283,744 | 549,572 | 734,172 |
| 2028 | 1,308,059 | 366,336 | 941,723 |
| 2029 | 1,335,223 | 0 | 1,335,223 |

As the chart shows, our damages from the rate increases start modestly, multiply rapidly, reach $236,340 in 2023, and eventually wipe out our entire account of $1,335,223.

The large negative impact that Transamerica's increases have on our values seemingly results in part from a pinball-type effect that the increases have on how it calculates the monthly deductions. "Even small changes in the MDR can produce a dramatic increase in the dollar amount of the Monthly Deduction charged by Transamerica, particularly at older attained ages" (Amended Complaint, ¶ 37). That the increases are "significant" (Transamerica's words, Att. 1), indeed, "massive" (Amended Complaint, ¶ 51), are not in dispute. The 39% for each of 3 years, when "compounded each year," results in a huge increase, "169% after the third . . . increase" (Amended Complaint, ¶ 52).

In contrast, the credit to be awarded to us in the settlement, when measured against our "massive" damages, is small. Class counsels' office helpfully advised us that the credit we will receive in this settlement is around $13,500. Our $13,500 recovery, when measured by our actual damages as shown in the chart above, is insignificant. When the 3 increases are fully implemented, the settlement recovery is only 8 to 12% of our actual damages ($107,243 to $164,990). Using our mortality rate, the recovery is approximately 2%. And, if taken out to 2029, when the increases achieve the goal and completely wipes out our account, the $13,500 settlement credit is not even 1% of our total loss. Measured another way, our settlement credit adds a mere 2% to our present accumulated value.

Plaintiffs' counsel suggests that the settlement is a significant benefit as it provides 100% credit or payment of past overcharges through December 31, 2019. There may be good administrative reasons for allocating the settlement fund based on past charges with an arbitrary cutoff date. But it is a poor way for this court to measure the reasonableness of the settlement.

Clerk of the Court
July 28, 2020
Page 6

The cutoff date is purely fortuitous. It depends largely on the irrelevant fact of how long the case
has been pending. It results, as here, in measuring the fairness of settlement by focusing on the
early charges which, as we have seen, is a small fraction of our total damages. When you
shorten the field, it is always easier to score a touchdown. This case is not about, nor is it limited
to, charges through December 31, 2019. That is an insignificant part of the costs to the class.
Transamerica's conduct, which is the basis for the complaint, is for damages caused by the
massive 3-year compounded increases, not merely the overcharges through December 31, 2019.
And, of course, the release all policyholders are giving to Transamerica is broad, not limited to
charges through December 31, 2019; the release applies to "future" damages, known and
unknown (Settlement, ¶ 94).

Using the past as a measurement admittedly has the advantage of certainty. Future
damages are uncertain, policyholders may die or cancel their policies. But that does not mean
that future damages should be completely ignored. After all, these are *life* insurance policies.
For the policyholders, the future is of more concern. And, the future uncertainties can be
accommodated by projecting damages at various future dates, regardless of timeframe. But the
point is that indisputably there are large future damages no matter what the period selected if
Transamerica is allowed to implement the challenged rate increase as permitted in the settlement.

To repeat, we are not saying that the $88 million fund should not be allocated among the
class based on past charges; that may be desirable for administrative reasons. But it is not a true
measure of the fairness of the settlement. The correct, universal, and simple formula is to
measure the recovery against the actual damages. And, when done here, the recovery to each
policyholder is *de minimis*.

III.   TRANSAMERICA IS LIKELY TO RECOUP THE $88 MILLION SETTLEMENT
       FROM THE POLICYHOLDERS. IN FACT IT HAS ALREADY ACTED TO
       ELIMINATE OUR SETTLEMENT BENEFIT.

There is nothing in the settlement agreement to prevent Transamerica from recovering the
$88 million payment from the policyholders through future monthly deduction charges. This
seems quite likely. Because the $88 million settlement is a cost to Transamerica, and because
the common wording of all policies permits Transamerica to charge unanticipated "costs" or
"expenses" to the policyholders, Transamerica will likely charge back the full amount of the
settlement to policyholders. Indeed, the policyholders (a progressively smaller group going
forward) will be charged more (the total $88 million) than they receive (the net amount after
expenses). Long term, surprisingly, policyholders are better off without the $88 million
settlement. We can find nothing in the settlement documents which prevents this result.

The court should require that Transamerica commit that it will eliminate the $88 million
cost from any calculations of monthly charges.

More specifically, we believe that this has, in fact, already occurred: Transamerica has,
through increased monthly charges, acted to cancel out our settlement credit. Last month we

Clerk of the Court
July 28, 2020
Page 7

were surprised to discover that Transamerica is raising our "customary" deduction by an
unprecedented 68% effective October 14, 2020.  The amount of this increase is a true outlier.
Our prior customary increases, as well as future projections, fall in the 16-21% range.  This is
illustrated by the following chart:[4]

## OUR CUSTOMARY DEDUCTIONS PAST AND PROJECTED

| Year Ending | % Increase |
|:-----------:|:----------:|
| 2015 | 21% |
| 2016 | 20 |
| 2017 | 17 |
| 2018 | 18 |
| 2019 | 18 |
| 2020 | 20 |
| **2021** | **68** |
| 2022 | 20 |
| 2023 | 19 |
| 2024 | 18 |
| 2025 | 18 |
| 2026 | 17 |
| 2027 | 16 |

This is troubling.  The 68% is far greater than the same charges for each of the 21-year
history of our policy.  It also far exceeds each of the projected increases for future years.  It is a
huge once-in-a-lifetime charge.[5]  We and our agent sought an explanation from Transamerica for
this unique charge.  No one at Transamerica had any idea of the reason for the charge; one
person volunteered it was "strange."  Nor did anyone at Transamerica seem to be troubled by it.
Transamerica unfortunately has not been chastened by the settlement, but rather emboldened by
it.

We cannot imagine a legitimate reason for this sudden, astonishing, one-time charge.
The main factors influencing the customary deductions (mortality, interest, etc.) are not one-time
events.  Indeed, any unforeseen costs should already be covered by the ongoing 39%
extraordinary increases.  The only one-time cost of which we are aware, that coincides with this
new charge, is the cost of the settlement.  We estimate the cost to us of this new charge for just

---

[4] Past numbers are derived from our Transamerica annual Statements of Value; 2019 and 2020 are
estimates due to lack of information; the forecasts are Transamerica's (Appendix, Att. 11); the 68% is the
difference in the 2020 rate of $.82 and the 2021 rate of $1.3733 (Atts. 10, 11).

[5] We used a chart to make this point because it is not easily unearthed.  The information supporting the
chart is compiled from various documents so the existence of this unprecedented increase is not readily
apparent.

Clerk of the Court
July 28, 2020
Page 8

one year is around $14,000, conveniently wiping out our $13,500 settlement credit. We see no
reason why this new charge is unique to us.

We want to be clear. We are not questioning the legality of the "customary" increases.
They, unfortunately, are not being challenged in this lawsuit. But that does not mean they should
be ignored when they directly impact the settlement. To ignore how customary deductions can
and are being used by Transamerica, results in the erroneous conclusion that the settlement
provides net dollar benefits, immediate and future, which in fact it does not.

As noted, these customary increases are not challenged in this litigation. But when, as in
this case, they result in surreptitiously subverting the settlement, that is bad faith, and grounds to
reject the settlement.

IV.    THE 7-YEAR PROTECTION HAS NO VALUE.

The settlement provides that Transamerica will not impose "additional MDR increase(s)"
for 7 years (Settlement, § 72e). This protection is illusory.

There are some preliminary reasons why this protection is merely theoretical. The
settlement permits Transamerica's massive deductions to go forward. As their impact
compounds year by year, it is unlikely Transamerica would need further increases. The horse is
out of the barn. It is also unlikely that any individual policyholder would have the facts,
incentive, and resources to enforce this complex, ambiguous prohibition.

Apart from these considerations, so long as Transamerica maintains the broad freedom to
increase the "customary" rates, the prohibition against "additional" or "extraordinary" rate
increases is irrelevant. The distinction between "customary" and "additional" rate increases is a
Transamerica creation; it is not found in the policies. Shortly, it will disappear, when the
extraordinary 3-year increases are completed. There will again be one yearly number provided
us for total "customary" deductions. What is in that single number is unknown and unknowable,
at least to the policyholders. The bottom line is that the 7-year prohibition is simply inapplicable
to how Transamerica imposes future increases.

The futility of the 7-year prohibition is ironically and vividly illustrated by
Transamerica's recent imposition on us of a 68% "customary" increase. Transamerica imposed
this extraordinary increase notwithstanding the applicability of the 7-year prohibition which
became effective on the "date of the Settlement Agreement" (Notice to Class, p. 6). Despite the
applicability of the prohibition, Transamerica is imposing the largest increase in the history of
our policy. Indeed, even larger than the 39% increase, which this prohibition is supposedly
designed to prevent.

So long as Transamerica puts the increase in Column A ("customary increases"), not
Column B ("additional increases"), there is no protection against future increases.

Clerk of the Court
July 28, 2020
Page 9

V.   THE SETTLEMENT DOCUMENTS DO NOT ADEQUATELY DISCLOSE ITS
     IMPACT ON THE POLICYHOLDERS.

Importantly, the settlement documents, principally the Notice to the Class, do not provide
a meaningful or balanced description of the impact of the settlement on the policyholders.
Although technically correct, all in all we found the Notice materially misleading.

We suggest that the bar for disclosure in this case is high.  The policyholders' need for a
clear and balanced description of the settlement's impact is particularly acute because:  the
subject matter is extraordinarily complex; all the facts are outside of the control of the
policyholders; how the increases impact the policy values is not obvious; the settlement will
apply to the policyholders future relationship with Transamerica; and there is a preexisting
background of confusion and misinformation created by Transamerica.  Indeed, as explained
earlier, Transamerica has carried forward this pattern of misinformation and confusion during the
settlement period with its May 8, 2020, letter (Att. 11).[6]

Class members have one other possible source for obtaining information on the
settlement.  The settlement Notice suggests policyholders contact the "Settlement Administrator"
-- appointed solely by Transamerica (Settlement, ¶ 73) -- for more settlement "details" and
"documents."  This has not proved helpful.  We called the Administrator on June 23 and 24
requesting documents including the Settlement Agreement, which the Notice states will be sent
to us "at no cost" (Notice, p. 12).  (We find it difficult to read documents online.)  The person
handling our request at the Settlement Administrator's office had no knowledge of the
settlement; did not know where the document was; refused to commit to sending the document,
saying they would call us back in "48 hours."  We never received a return call or the documents.

In light of this confusing and challenging landscape, the policyholders need and are
entitled to a balanced and accurate description of the impact on the settlement on their policies.
The Notice fails to do so.  The Notice is deficient as it:  (a) gives prominence to the payment to
the class, which is small and obscures the real costs to the class, which are large; and (b) creates
the misleading impression that the policyholders are protected from further increases for 7 years.

(a)   The Real Costs to the Policyholders Are Buried.

On a first reading of the Notice, policyholders would likely focus on the $88 million
settlement fund, an eye-catching number, which creates the impression of a good settlement,
particularly when coupled with the purported 7-year protection.  That was our first impression,
too.  But that impression is incorrect.  The $88 million fund needs context to have meaning for

---

[6] Transamerica's letter does not expressly mention the litigation or the settlement but nevertheless deals
directly and aggressively with aspects of both, such as the future annual 39% increases.  The letter
violates the wording and at least the spirit of the settlement provisions prohibiting Transamerica from
communicating with policyholders "involving the Action [litigation] or the proposed Settlement"
(Settlement, ¶ 82).

Clerk of the Court
July 28, 2020
Page 10

the policyholders. In context, the individual credit from the fund to each policyholder is not large; it is relatively insignificant. And, critically omitted, that even their small credit may well be charged back to them.

In terms of dollars, far more important to class members than the $88 million is that the settlement approves Transamerica's 3-year 169% increases, the very increases challenged in this case. The 3-year increases are authorized to go ahead, without change, exactly as Transamerica notified us in August 2018. This is the same increase that class counsel has called, "massive," in "bad faith," and will "wipe" from its books policies of "vulnerable" and "elderly" policyholders (Amended Complaint, ¶¶ 8, 89). The cost to the policyholders of this provision is hundreds of millions of dollars.

How does the Notice treat these most important "massive," "bad faith" increases? With a single sentence in the 12-page Notice. And, the sentence, misleadingly, is in the Section entitled "THE SETTLEMENT BENEFITS" (p. 6). Worse, the sentence describes this most important provision in impenetrable legalese using two interlocking definitions found in another document: Transamerica "may continue to maintain the MDR schedules implemented through the MDR Increases in the future."

The Notice literally buries the most important term in the settlement: the 3-year increases, which is what this case is all about, are going ahead.

      (b)    <u>The 7-Year Protection.</u>

The Settlement Notice provides:

> "Transamerica has also agreed that it will not impose any additional MDR increase(s) on any Class Policy within (7) years of the date of the Settlement Agreement . . ." (p. 6).

This provision is far from clear. Most policyholders would certainly believe this provision protects them from some "additional" increases. Initially we read it the same way. But this is incorrect. As pointed out, and undisputed, policyholders are in fact subject to future discretionary increases, large and small (Section IV above). The Notice omits to state this critical fact. Indeed, large increases are being imposed now. (Section III above). That is why this half-truth, even if technically correct, is materially misleading.

CONCLUSION

We are well aware that there is momentum to approve this settlement based on legitimate considerations -- avoiding long, uncertain litigation, recognizing that no settlement is perfect, as well as a desire to provide prompt relief to the class. There is always a tension between doing it quick and getting it right. We suggest that on this record, the scale tips decidedly in favor of

Clerk of the Court
July 28, 2020
Page 11

getting it right.  The urgency argument is not compelling.  For most class members the recovery is small, fleeting, and just a paper transaction at least in the near term.

If asked, we, and we suspect most class members, would prefer that the credit be rejected or delayed in return for the potential of achieving some real protection from Transamerica's abuses, rate increases, threats, and its campaign of disinformation.

There is an old lawyer's joke, "The clients go to jail, and the lawyers go to dinner."  The policyholders here are not, of course, going to jail.  We are, however, being resentenced to life with Transamerica without meaningful relief or protection.  Rejection of the settlement prevents that unfair result.

Respectfully,

Stuart Brafman, Trustee
c/o Sher Family Trust
2810 McGill Terrace, N.W.
Washington, DC  20008
Tel:  240-997-6803

Stanley O. Sher, Grantor/Insured
Sher Family Trust
2810 McGill Terrace, N.W.
Washington, DC  20008
Tel:  202-667-3634

July 28, 2020



**TRANSAMERICA**®
LIFE INSURANCE COMPANY
Administrative Office | 4333 Edgewood Road, NE | Cedar Rapids | Iowa 52499

Sher Family Irrev Trust
% Stuart Brafman TTEE
2810 Mcgill Ter Nw
Washington,  DC  20008-2748

August 24, 2018

Transamerica Life Insurance Company
Policy Number: 000060051266

### Notice of Monthly Deduction Rate Increase

Dear Sher Family Irrev Trust:

We're making a change that affects the universal life insurance policy you purchased from Transamerica on 10/14/1999. This change impacts future payments you may need to make under the terms of the policy. We're letting you know about this change as soon as possible, so that you can evaluate your coverage and decide what you want to do. After you read this letter, we encourage you to contact us at **800-670-1412**. A team is standing by to talk you through your options, answer questions, and assist with next steps. Please see our hours of operation at the end of this letter.

***What's Changing and Why***
Once a month, Transamerica withdraws a "monthly deduction" from the policy's accumulation value. The factors that affect the monthly deduction rates are outlined in your policy. Starting on your next policy anniversary date after May 31, 2018, your original monthly deduction rate will increase by approximately 39%. In addition, we anticipate increasing your monthly deduction rate by approximately 39% on each of your policy anniversary dates after May 31, 2019 and May 31, 2020. These increases will be on a compound basis and are in addition to customary increases associated with age. Even after these changes go into effect, your new monthly deduction rates will never exceed the policy's maximum monthly deduction rates guaranteed at the time the policy was purchased.

We're increasing the monthly deduction rates for all TransSurvivor 98 and 99 policies based on our current expectations about our future costs for providing coverage. Even though our future costs of providing coverage are subject to change over time, and such a change can impact the extent to which we increase rates, we believe at this time that the second and third rate increases specified above are necessary and, therefore, we're notifying you in advance to help you plan accordingly. For an estimate of your new monthly deduction for the coming policy year, please contact us.

We understand that the increase may be a significant consideration for you. You have several options, which are described below. We value the relationship we have with you. We know this insurance is important to you, and we want to work with you to keep this coverage in place.



**Policy Information**
To evaluate your options, you'll need the following information about your policy. This information is current as of 06/14/2018.

Last policy anniversary: 10/14/2017
Face amount: $3,402,000.00
Current accumulation value: $812,285.89
Current cash value (minus any policy loans): $805,481.89

**Your Options**
Because this rate increase could have a significant impact on your policy, we want you to be aware of options that may be available to you.

Retain Current Face Amount Option. You may choose to take no action at this time. So long as your policy has sufficient accumulation value to cover the increased monthly deduction, you can maintain your policy with its current face amount. However, at some point, you may need to pay additional premiums to keep the policy in force. The best way to evaluate this option is to request an illustration from us so that you can see how the policy would change depending on the premiums paid. Please note that we won't alter your planned premium unless you direct us to do so.

Reduce Face Amount Option. You may have the ability to decide how much premium you want to pay and for what duration you wish to keep the policy in force. If so, we can reduce the face amount to the level supported by the premium — assuming the new face amount is above the required minimum face amount. If you are interested in this option, please contact us.

Surrender for Cash Value Option. You may choose to surrender your policy for the cash value as of the date we receive your surrender request. You may take the cash or you may be able to exchange this policy for another life insurance policy that accumulates cash value — either with us or with another carrier. The decision to surrender your policy should not be taken lightly.

Other Options. There may be other options available to you. We can discuss this possibility with you when you contact us.

**Endorsement to Modify Grace Period**
Your policy may have been issued with an Endorsement to Modify Grace Period. If your policy has this endorsement and you have met the endorsement's conditions, your policy will not enter its Grace Period, even if the policy's accumulation value is insufficient to cover the monthly deduction and other policy charges and/or fees.

**What to Do Next**
Please consider your choices very carefully. Before you make a decision about how to proceed, you should consult with your tax, insurance, and/or financial advisor. Please understand that we cannot offer you tax or legal advice.

If you have questions about your policy or this letter, we encourage you to contact us directly at 800-670-1412, Monday through Friday between 9 a.m. and 6 p.m. ET.

Best regards,

Transamerica

cc: 362163

**For more information, please call us at 800-670-1412, Monday through Friday between 9 a.m. and 6 p.m. ET. We're here to assist you.**

Transamerica Life Insurance Company | Transamerica Premier Life Insurance Company
Transamerica Advisors Life Insurance Company | Transamerica Casualty Insurance Company

September 27, 2018

Transamerica Life Insurance Company
Administrative Office
4333 Edgewood Road, NE
Cedar Rapids, Iowa 52499

Re:   Your Letter of August 24, 2018
      Notice of Monthly Deduction Rate Increase
      Policy Number:  000060051266

Dear Sir/Madam:

We have your letter of August 24 advising us that during the next 3 years you are raising the monthly deduction rates of our Transamerica life insurance policy by 117% over our original cost. Actually, the increase seems more like 200% over our present cost. Either way, increases of this magnitude come as a complete surprise to us. We are writing to tell you that we object to these increases as unauthorized and unreasonable. Your letter, moreover, is unclear and contains a serious error. We are therefore also writing to seek necessary and accurate information from Transamerica which will permit us to understand your proposal, and decide how to proceed.

Your letter acknowledges that these sharp increases are "significant." Your letter further suggests we have three "options," all of which increase our costs, erodes the value of our policy and, of course, reduces Transamerica's costs and obligations. Your sole rationale for changing the fundamentals of our policy is your general unsupported statement that the increase is based on your "current expectations about our future cost for providing for this coverage." We believe you cannot simply increase our cost at your discretion. The policy states that, any "change" in the "monthly deduction rates" will be based on "expectations" of "future cost factors" such as "mortality," "taxes," etc. (p.13). You do not, however, provide one fact or figure explaining or supporting this major change. How can we possible make decisions concerning your complex options if we do not have the facts explaining the change?

Apart from the lack of any justification or explanation for the increases, even the proposed increases themselves (39% of "original monthly" deductions, "compounded" in addition to "customary increases") are unclear. What number are you using for "original monthly deductions?" How are the increases calculated? Compounded? What are the dollar amounts? We need the facts.

So that we may understand your position and evaluate the options set out in your letter, please provide us in writing the following information:

i.    Explain clearly with specificity using numbers how the present "monthly deduction rates" are calculated, and how the calculation of those rates is changing under your proposed increases.

ii    What is the dollar amount you are using for the new total monthly deductions for each of the next 3 years.  Also show for each of these 3 dollar amounts, what portion consists of (a) the 39% increase, (b) "customary increases associated with age" which you say is an additional charge, and (c) other costs.

iii.   Are your new monthly deduction rates being applied to our policy projections beyond Year 22?  If so, for how long?  When and how frequently are monthly deduction rates reviewed and changed?

iv.   You say you are applying the 39% increase this year to the "original monthly deduction."  What is that number?  Why did you select this 19 year old number, not your most recent 2017 number which presumably is more accurate?  It appears that using the stale 19 year old number, rather than the most recent 2017 number, results in a higher cost to us.  Is this correct?

v.    Attached is your recent projected values for our policy (Attachment 1).  In the non-guaranteed values, you project Accumulated Value of $928,507 in Year 23 and $920,912 in Year 24 -- for each of these 2 years, what is the total dollar amount of monthly deductions you are using in determining these Accumulated Values?  Have these values factored in the results/savings you are expecting from these 39% increases?

vi.   Transamerica's management and calculation of our policy accumulation/cash values are quite troublesome.  It turns out that the past information you have provided us has been materially misleading.  For example, as recently as November 2016, you showed the projected non-guaranteed accumulated value of our policy in Year 32 to be $1,335,223 (Attachment 2).  (In 2017, curiously, you refused to provide us with projections illustrating non-guaranteed cash values; this was contrary to the wording of our Policy, which requires such statements "at any time", p. 22.)  Now, however, in 2018, you provide us with projections showing "0" accumulated value in Year 32 (Attachment 1).  How can such an enormous change in your projections -- a loss of our entire cash value, $1,335,223, occur so precipitously from your 2016 illustration to your very next illustration in 2018, just 18 months?

2

vii.    Assuming we exercise your Option, "Surrender for Cash Value" effective October 31, 2018, what would be the net dollar amount you would pay us and what portion would be taxable? Also, please provide our basis for tax purposes as of October 31, 2018.

Beyond the lack of transparency, your letter contains a significant error. You state that "at some point, [you] may need to pay additional premiums to keep the policy in force." You say that our premiums will increase if the accumulation value is less than the monthly deductions. That is not correct. The premiums under our policy are fixed. This is provided for in our policy by the "Endorsement to Modify Grace Period" which is part of our policy. Every illustration you have provided us as well as the initial disclosure shows no premium when the accumulation value is zero. (Attachment 1). We pay a "Select Monthly Premium," an increase cost for this protection, which you call Assured Coverage Endorsement (ACE). Your misrepresentation is no small point. It would expose us to sharply higher premiums. It materially effects which option we select. Please confirm in writing that our premiums are fixed, and that your statement to the contrary is incorrect.

We ask that you postpone these increases until we have the necessary and correct information on which to base a decision. The choices you are asking us to make are complex. They require data and information that only you have. We, therefore, cannot make these decisions in the next few weeks when your increase in our policy rates will presumably occur. Fairness dictates that the effective date of your increase be put off until after you provide us with the correct information necessary for us to make an informed decision.

Finally, I am authorizing Stanley O. Sher (one of the insureds and a grantor of the Sher Family Trust) to contact Transamerica on my behalf to discuss any and all aspects of the policy and I authorize you to discuss the policy with him and provide him with any and all information and data you have concerning the policy.


Sher Family Irrev. Trust
Stuart Brafman TTEE


cc: Stephen Taylor, Commissioner
    Department of Insurance, Securities and Banking
    Washington, DC
      Howard Soltoff
      Stanley Sher


3

(ATTACHMENT I)

DGD  10999



# TRANSAMERICA LIFE INSURANCE COMPANY

**TRANSSURVIVOR 115**
POLICY NUMBER: 60051266
ISSUED OCTOBER 14, 1999

1ST JT. INSURED: LINDA R SHER
1ST JT. INSURED: FEMALE ISSUE AGE: 61 PREFERRED NON-SMOKER

2ND JT. INSURED: STANLEY O SHER
2ND JT. INSURED: MALE ISSUE AGE: 64 STANDARD NON-SMOKER

FACE AMOUNT: $3,402,000
PREMIUMS PAYABLE: ANNUALLY

<> ACCUM VALUE BALANCE PROJECTED TO:
OCTOBER 14, 2018 IS $819,726.13

PREMIUM PAID TO DATE: $760,000.00
CURRENT WEIGHTED INTEREST RATE: 4.00%
ACCUM VALUE BALANCE AS OF
AUGUST 14, 2018 IS $815,461.81
RIDER(S)-SEE EXPLANATORY NOTES

| END OF POLICY YR AGE | NON GUAR. INTR. RATE | ANNUALIZED PREMIUM OUTLAY | ANNUAL WITHDRAWALS | PROJECTED VALUES AT GUARANTEED INTEREST RATE (4.00%) AND GUARANTEED MONTHLY DEDUCTIONS | | | NON-GUARANTEED PROJECTED VALUES AT ILLUSTRATED INTEREST RATES AND MONTHLY DEDUCTIONS | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | CASH VALUE | ACCUM VALUE | DEATH BENEFIT | CASH VALUE | ACCUM VALUE | DEATH BENEFIT |
| 20 81 | 4.00 | 40,000 | 0 | 731,037 | 731,037 | 3,402,000 | 868,822 | 868,822 | 3,402,000 |
| 21 82 | 4.00 | 40,000 | 0 | 606,341 | 606,341 | 3,402,000 | 906,578 | 906,578 | 3,402,000 |
| 22 83 | 4.00 | 40,000 | 0 | 435,537 | 435,537 | 3,402,000 | 922,871 | 922,871 | 3,402,000 |
| 23 84 | 4.00 | 40,000 | 0 | 205,047 | 205,047 | 3,402,000 | 928,507 | 928,507 | 3,402,000 |
| 24 85 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 | 928,507 | 928,507 | 3,402,000 |
| 25 86 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 920,912 | 920,912 | 3,402,000 |
| 26 87 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 897,025 | 897,025 | 3,402,000 |
| 27 88 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 853,108 | 853,108 | 3,402,000 |
| 28 89 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 784,621 | 784,621 | 3,402,000 |
| 29 90 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 685,852 | 685,852 | 3,402,000 |
| 30 91 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 549,572 | 549,572 | 3,402,000 |
| 31 92 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 366,336 | 366,336 | 3,402,000 |
| 32 93 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 123,854 | 123,854 | 3,402,000 |
| 33 94 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 0 | 0 | 3,402,000 A |
| 34 95 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 0 | 0 | 3,402,000 A |
| 35 96 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 0 | 0 | 3,402,000 A |
| 36 97 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 0 | 0 | 3,402,000 A |
| 37 98 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 0 | 0 | 3,402,000 A |
| 38 99 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 0 | 0 | 3,402,000 A |
| 39 100 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 0 | 0 | 3,402,000 A |

This illustration assumes that the definitional requirements for a life insurance contract under I.R.C. section 7702 have been satisfied by complying with the cash value accumulation test.

<> Accumulation value projected to 10/14/2018 assumes that the policyowner will pay premiums totaling $0.00 in addition to the "Premiums Paid to Date" shown above. This projected value is based on the lesser of (1) the current weighted interest rate or (2) the current rate for new premiums as described in the attached "Explanatory Notes for TRANSSURVIVOR 115". It is not guaranteed.

IF YOU HAVE MADE A RECENT PAYMENT, LOAN OR WITHDRAWAL, IT MAY NOT BE REFLECTED ON THIS ILLUSTRATION.

PLEASE REFER TO THE ATTACHED EXPLANATORY NOTES.   P7402767|3999332|3330950|.00|0||||||||| 00|.00|
THIS ILLUSTRATION IS NOT COMPLETE UNLESS ALL NUMBERED PAGES ARE INCLUDED.
This is an illustration, not a contract. Presented by Transamerica on ,  SEPTEMBER 07, 2018 10:07:15 DC   Kind Code: 2050   Page 1 of 4

(ATTACHMENT 2)

SPH  10534



# TRANSAMERICA LIFE INSURANCE COMPANY

### TRANSSURVIVOR 115
POLICY NUMBER: 60051266
ISSUED OCTOBER 14, 1999

1ST JT. INSURED: LINDA R SHER
1ST JT. INSURED: FEMALE ISSUE AGE: 61 PREFERRED NON-SMOKER

2ND JT. INSURED: STANLEY O SHER
2ND JT. INSURED: MALE ISSUE AGE: 64 STANDARD NON-SMOKER

FACE AMOUNT:  $3,402,000
PREMIUMS PAYABLE:  ANNUALLY

<> ACCUM VALUE BALANCE PROJECTED TO:
OCTOBER 14, 2017 IS $764,518.00

PREMIUM PAID TO DATE:  $720,000.00
CURRENT WEIGHTED INTEREST RATE: 4.00%
ACCUM VALUE BALANCE AS OF
OCTOBER 14, 2016 IS $745,031.66
RIDER(S)-SEE EXPLANATORY NOTES

| END OF POLICY YR AGE | NON GUAR. INTR. RATE | ANNUALIZED PREMIUM OUTLAY | ANNUAL WITHDRAWALS | PROJECTED VALUES AT GUARANTEED INTEREST RATE (4.00%) AND GUARANTEED MONTHLY DEDUCTIONS | | | NON-GUARANTEED PROJECTED VALUES AT ILLUSTRATED INTEREST RATES AND MONTHLY DEDUCTIONS | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | CASH VALUE | ACCUM VALUE | DEATH BENEFIT | CASH VALUE | ACCUM VALUE | DEATH BENEFIT |
| 19 80 | 4.00 | 40,000 | 0 | 689,892 | 693,294 | 3,402,000 | 816,265 | 819,667 | 3,402,000 |
| 20 81 | 4.00 | 40,000 | 0 | 591,451 | 591,451 | 3,402,000 | 874,803 | 874,803 | 3,402,000 |
| 21 82 | 4.00 | 40,000 | 0 | 450,782 | 450,782 | 3,402,000 | 929,675 | 929,675 | 3,402,000 |
| 22 83 | 4.00 | 40,000 | 0 | 260,343 | 260,343 | 3,402,000 | 983,489 | 983,489 | 3,402,000 |
| 23 84 | 4.00 | 40,000 | 0 | 5,412 | 5,412 | 3,402,000 | 1,035,750 | 1,035,750 | 3,402,000 |
| 24 85 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 | 1,085,902 | 1,085,902 | 3,402,000 |
| 25 86 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 1,085,902 | 1,085,902 | 3,402,000 |
| 26 87 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 1,133,365 | 1,133,365 | 3,402,000 |
| 27 88 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 1,177,523 | 1,177,523 | 3,402,000 |
| 28 89 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 1,217,750 | 1,217,750 | 3,402,000 |
| 29 90 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 1,253,386 | 1,253,386 | 3,402,000 |
| 30 91 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 1,283,744 | 1,283,744 | 3,402,000 |
| 31 92 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 1,308,059 | 1,308,059 | 3,402,000 |
| 32 93 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 1,325,519 | 1,325,519 | 3,402,000 |
| 33 94 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 1,335,223 | 1,335,223 | 3,402,000 |
| 34 95 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 1,336,155 | 1,336,155 | 3,402,000 |
| 35 96 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 1,327,161 | 1,327,161 | 3,402,000 |
| 36 97 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 1,305,578 | 1,305,578 | 3,402,000 |
| 37 98 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 1,099,962 | 1,099,962 | 3,402,000 |
| 38 99 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 1,033,109 | 1,033,109 | 3,402,000 |
| | | | 0 | 0 | 0 | 3,402,000 A | 944,953 | 944,953 | 3,402,000 |

This illustration assumes that the definitional requirements for a life insurance contract under I.R.C. section 7702 have been satisfied by complying with the cash value accumulation test.
<> Accumulation value projected to 10/14/2017 assumes that the policyowner will pay premiums totaling $0.00 in addition to the "Premiums Paid to Date" shown above. This projected value is based on the lesser of (1) the current weighted interest rate or (2) the current rate for new premiums as described in the attached "Explanatory Notes for TRANSSURVIVOR 115". It is not guaranteed.

IF YOU HAVE MADE A RECENT PAYMENT, LOAN OR WITHDRAWAL, IT MAY NOT BE REFLECTED ON THIS ILLUSTRATION.



Transamerica Life Insurance Company
4333 Edgewood Road NE
Cedar Rapids IA 52499

October 9, 2018

Sher Family Irrev Trust
Stuart Brafman Ttee
2810 Mcgill Terr NW
Washington, DC 20008

Policy Number: 000060051266
Insured(s):      Linda R Sher

Dear Sir or Madam :

Thank you for being a valued Transamerica Life Insurance Company customer.

We are responding to your correspondence received on October 2nd, 2018. On behalf of
Transamerica Life Insurance Company ("Transamerica") we take our customers' concerns
seriously and we appreciate you taking the time to advise us of those concerns. We hope the
following information is beneficial and answers your questions regarding this matter.

In your correspondence, you addressed concerns regarding your policy projection and
questioned Transamerica's authority to increase the monthly deduction rates on your policy.

Your policy is a flexible premium universal life insurance policy (Transultra 115) issued on
October 14th, 1999 with a face amount of $3,402,000. The policy requires premium payments to
establish a cash (or accumulation) value, which earns interest. This interest rate can change,
but will never be less than 4%.

Your policy gives you the flexibility of choosing the amount of premium to pay and how often to
make payments. But the premium amount must be sufficient to cover the monthly deduction as
described in the policy. If you pay more than the monthly deduction, the policy accumulates
cash value.

A monthly deduction is subtracted from the cash value of the policy. The monthly deduction is,
in part, based on the attained age of the insured and generally increased each year as the
insured gets older. To ensure that the cash value does not decrease over time, the premiums
paid, plus credited interest must be enough to cover the monthly deduction. When the cash
value decreases to a point that it cannot cover the monthly deduction, the policyholder must
increase premium payments or the policy will lapse.

Your policy includes a Table of Annualized Guaranteed Monthly Deduction Rates. We
guarantee the monthly deduction rate will never be higher than the guaranteed rates set forth in
that Table. We can apply a lower monthly deduction rate in our discretion.

In exercising its discretion to increase the current monthly deduction rates applied to a particular
policy plan, Transamerica considers numerous factors and evaluates how that group of policies

is projected to perform in the future. As stated in the policy, the factors considered include, but are not limited to, mortality, expenses, interest, and federal, state and local taxes.

With respect to your policy, Transamerica determined the future projected policy performance warranted an increase in the monthly deduction rates. As authorized by your policy, Transamerica increased the monthly deduction rate on the policy and on all TransUltra 115 policies based on its current expectation regarding its future costs of providing coverage. The new monthly deduction rates will not exceed the guaranteed maximum rates shown in your policy.

On August 24th, 2018, prior to the policy anniversary, we sent you notice of this monthly deduction rate increase. This rate increase is in addition to the increases that are associated with age.

Although you contend that Transamerica should not have increased the monthly deduction rate on your policy, you acknowledged this possibility when you obtained your policy. You received a custom sales illustration that expressly stated: "Monthly deduction rates represent costs associated with providing this coverage such as: Cost of insurance, expenses and taxes. Current monthly deduction rates are guaranteed only to the extent described in the accompanying Guide to the Illustration."

The illustration also explains that "CHANGES TO THE CURRENT INTEREST RATE OR POLICY CHARGES MAY RESULT IN ADDITIONAL PREMIUM PAYMENTS BEING REQUIRED TO KEEP YOUR POLICY IN FORCE."

The illustration shows that based on the $40,000 annual premium you decided you would pay, coverage would have ended at age 100 based on the guaranteed interest rate of 4% and the guaranteed maximum monthly deduction rates. Although it shows that the policy would have lapsed beyond age 115 under the then current interest rate and without any monthly deduction rate increases, the credited interest rate at the time was 6.15%. The credited interest rate did not remain at 6.15% and instead declined to its current rate of 4%. As a result, even without the monthly deduction rate increase, your policy would have lapsed at policy age 100.

This policy features a no-lapse guarantee known as the Assured Coverage Endorsement ("ACE"). The ACE provision guarantees that the policy will remain active and in force as long as the required premium is paid on or before the due date each year.  Unlike a traditional universal life insurance policy, this product does not rely on an accumulation value; in fact, that number is very likely to be negative at some point.  The ACE provision guarantees that regardless of the accumulation value, as long as the policy owner is making the scheduled premium payments, the policy will remain in force per the original contract.

To help demonstrate the current outlook on your policy, we previously provided you with a current illustration for your review. Please note that **this illustration is a projection, not a contract**. The illustration shows two policy outlooks. The "Guaranteed" outlook assumes we are crediting your accumulation value with the minimum interest, and that the monthly deduction is based on the maximum rate authorized by your policy (as shown in the Table of Annualized Guaranteed Monthly Deduction Rates in your policy). The "Non-Guaranteed" outlook assumes the current interest rate credited to your accumulation value and the current monthly deduction rate. You can see that under this "Non-Guaranteed" outlook, after the monthly deduction rate increase, your policy will remain in force until age 100.

If the outlooks in the provided illustrations are satisfactory to you, no changes are necessary at this time. If you would like to make any changes, we can generate additional illustrations to meet your changing coverage needs. We recommend our policy holders contact us at least

once each year to request a new illustration after they receive their Statement of Policy Value each year.

Mr. Brafman, we know this life insurance is important to you and your family, and we are committed to providing quality service to our customers. Our Customer Contact Center is available to you weekdays at 1-800-852-4678, should have additional questions. You may also contact us by fax at 866-622-5051 or by email at tii.customerservice@transamerica.com.

Best regards,

Customer Service
Transamerica

*ACT. 4*

November 5, 2018

Transamerica Life Insurance Company
Administrative Office
4333 Edgewood Road, NE
Cedar Rapids, Iowa 52499

Atterntion:  Customer Service

        Re:     Policy Number:  000060051266
                 Insured(s):  Linda R Sher

We now have your letter of October 9th, which was faxed to our agent on October 29. (We have yet to receive it.)  Your letter, disappointedly, is not responsive to the two issues we raised in our letter of September 27.  We are writing once again hoping to receive a meaningful response.

First, in our September 27 letter, we pointed out that you falsely stated in your August 24 letter to us that we may need to pay "additional premiums to keep the policy in force."  We asked you to acknowledge and correct that misstatement.  Your October 9 response, however, does neither.  You ignore your prior misstatement and then confusingly say, "the premium amount must be sufficient to cover the monthly deduction" and later inconsistently say our ACE endorsement provides that our policy remains in force "as long as the policy owner is making the scheduled premium payments."  Which is it?  Please, simply confirm that – so long as we timely pay the $40,000 scheduled annual premium, the policy remains in force until age 100?  Yes or no.

Second, the main point in our September 27 letter was a request for some specific and necessary information on how you are managing our policy.  We are very confused by what you are doing.  You, however, do not provide any information we requested.  Indeed, you do not even acknowledge our request.  Does this mean you are refusing to provide us with any information whatsoever on how you are managing our policy?  If so, what is the reason for denying a "valued customer" (your words) necessary information on its policy?

Finally, your October 9 letter raises a new point.  You say that you can charge us any monthly deduction from our cash value so long as it is below the guarantee.  You say the amount you can charge us is in your "discretion."  Really?  Where, specifically, in the policy does it say that?  Nowhere do we see the word discretion.  To the contrary, your letters and, indeed, the policy at p. 13 unambiguously states that any changes in deductions will be based on "future cost factors."  Page 13 of the policy also spells out that the original deductions depends on – sex, smoking, age, etc.  Please tell us, yes or no, are your recent increases based on "future cost factors"?

We have been a policyholder for 19 years.  We have promptly paid premiums totaling $800,000.  After all this time, you are now dramatically changing the basic economics of our policy.  And your change is contrary to what you have represented to us every year for the past 19 years.  We are confused.  Our agent is similarly confused.  We cannot even understand the math on which the increase cost is based -- you say it is a 39% increase, yet the increase shown in your October statement to us is in fact a 63% increase over the prior year.  Please, as a matter of fairness and good business practice, provide us with clear answers to our questions and the requested information which we need in order to decide how to proceed.

Sher Family Irrev. Trust
Stuart Brafman TTEE

cc: Stephen Taylor, Commissioner
    Department of Insurance, Securities and Banking
    Washington, DC
      Howard Soltoff
      Stanley Sher



Transamerica Life Insurance Company
4333 Edgewood Road NE
Cedar Rapids IA 52499

November 28, 2018

Sher Family Irrev Trust
Stuart Brafman Ttee
2810 Mcgill Terr NW
Washington, DC 20008

Policy Number:   000060051266
Insured(s):        Linda R Sher

Dear Sir or Madam :

Thank you for being a valued Transamerica Life Insurance Company customer.

This policy features a no-lapse guarantee known as the Assured Coverage Endorsement ("ACE").  When the policy was issued, the premium that was set forth was $40,000.00.  The ACE provision guarantees that the policy will remain active and in force as long as that premium is paid on or before the due date each year.  Unlike a traditional universal life insurance policy, this product does not rely on an accumulation value; in fact, that number is very likely to be negative at some point.  The ACE provision guarantees that regardless of the accumulation value, as long as the policy owner is making the scheduled premium payments, the policy will remain in force per the original contract. Based on the original contract and a current projection, the policy is set to last until age 100 for the youngest insured as long as premiums are made on time each year. A copy of the current projection is enclosed for your records.

Each month a deduction ("monthly deduction") is withdrawn from your policy's accumulation value which includes the cost of insurance and administrative charges. Your monthly deduction ("MD") is based on a number of factors, including gender, age, smoking status, rating, and face amount.  Your policy contains a schedule of "Guaranteed" maximum MD rates.  The company may use lower "Current" MD rates and may change the schedule of current MD rates from time to time, but your policy will never be charged with higher MDs than those listed in the "Guaranteed" schedule of your policy. You will see an example of this on the enclosed illustration, the Guaranteed projection is based on your guaranteed maximum MD rates and guaranteed minimum interest rates. While the Non-Guaranteed projection is based on more current MD rates and current interest rates.

While these products did have an unusual monthly deduction rate increase this year, the policies monthly deductions are less than the guaranteed maximum allowed in the policy contract. Based on your contract your policy uses the ACE provision to remain active to a guaranteed age 100, this will not change with the monthly deduction rate increase.

We appreciate your business. For questions regarding this letter, please contact your insurance agent or call us at 800-852-4678 Monday through Friday between 9:00 a.m. and 6:00 p.m. ET. You may also contact us by fax at 866-622-5051 or by email at tii.customerservice@transamerica.com.



WRS 10534

# TRANSAMERICA LIFE INSURANCE COMPANY

### TRANSSURVIVOR 115

POLICY NUMBER: 60051266

ISSUED OCTOBER 14, 1999

1ST JT. INSURED: LINDA R SHER

1ST JT. INSURED: FEMALE ISSUE AGE: 81 PREFERRED NON-SMOKER

FACE AMOUNT: $3,402,000

PREMIUMS PAYABLE: ANNUALLY

2ND JT. INSURED: STANLEY O SHER

2ND JT. INSURED: MALE ISSUE AGE: 64 STANDARD NON-SMOKER

PREMIUM PAID TO DATE: $800,000.00

CURRENT WEIGHTED INTEREST RATE: 4.00%

<> ACCUM VALUE BALANCE PROJECTED TO:

OCTOBER 14, 2019 IS $868,963.81

ACCUM VALUE BALANCE AS OF

NOVEMBER 14, 2018 IS $855,535.61

RIDER(S)-SEE EXPLANATORY NOTES

| END OF POLICY YR AGE | NON GUAR. INTR. RATE | ANNUALIZED PREMIUM OUTLAY | ANNUAL WITHDRAWALS | PROJECTED VALUES AT GUARANTEED INTEREST RATE (4.00%) AND GUARANTEED MONTHLY DEDUCTIONS | | | NON-GUARANTEED PROJECTED VALUES AT ILLUSTRATED INTEREST RATES AND MONTHLY DEDUCTIONS | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | CASH VALUE | ACCUM VALUE | DEATH BENEFIT | CASH VALUE | ACCUM VALUE | DEATH BENEFIT |
| 21 82 | 4.00 | 40,000 | 0 | 760,052 | 760,052 | 3,402,000 | 906,727 | 906,727 | 3,402,000 |
| 22 83 | 4.00 | 40,000 | 0 | 608,650 | 608,650 | 3,402,000 | 923,029 | 923,029 | 3,402,000 |
| 23 84 | 4.00 | 40,000 | 0 | 402,309 | 402,309 | 3,402,000 | 928,676 | 928,676 | 3,402,000 |
| 24 85 | 4.00 | 40,000 | 0 | 124,785 | 124,785 | 3,402,000 | 921,095 | 921,095 | 3,402,000 |
| 25 86 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 897,222 | 897,222 | 3,402,000 |
| 26 87 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 | 853,323 | 853,323 | 3,402,000 |
| 27 88 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 784,857 | 784,857 | 3,402,000 |
| 28 89 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 686,112 | 686,112 | 3,402,000 |
| 29 90 | 4.00 | 40,000 | 0 | 0 | 0. | 3,402,000 A | 549,863 | 549,863 | 3,402,000 |
| 30 91 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 366,665 | 366,665 | 3,402,000 |
| 31 92 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 124,228 | 124,228 | 3,402,000 |
| 32 93 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 0 | 0 | 3,402,000 A |
| 33 94 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 0 | 0 | 3,402,000 A |
| 34 95 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 0 | 0 | 3,402,000 A |
| 35 96 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 0 | 0 | 3,402,000 A |
| 36 97 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 0 | 0 | 3,402,000 A |
| 37 98 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 0 | 0 | 3,402,000 A |
| 38 99 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 0 | 0 | 3,402,000 A |
| 39 100 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 0 | 0 | 3,402,000 A |

This illustration assumes that the definitional requirements for a life insurance contract under I.R.C. section 7702 have been satisfied by complying with the cash value accumulation test.

<> Accumulation value projected to 10/14/2019 assumes that the policyowner will pay premiums totaling $0.00 in addition to the "Premiums Paid to Date" shown above. This projected value is based on the lesser of (1) the current weighted interest rate or (2) the current rate for new premiums as described in the attached "Explanatory Notes for TRANSSURVIVOR 115". **It is not guaranteed.**

IF YOU HAVE MADE A RECENT PAYMENT, LOAN OR WITHDRAWAL, IT MAY NOT BE REFLECTED ON THIS ILLUSTRATION.



**TRANSAMERICA®**

4333 Edgewood Road NE | Cedar Rapids, IA 52499 | www.transamerica.com


Sher Family Irrev Trust
Stuart Brafman Ttee
2810 Mcgill Terr NW
Washington, DC 20008


January 8, 2019

Transamerica Life Insurance Company
Policy Number: 000060051266
Insured(s): Linda R Sher

Dear Sher Family Irrev Trust:

Thank you for being a valued Transamerica Life Insurance Company customer.

This policy is a flexible premium Universal Life Plan which requires premium payments to create an accumulation value. Each month, a deduction is made from this value to pay for the policy's monthly deduction (including the cost of insurance). The flexibility of the policy allows you to change the amount of premium payments to meet individual goals for policy performance. In fact, planned premium payments are flexible and you pay as much or as little as you wish. Bear in mind, however, that your policy will remain in force only as long as there is sufficient value in the policy to pay the monthly charges which are assessed against the policy's accumulation value.

The monthly deduction increases each year at the policy anniversary, so if you are paying just enough to cover that deduction, your premium will need to increase each year as well.

Each month a deduction ("monthly deduction") is withdrawn from your policy's accumulation value which includes the cost of insurance and administrative charges. These monthly deductions, are based upon the insured's gender, age, smoking status, ratings and the amount of coverage at risk. Monthly deductions generally increase as the insured ages. This policy is one of the product types undergoing a 3 tier monthly deduction increase. We are unable to provide future monthly deduction amounts because this amount is evaluated every year on the anniversary of the policy. However, and illustration can be run to confirm policy projections based on premium.

We are not able to see what the amount of the monthly deduction would have been without the increase. The current Monthly deduction for this policy year is $1,760.32. The illustration that was sent to you in November confirms that as long as you continue to pay your premium of $40,000.00 annually the policy will continue to age 100. Since April of 2018 illustrations on affected policies have projected premiums needed while taking into account the monthly deduction rate increase. This caused the differences in accumulation values on previous year's illustrations. The percentage increase is applied to the customary increase amount and not the monthly deduction as a whole. After the three tier

increase, monthly deductions will continue to have customary monthly deduction rate increases per the policy contract.

As of October 31, 2018 the Surrender Value was $852,605.89. A cost basis has been ordered as of January 8, 2019 to provide any gains on this policy, which would be taxable upon surrender of the policy. To confirm, as of January 8, 2019 the Surrender Value is $849,895.75.

If you have questions or need more information, contact your insurance agent or give us a call at 800-852-4678, Monday through Friday between 9:00 a.m. and 6:00 p.m. ET. For your convenience, we can also be reached by fax at 866-622-5051 or by email at tii.customerservice@transamerica.com.

Best Regards,

Transamerica

*Att. 7*

January 25, 2019

Transamerica Life Insurance Company
Administrative Office
4333 Edgewood Road, NE
Cedar Rapids, Iowa 52499

Attention:  Customer Service

Re:   Policy Number:  000060051266
Sher Family Irrev Trust
Insured(s):  Linda R Sher

Dear Sir:

We have your letter of January 8, 2019.  Your letter again does not respond to our repeated written requests for some basic information showing how you have calculated the extraordinary increases in the monthly deductions you are charging us under the policy.  You do not even acknowledge our requests, let alone explain why you are not providing this information. We are now proceeding under the assumption that you will not voluntarily provide us with any information explaining or supporting these sharply increased monthly deductions.

Sincerely,

*Stanley O. Sher*

Stanley O. Sher
2810 McGill Terrace, NW
Washington, D.C.  20008
Tel:  202-667-3634

*AFF. 8*

May 28, 2020

Transamerica Life Insurance Company
Administrative Office
4333 Edgewood Road, NE
Cedar Rapids, Iowa 52499

      Re: Your letter of May 8, 2020, notice of monthly deduction rate increase
      Policy No. 000060051266

Dear Sir/Madam:

Could you please provide us with the total dollar amount of the increased monthly deductions, as
described in your letter of August 24, 2018, which have been charged against our accumulation
value through December 31, 2019.

Thank you,


_____
Sher Family Irrev. Trust (Org)
Stuart Brafman TTEE


_____
Stanley O. Sher
Grantor of Sher Insurance Trust

# TRANSAMERICA®

4333 Edgewood Road NE | Cedar Rapids, IA 52499 | www.transamerica.com

SHER FAM IRV TR DTD 10281999
& STUART BRAFMAN TTEE
2810 MCGILL TERR NW
WASHINGTON, DC   20008

June 08, 2020

Transamerica Life Insurance Company
Policy Number(s): 000060051266
Insured Name: Linda R Sher

Dear Sher Fam Irv Tr Dtd 10281999,

Thank you for being a valued Transamerica customer.

We have enclosed the following based on your recent request:

    Total Monthly Deductions from 08/24/2018 to 12/31/2019: $29,906.26

For further assistance or if you have any questions about this letter or your policy, please
contact your insurance agent or call us at 800-852-4678, Monday through Friday between 9:00
a.m. and 6:00 p.m. ET.

Best regards,

Transamerica

*APP. 10*



# TRANSAMERICA®

4333 Edgewood Road, NE | Cedar Rapids, IA 52499 | www.transamerica.com

0000101      01 SP 0.500 **SNGLP T2 0 1025 20008-274810   -C01-P00101-I

Sher Family Irv Trust
% S Brafman TTEE
2810 Mcgill Ter Nw
Washington, DC 20008-2748

May 15, 2019

Transamerica Life Insurance Company
Policy Number: 000060051266

### IMPORTANT:  NOTICE OF CHANGE IN NONGUARANTEED ELEMENTS OF YOUR POLICY
### Notice of Monthly Deduction Rate Increase

Dear Sher Family Irv Trust:

In a previous letter, we notified you that your policy's monthly deduction rate was scheduled to increase by approximately 39% on your next policy anniversary after May 31, 2018. We also notified you that the monthly deduction rate would increase again by approximately 39% on a compound basis on each of the two following policy anniversaries. These increases are still scheduled to take place.

As you know from our previous letter, we're making a change that affects the universal life insurance policy issued to you by Transamerica on 10/14/1999. This change impacts future payments you may need to make under the terms of the policy. We're letting you know about this change in advance, so that you can evaluate your coverage and decide what you want to do. After you read this letter, we encourage you to contact us at **800-670-1412**. A team is standing by to discuss your options, answer questions, and assist with next steps. Please see our hours of operation at the end of this letter.

***What's Changing and Why:***
Once a month, Transamerica withdraws a monthly deduction from your policy's accumulation value. The monthly deduction is calculated using a monthly deduction rate. This rate is determined for each policy month at the beginning of that policy month. The rate depends on the face amount of the policy; each Joint Insured's sex; each Joint Insured's smoker or nonsmoker status; each Joint Insured's class of risk as of the Policy Date; the number of years that the policy has been in force; and each Joint Insured's issue age. The monthly deduction rate for your policy is considered a nonguaranteed policy element because your contract allows Transamerica to change the rate up to guaranteed maximums specified in your policy. The table of guaranteed maximum monthly deduction rates is shown in the Policy Data section



of your policy. We will never use higher rates than the guaranteed maximum monthly deduction rates.

For the policy year starting 11/14/2019, your monthly deduction rate will increase. Without the scheduled increase, your monthly deduction rate would be $0.82 for each $1000 of net amount at risk. With the scheduled increase, your monthly deduction rate will be $1.14 for each $1000 of net amount at risk. The net amount at risk means the difference between death benefit and accumulation value. The scheduled increase is approximately 39% or a smaller percentage, if your guaranteed maximum monthly deduction rate is reached before a 39% increase.

This adverse change could reduce your policy's accumulation value and may increase the risk of policy lapse based on continued payment of current planned premiums. For an estimate of your new monthly deduction for the coming policy year, please contact us.

We're increasing the monthly deduction rates for TransSurvivor 98 and 99 policies based on our current expectations about our future costs. Several cost factors that affect monthly deduction rates are outlined in your policy. Our expectations about our future costs are subject to change over time. Any such change could impact the extent to which we increase rates in future years. At this time, however, we believe that the scheduled rate increases are necessary. We're notifying you in advance to help you plan accordingly.

We understand that the increase may be a significant consideration for you. You have several options, which are described below. We value the relationship we have with you. We know this insurance is important to you, and we want to work with you to keep this coverage in place.

**Policy Information:**
To evaluate your options, you'll need the following information about your policy.

Last policy anniversary date: 10/14/2018
Next policy anniversary date: 10/14/2019
Face amount / Face value: $3,402,000.00 as of 03/14/2019
Current accumulation value: $859,568.18 as of 03/14/2019
Current cash surrender value (accumulation value minus any surrender charges and policy loans): $856,166.18 as of 03/14/2019

**Your Options:**
Because this rate increase could have a significant impact on your policy, we want you to be aware of options that may be available to you.

<u>Take no action</u>: This option will reduce the accumulation of your policy. Additional premiums will be required at some point in order to maintain coverage if the policy is not otherwise adequately funded to maintain coverage. The best way to evaluate this option is to request an illustration from us so that you can see how the policy would change depending on the premiums paid.

Pay additional premiums: You may choose to pay additional premiums starting now to maintain your policy's accumulation value and death benefit coverage at the level and period anticipated before the increase. Please note that we won't alter your planned premium unless you direct us to do so.

Reduce the face value of your policy: If your policy is not already at the minimum value specified on your policy, you may choose to reduce the face value of your policy to a level that will be supported by the amount and years of premium payments you would like to pay. Please note that reducing the specified amount may result in a surrender charge. If you are interested in this option, please contact us.

Surrender your policy: You may choose to surrender your policy for the current cash surrender value. Before you decide to surrender your policy, you should consult with your tax, insurance, or financial advisor. The decision to surrender your policy should not be taken lightly.

Convert your policy (applicable only if your policy includes a conversion or exchange privilege in the contract): If you wish to maintain life insurance coverage but are unable to pay the increased premiums to keep the policy in force, you may choose to convert your flexible premium life insurance policy to a different type of life insurance policy we offer, subject to the terms of conversions listed in your policy, which may better suit your financial needs. Depending on the state in which your policy was originally issued, there may be additional conversion options available to you to provide continued coverage without further premiums, such as converting your policy to a term policy or a paid up policy with a lower face value. We can discuss the options available to you when you contact us.

**Endorsement to Modify Grace Period:**
Your policy may have been issued with an Endorsement to Modify Grace Period. If your policy has this endorsement and you have met the endorsement's conditions, your policy will not enter its Grace Period, even if the policy's accumulation value is insufficient to cover the monthly deduction and other policy charges and/or fees so long as the conditions of the endorsement continue to be met.

**What to Do Next:**
Please consider your choices very carefully. Before you make a decision about how to proceed, you should consult with your tax, insurance, and/or financial advisor. Please understand that we cannot offer you tax or legal advice.

We understand that you may have questions about this change or the options available to you. You may call your agent or our customer service team at 800-670-1412, Monday through Friday between 9 a.m. and 6 p.m. ET. We encourage you to contact us.

Best regards,

Transamerica

cc: 362163

**For more information, please call us at 800-670-1412, Monday through Friday between 9 a.m. and 6 p.m. ET. We're here to assist you.**





# TRANSAMERICA®

4333 Edgewood Road, NE | Cedar Rapids, IA 52499 | www.transamerica.com

0000043      01 SP 0.500  **SNGLP  T2 0 5703 20008-274810   -C01-P00043-I

Sher Fam Irv Tr Dtd 10/28/1999
% S Brafman TTEE
2810 Mcgill Ter Nw
Washington, DC 20008-2748

May 8, 2020

Transamerica Life Insurance Company
Policy Number: 000060051266

### IMPORTANT:  NOTICE OF CHANGE IN NONGUARANTEED ELEMENTS OF YOUR POLICY
### Notice of Monthly Deduction Rate Increase

Dear Sher Fam Irv Tr Dtd 10/28/1999:

We're making a change that affects the universal life insurance policy issued to you by
Transamerica on 10/14/1999. In a previous letter, we notified you that your policy's monthly
deduction rate was scheduled to increase by approximately 39% on your policy anniversary
following May 31, 2018. We also notified you that the monthly deduction rate would increase
again by approximately 39% on a compound basis on each of the next two policy anniversaries.
The second rate increase is scheduled to take place on your next policy anniversary.

This change impacts future payments you may need to make under the terms of the policy.
We're letting you know about the change in advance, so that you can evaluate your coverage
and decide what you want to do. After you read this letter, we encourage you to contact us at
**800-670-1412**. A team is standing by to discuss your options, answer questions, and assist with
next steps. Please see our hours of operation at the end of this letter.

YOU SHOULD KNOW: This increase may change the value of your policy and may change
how long your policy will last unless you increase your premium payments or reduce your
coverage, if permitted under your policy. Ask us for an illustration, at no cost, that shows the
effect of this change on your policy and discuss with your agent or financial advisor other
options that are available to you.

**What's Changing and Why:**
Your monthly deduction rate is changing. At the beginning of each policy month, Transamerica
withdraws a monthly deduction from your policy's accumulation value. The monthly deduction is
calculated using a monthly deduction rate. The rate is based on the number of years that the
policy has been in force and the face amount of the policy. It's also based on each Joint
Insured's sex, smoker or nonsmoker status, class of risk, and each insured's issue age.



The monthly deduction rate is considered a nonguaranteed policy element because your contract allows Transamerica to change the rate up to guaranteed maximums specified in your policy. The table of guaranteed maximum monthly deduction rates is shown in the Policy Data section of your policy. We will never use higher rates than the guaranteed maximum monthly deduction rates.

For the policy year starting 10/14/2020, your monthly deduction rate will increase. Without the scheduled increase, your monthly deduction rate would be 1.3733 for each $1000 of net amount at risk. With the scheduled increase, your monthly deduction rate will be 1.9089 for each $1000 of net amount at risk. (The net amount at risk means the difference between death benefit and accumulation value.) The scheduled increase is approximately 39% or a smaller percentage, if your guaranteed maximum monthly deduction rate is reached before a 39% increase. For an estimate of your new monthly deduction for the coming policy year, please contact us.

Please see the Appendix at the end of this letter. It shows the new scale of non-guaranteed rates after the change; the current scale of rates before the change; and the guaranteed maximum scale of rates.

This adverse change could reduce your policy's accumulation value and will increase the risk of policy lapse. If you pay your planned periodic premiums on schedule and there are no changes in coverage, the policy will lapse when you reach age 100 in policy year 40.

We're increasing the monthly deduction rates for TransSurvivor 98 and 99 policies based on our current expectations about our future costs to provide benefits under this policy. Several cost factors that affect monthly deduction rates are outlined in your policy. Our expectations about our future costs are subject to change over time. Any such change could impact the extent to which we increase rates in future years. At this time, however, we believe that the scheduled rate increases are necessary. We're notifying you in advance to help you plan accordingly.

We understand that the increase may be a significant consideration for you. You have several options, which are described below. We value the relationship we have with you. We know this insurance is important to you, and we want to work with you to keep this coverage in place.

**Policy Information:**
To evaluate your options, you'll need the following information about your policy.

Last policy anniversary date: 10/14/2019
Next policy anniversary date: 10/14/2020
Face amount / Face value: $3,402,000.00 as of 03/14/2020
Current accumulation value: $903,856.66 as of 03/14/2020
Current cash surrender value (accumulation value minus any surrender charges and policy loans): $903,856.66 as of 03/14/2020

**Your Options:**

Because this rate increase could have a significant impact on your policy, we want you to be aware of options that may be available to you.

Take no action: This option will reduce the accumulation of your policy. Additional premiums will be required at some point in order to maintain coverage if the policy is not otherwise adequately funded to maintain coverage. The best way to evaluate this option is to request an illustration from us so that you can see how the policy would change depending on the premiums paid.

Pay additional premiums: You may choose to pay additional premiums starting now to maintain your policy's accumulation value and death benefit coverage at the level and period anticipated before the increase. Please note that we won't alter your current planned periodic premium unless you direct us to do so.

Reduce the face value of your policy: If your policy is not already at the minimum face value specified on your policy, you may choose to reduce the face value of your policy to a level that will be supported by the amount and years of premium payments you would like to pay. Please note that reducing the face value may result in a surrender charge. If you are interested in this option, please contact us.

Surrender your policy: You may choose to surrender your policy for the current cash surrender value. Before you decide to surrender your policy, you should consult with your tax, insurance, or financial advisor. The decision to surrender your policy should not be taken lightly.

Convert your policy (applicable only if your policy includes a conversion or exchange privilege in the contract): If you wish to maintain life insurance coverage but are unable to pay the increased premiums to keep the policy in force, you may choose to convert your flexible premium life insurance policy to a different type of life insurance policy we offer, subject to the terms of conversions listed in your policy, which may better suit your needs. Depending on the state in which your policy was originally issued, there may be additional conversion options available to you to provide continued coverage without further premiums, such as converting your policy to a term policy or a paid up policy with a lower face value. We can discuss the options available to you when you contact us.

**Endorsement to Modify Grace Period:**

Your policy may have been issued with an Endorsement to Modify Grace Period. If your policy has this endorsement and you have met the endorsement's conditions, your policy will not enter its Grace Period, even if the policy's accumulation value is insufficient to cover the monthly deduction and other policy charges and/or fees so long as the conditions of the endorsement continue to be met.



**What to Do Next:**
Please consider your choices very carefully. Before you make a decision about how to proceed, you should consult with your tax, insurance, and/or financial advisor. Please understand that we cannot offer you tax or legal advice.

We understand that you may have questions about this change or the options available to you. You may call your agent or our customer service team at 800-670-1412, Monday through Friday between 9 a.m. and 6 p.m. ET. We encourage you to contact us.

Best regards,

Transamerica

cc: 362163


**For more information, please call us at 800-670-1412, Monday through Friday between 9 a.m. and 6 p.m. ET. We're here to assist you.**

May 8, 2020

Transamerica Life Insurance Company
Policy Number: 000060051266

## APPENDIX
### Monthly Deduction Rate Scales [1]

| Policy Year | Current Scale of Monthly Deduction Rates [2] | Scale of Increased Monthly Deduction Rates [3] | Scale of Guaranteed Monthly Deduction Rates [4] |
|---|---|---|---|
| 22 | 1.3733 | 1.9089 | 6.6597 |
| 23 | 1.6499 | 2.2934 | 7.6434 |
| 24 | 1.9711 | 2.7399 | 8.7126 |
| 25 | 2.3389 | 3.2511 | 9.8585 |
| 26 | 2.7552 | 3.8297 | 11.0670 |
| 27 | 3.2193 | 4.4748 | 12.3418 |
| 28 | 3.7314 | 5.1866 | 13.6727 |
| 29 | 4.2896 | 5.9626 | 15.0782 |
| 30 | 4.8944 | 6.8032 | 16.5635 |
| 31 | 5.5419 | 7.7032 | 18.1887 |
| 32 | 6.2291 | 8.6584 | 20.0389 |
| 33 | 6.9522 | 9.6636 | 22.2533 |
| 34 | 7.7064 | 10.7119 | 25.0860 |
| 35 | 8.5856 | 11.9340 | 28.8592 |
| 36 | 21.5044 | 29.8911 | 33.7037 |
| 37 | 10.1337 | 14.0859 | 39.5808 |
| 38 | 11.0395 | 15.3449 | 54.6544 |
| 39 | 48.0873 | 66.8413 | 83.3333 |

---

[1] Rates have been rounded to four decimal places.

[2] This column shows the current scale of Monthly Deduction Rates in effect until your next Policy Anniversary.

[3] This column shows the scale of Increased Monthly Deduction Rates that will take effect on your next Policy Anniversary 10/14/2020. As described in the attached letter and in a previous letter, another rate increase will take effect on your subsequent Policy Anniversary. The rates shown in this column do not reflect the subsequent rate increase.

[4] The rate scale shown in this column can also be found in Policy Data in your policy, where it is called "Table of Guaranteed Maximum Monthly Deduction Rates Per $1000 for Base Policy." Rates shown in this Appendix have been rounded to four decimal places.



PRM  10042



# TRANSAMERICA LIFE INSURANCE COMPANY

### TRANSSURVIVOR 115
POLICY NUMBER:  60051266
ISSUED OCTOBER 14, 1999

1ST JT. INSURED: LINDA R SHER
1ST JT. INSURED: FEMALE ISSUE AGE: 61 PREFERRED  NON-SMOKER

FACE AMOUNT:          $3,402,000
PREMIUMS PAYABLE:  ANNUALLY

2ND JT. INSURED: STANLEY O SHER
2ND JT. INSURED: MALE ISSUE AGE: 64 STANDARD  NON-SMOKER

PREMIUM PAID TO DATE:          $840,000.00
CURRENT WEIGHTED INTEREST RATE: 4.00%

<> ACCUM VALUE BALANCE PROJECTED TO:

OCTOBER 14, 2020 IS $907,527.31

ACCUM VALUE BALANCE AS OF
MARCH 14, 2020 IS $903,856.66
RIDER(S)-SEE EXPLANATORY NOTES

| END OF POLICY YR  AGE | NON GUAR. INTR. RATE | ANNUALIZED PREMIUM OUTLAY | ANNUAL WITHDRAWALS | PROJECTED VALUES AT GUARANTEED INTEREST RATE (4.00%) AND GUARANTEED MONTHLY DEDUCTIONS | | | NON-GUARANTEED PROJECTED VALUES AT ILLUSTRATED INTEREST RATES AND MONTHLY DEDUCTIONS | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | CASH VALUE | ACCUM VALUE | DEATH BENEFIT | CASH VALUE | ACCUM VALUE | DEATH BENEFIT |
| 22 83 | 4.00 | 40,000 | 0 | 774,740 | 774,740 | 3,402,000 | 923,881 | 923,881 | 3,402,000 |
| 23 84 | 4.00 | 40,000 | 0 | 591,570 | 591,570 | 3,402,000 | 929,586 | 929,586 | 3,402,000 |
| 24 85 | 4.00 | 40,000 | 0 | 343,210 | 343,210 | 3,402,000 | 922,073 | 922,073 | 3,402,000 |
| 25 86 | 4.00 | 40,000 | 0 | 9,649 | 9,649 | 3,402,000 | 898,279 | 898,279 | 3,402,000 |
| 26 87 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 854,474 | 854,474 | 3,402,000 |
| 27 88 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 786,120 | 786,120 | 3,402,000 |
| 28 89 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 687,510 | 687,510 | 3,402,000 |
| 29 90 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 551,425 | 551,425 | 3,402,000 |
| 30 91 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 368,426 | 368,426 | 3,402,000 |
| 31 92 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 126,237 | 126,237 | 3,402,000 |
| 32 93 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 0 | 0 | 3,402,000 A |
| 33 94 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 0 | 0 | 3,402,000 A |
| 34 95 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 0 | 0 | 3,402,000 A |
| 35 96 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 0 | 0 | 3,402,000 A |
| 36 97 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 0 | 0 | 3,402,000 A |
| 37 98 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 0 | 0 | 3,402,000 A |
| 38 99 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 0 | 0 | 3,402,000 A |
| 39 100 | 4.00 | 40,000 | 0 | 0 | 0 | 3,402,000 A | 0 | 0 | 3,402,000 A |

This illustration assumes that the definitional requirements for a life insurance contract under I.R.C. section 7702 have been satisfied by complying with the cash value accumulation test.

<> Accumulation value projected to 10/14/2020 assumes that the policyowner will pay premiums totaling $0.00 in addition to the "Premiums Paid to Date" shown above.  This projected value is based on the lesser of (1) the current weighted interest rate or (2) the current rate for new premiums as described in the attached "Explanatory Notes for TRANSSURVIVOR 115".  **It is not guaranteed.**

IF YOU HAVE MADE A RECENT PAYMENT, LOAN OR WITHDRAWAL, IT MAY NOT BE REFLECTED ON THIS ILLUSTRATION.

*ATT. 12*

# TRANSAMERICA®

4333 Edgewood Road NE I Cedar Rapids, IA 52499 I www.transamerica.com

Howard Soltoff
Email: howard.soltoff@tribridgepartners.com

June 10, 2020

Transamerica Life Insurance Company
Policy Number: 000060051266
Insured(s): Linda R Sher

Dear Howard Soltoff:

We are responding to your recent phone call to our Customer Service Department regarding the above referenced policy number.  We appreciate the opportunity to be of assistance.

The letter that was mailed May 8, 2020, is stating the rate increase that took place on the policy anniversary following May 31, 2018 and then two more rate increases on each of the next two policy anniversaries. The first increase was October 14, 2019 and the second is October 14, 2020 for a total of 3 rate increases. October 14, 2020 would be the last scheduled increase on this policy.

Questions? Contact your insurance agent or give us a call at 800-852-4678, weekdays 9 - 6 ET. You can also reach us by fax at 866-622-5051 or email at life.customerservice@transamerica.com.

Best regards,

Transamerica



FedEx Express

Align top of FedEx Express® shipping label here.

SHIP DATE: 28JUL20
ACTWGT: 0.50 LB
CAD: 6992652/SSFD02110

BILL CREDIT CARD

ORIGIN ID:ZRZA  (202) 667-3834
ED SMILEY SHER

2810 MCGILL TER NW

WASHINGTON DC 20008
UNITED STATES US

TO  CLERK OF THE COURT
US. DIST. COURT
350 W. FIRST STREET STE. 4311
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES CA 90012

TRK# 3952 4786 4678

SH EMTA

FRI - 31 JUL 4:30P
EXPRESS SAVER

90012
LAX

CENTRAL DISTRICT OF CALIFORNIA

RECEIVED
ON US DISTRICT COURT
JUL 3 0 2020
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

705

Reusable