**BONNETT FAIRBOURN**
 **FRIEDMAN & BALINT, PC**
Andrew S. Friedman (*Pro Hac Vice*)
afriedman@bffb.com
Francis J. Balint, Jr. (*Pro Hac Vice*)
fbalint@bffb.com
2325 East Camelback Road, Suite 300
Phoenix, AZ 85016
Tel: (602) 274-1100
Fax: (602) 274-1199

**CONSUMER WATCHDOG**
 Harvey Rosenfield (SBN: 123082)
 harvey@consumerwatchdog.org
 Jerry Flanagan (SBN: 271272)
 jerry@consumerwatchdog.org
 6330 San Vicente Blvd., Suite 250
 Los Angeles, CA 90048
 Tel: (310) 392-0522
 Fax: (310) 392-8874

**THE MOSKOWITZ LAW FIRM**
Adam M. Moskowitz (*Pro Hac Vice*)
adam@moskowitz-law.com
Howard Bushman (*Pro Hac Vice*)
howard@moskowitz-law.com
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
Tel: (305) 479-5508

*Co-Lead Class Counsel for the Settlement Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

GAIL THOMPSON, et al.,

            Plaintiffs,

      vs.

TRANSAMERICA LIFE
INSURANCE COMPANY,

            Defendant.

Case No. 2:18-cv-05422-CAS-GJSx

CLASS ACTION

**PLAINTIFFS' COMBINED REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF PROPOSED NATIONWIDE CLASS SETTLEMENT [Dkt. 154] AND MOTION FOR COURT APPROVAL OF COMMON FUND PAYMENTS [Dkt. 156], AND IN RESPONSE TO OBJECTIONS [Dkt. 164, 166 and 170]**

Hearing Date:    August 31, 2020
Hearing Time:    10:00 am
Courtroom:   8D – 8th Floor
Judge:    Hon. Christina A. Snyder

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................1

II.   APPLICABLE STANDARD...........................................................3

III.  LEGAL ARGUMENT ...................................................................3

    A.   The Fearon Objection................................................................3

        1.   Terry Lacks Standing to Object to Approval
            of the Settlement ...........................................................3

        2.   Katz Likewise Lacks Standing to Object,
            At Least on Behalf of Terminated
            and No-Lapse Policyowners ...........................................6

        3.   There Is No Intra-Class Conflict.....................................7

        4.   The Settlement Is Not Unreasonable
            for Lack of Reinstatement Relief....................................12

        5.   The Settlement Benefits for the
            No-Lapse Policyowners Are Not "Illusory" .....................15

        6.   The Settlement Agreement Does Not
            "Permanently Sanction" Improper and
            Illegal MDR Increases ...................................................16

        7.   The Court Has Ample Information to Understand
            the Value and Allocation of Settlement Benefits................18

        8.   There Is No Jurisdictional Impediment
            to Settlement Approval ...................................................19

        9.   The Settlement Common Funds Do Not Revert to TLIC ...21

        10.  The Class Notice Was More than Adequate .....................22

        11.  A 19-20% Fee Award Is Not "Disproportionate" ..............23

i

B.  The Vitale Objection ...................................................................24

C.  The Sher Objection .....................................................................25

   1. The Credit to the Individual Settlement Class Member

     Is Not "*De Minimus*" .............................................................25

   2. There Is No Basis to Prevent TLIC from

     Assessing Other Policy Charges ...........................................26

   3. The MDR Increase Protection Benefit Has Real Value.....................26

   4. The Class Notice Was Not Deficient .................................................27

IV. CONCLUSION ..................................................................................27

# TABLE OF AUTHORITIES

## CASES

*Allen v. Bedolla*,
  787 F.3d 1218 (9th Cir. 2015) .................................................................3

*Benedict v. Diamond Resorts Corp.*,
  No. CV 12-00183 DAE BMK,
  2013 WL 12149277 (D. Haw. June 6, 2013) ......................................18

*Bristol-Myers Squibb Co. v. Superior Ct.*,
  137 S. Ct. 1773 (2017) ...........................................................19, 21

*Broomfield v. Craft Brew Alliance, Inc.*,
  No. 17-cv-01027-BLF,
  2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) ......................................7

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ...............................................................................5

*Carrizosa v. Stassinos*,
  669 F. Supp. 2d 1081 (N.D. Cal. 2009).................................................5

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992).............................................................25

*Coleman v. Gen. Motors Acceptance Corp.*,
  220 F.R.D. 64 (M.D. Tenn. 2004) .......................................................12

*Corder v. Houston's Rests., Inc.*,
  No. SACV 06-1 CJC (ANx),
  2007 WL 9702891 (C.D. Cal. Jan. 5, 2007).......................................23

*Edwards v. Nat'l Milk Producers Fed'n*,
  No. 11-cv-04766-JSW,
  2017 WL 3616638 (N.D. Cal. June 26, 2017).....................................14

*Evans v. Linden Research, Inc.*,

   No. C-11-01078 DMR,

   2014 WL 1724891 (N.D. Cal. Apr. 29, 2014).....................................16

*Feist v. Petco Animal Supplies, Inc.*,

   No. 3:16-cv-10369-H-MSB,

   2018 WL 6040801 (S.D. Cal. Nov. 16, 2018).......................................2

*Feller v. Transamerica Life Ins. Co.*,

   No. 16-cv-01378 CAS (GJSx),

   2019 WL 6605886 (C.D. Cal. Feb. 6, 2019) .....................................1, 17, 21, 24

*Feller v. Transamerica Life Ins. Co.*,

   No. 2:16-cv-1378-CAS(AJWx),

   2017 WL 6453262 (C.D. Cal. Dec. 11, 2017).....................................20

*Fleury v. Richemont N. Am., Inc.*,

   No. C-05-4525 EMC,

   2008 WL 3287154 (N.D. Cal. Aug. 6, 2008).......................................22

*Glasser v. Volkswagen of Am., Inc.*,

   645 F.3d 1084 (9th Cir. 2011) .................................................................7

*Gould v. Alleco, Inc.*,

   883 F.2d 281 (4th Cir. 1989) ..................................................................4

*Hanlon v. Chrysler Corp.*,

   150 F.3d 1011 (9th Cir. 1998), *overruled on other grounds by*

   *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)...................................14, 25

*Healthy Future of Texas v. Dep't of Health & Human Servs.*,

   326 F.R.D. 1 (D.D.C. 2018) ....................................................................5

*Hemphill v. San Diego Ass'n of Realtors, Inc.*,

    225 F.R.D. 616 (S.D. Cal. 2005) ..........................................................19

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,

   No. 07-cv-05944-JST,

2020 WL 1873554 (N.D. Cal. Mar. 11, 2020) ......................................................6

*In re Cooper Cos., Inc. Sec. Litig.*,

   No. SACV 06-00169-CJC(RNBx),

   2010 WL 11519148 (C.D. Cal. Aug. 16, 2010) ............................................23

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,

   No. M-02-1486 PJH, Dkt. No. 2093 (Oct. 27, 2010) ........................................9

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,

   33 F.3d 29 (9th Cir. 1994) .....................................................................4, 7

*In re Hydroxycut Mktg. & Sales Practices Litig.*,

   Nos. 09md2087 & 09cv1088 BTM (KSC),

   2013 WL 5275618 (S.D. Cal. Sept. 17, 2013) ................................................7

*In re Hyundai & Kia Fuel Econ. Litig.*,

   926 F.3d 539 (9th Cir. 2019) ..................................................................21

*In re Linkedin User Privacy Litig.*,

   309 F.R.D. 573 (N.D. Cal. 2015) ..............................................................3

*In re Lloyds' Am. Trust Fund Litig.*,

   No. 96 Civ.1262 RWS, 2

   002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ..............................................10

*In re Online DVD-Rental Antitrust Litig.*,

   779 F.3d 934 (9th Cir. 2015) ..................................................................10

*In re PaineWebber Ltd. P'ships Litig.*,

   171 F.R.D. 104 (S.D.N.Y.),

   *aff'd*, 117 F.3d 721 (2d Cir. 1997)............................................................10

*In re Shopping Carts Antitrust Litig.*,

   MDL No. 451-CLB,

   1983 WL 1950 (S.D.N.Y. Nov. 18, 1983) ....................................................5

*In re Toyota Motor Corp. Unintended Acceleration*

   *Mktg., Sales Practices, & Prods. Liab. Litig.*,

   No. 8:10-ML 02151 JVS (FMOx),

   2013 WL 3224585 (C.D. Cal. June 17, 2013) ......................................................14

*In re TracFone Unlimited Serv. Plan Litig.*,

   112 F. Supp. 3d 993 (N.D. Cal. 2015) ...................................................................4

*In re Vitamins Antitrust Litig.*,

   No. 99-197 TFH,

   2000 WL 1737867 (D.D.C. Mar. 31, 2000) ..........................................................9

*In Re: Cathode Ray Tube (CRT) Antitrust Litig.*,

   MDL No. 1917, No. 3:07-cv-05944-JST (N.D. Cal. Nov. 8, 2018) ....................11

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,

   MDL No. 2672 CRB (JSC),

   2016 WL 5793336 (N.D. Cal. Oct. 4, 2016), *aff'd sub nom.*

   *In re Volkswagen "Clean Diesel" Mktg., Sales Practices,*

   *& Prods. Liab. Litig.*, 894 F.3d 1030 (9th Cir. 2018) .........................................19

*In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*,

   No. 16-MD-02752-LHK,

   2020 WL 4212811 (N.D. Cal. July 22, 2020) .......................................................3

*Jabbari v. Farmer*,

   813 F. App'x 259, 2020 WL 4048683 (9th Cir. July 20, 2020) ...................8, 9, 14

*Jabbari v. Farmer*,

   965 F.3d. 1001 (9th Cir. 2020) ......................................................................10, 21

*Jimenez v. Domino's Pizza, Inc.*,

   238 F.R.D. 241 (C.D. Cal. 2006) ...........................................................................6

*Labrecque v. NewRez LLC*,

   No. CV-19-00465-TUC-RCC (EJM),

   2020 WL 3276699 (D. Ariz. June 16, 2020), *report and recommendation*

vi

*adopted sub nom. Labrecque v. NewRez LLC*, No. CV-19-00465-TUC-RCC

(EJM), 2020 WL 4364215 (D. Ariz. July 30, 2020) .............................................20

*Lymburner v. U.S. Fin. Funds, Inc.*,

263 F.R.D. 534 (N.D. Cal. 2010) ........................................................................10

*Miller v. Ghirardelli Chocolate Co.*,

No. 12-cv-04936-LB,

2015 WL 758094 (N.D. Cal. Feb. 20, 2015)..........................................................6

*Negrete v. Allianz Life Ins. Co. of N. Am.*,

Nos. CV-05-06838-CAS(MANx), CV-05-8909-CAS(MANx),

2015 WL 12592726 (C.D. Cal. March 17, 2015)..............................................4, 14

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,

688 F.2d 615 (9th Cir. 1982) ...........................................................................3, 25

*Pearson v. Target Corp.*,

___ F.3d ___, 2020 WL 4519053 (7th Cir. Aug. 6, 2020)....................................3

*Retta v. Millennium Prods., Inc.*,

No. CV15-1801 PSG AJWx,

2017 WL 5479637 (C.D. Cal. Aug. 22, 2017) .....................................................20

*Roberts v. Electrolux Home Prods., Inc.*, Nos. SACV12-1644 and CV13-2339-

CAS(VBKx), 2014 WL 4568632 (C.D. Cal. Sept. 11, 2014) ......................14, 18

*Roberts v. Marshalls of CA, LLC*, No. 13-cv-04731-MEJ, 2018 WL 510286 (N.D.

Cal. Jan. 23, 2018).............................................................................................24

*Rodriguez v. West Publ'g Corp.*,

563 F.3d 948 (9th Cir. 2009) ..........................................................................22, 23

*Ross v. Trex Co.*,

No. 09-cv-00670-JSW,

2013 WL 6622919 (N.D. Cal. Dec. 16, 2013) .....................................................16

*San Francisco NAACP v. San Francisco Unified School Dist.*,

59 F. Supp. 2d 1021 (N.D. Cal. 1999).................................................................4

*Santillan v. Ashcroft*,

No. C 04-2686 MHP,

2004 WL 2297990 (N.D. Cal. Oct. 12, 2004) ........................................................6

*Shupe v. Transamerica Life Insurance Company*,

Case No. 1:19-cv-00045 (N.D. Iowa) .....................................................11

*Taylor v. Meadowbrook Meat Co.*,

No. 3:15-cv-00132-LB,

2016 WL 4916955 (N.D. Cal. Sept. 15, 2016) ........................................5

*Terry v. Transamerica Life Ins. Co.*,

1:19-cv-00118-LTS-KEM (N.D. Iowa, filed on October 23, 2019) ....................3

*Thompson v. Transamerica Life Ins. Co.*,

No. 2:18-cv-05422-CAS-GJSx,

2018 WL 6790561 (C.D. Cal. Dec. 26, 2018) ........................................20

*Torrisi v. Tucson Elec. Power Co.*,

8 F.3d 1370 (9th Cir. 1993) ...................................................................23

*True v. Am. Honda Motor Co.*,

749 F. Supp. 2d 1052 (C.D. Cal. 2010) .................................................22

*Vu v. Fashion Inst. of Design & Merch.*,

No. CV 14-08822 SJO (Ex),

2016 WL 6211308 (C.D. Cal. Mar. 22, 2016) .......................................11

*Wenokur v. AXA Equitable Life Ins. Co.*,

No. CV-17-00165-PHX-DLR,

2017 WL 4357916 (D. Ariz. Oct. 2, 2017) ...........................................20

*Williams v. Boeing Co.*,

517 F.3d 1120 (9th Cir. 2008) ...............................................................25

*Yue v. Conseco Life Ins. Co.*,

282 F.R.D. 469 (C.D. Cal. 2012) ...........................................................13

*Yue v. Conseco Life Ins. Co.*,

No. CV 08-1506 AHM (JTLx),

2011 WL 210943 (C.D. Cal. Jan. 19, 2011)........................................................13

**RULES**

Fed. R. Civ. P. 23(a)(3) ............................................................................................10

Fed. R. Civ. P. 23(a)(4) ............................................................................................10

Fed. R. Civ. P. 23(e) ..................................................................................................3

**TREATISES**

William B. Rubenstein et al., 1 Newberg on Class Actions § 3:58 (5th ed.) ..........10

## I.    INTRODUCTION

There are but three objections to the proposed Class Settlement: one filed by attorney Stephen J. Fearon, Jr. ("Fearon") on behalf of two different policyowners (Dkt. 164 ("Fearon Obj.")), one filed by John and Philomena Vitale (Dkt. 170 ("Vitale Obj.")), and one filed by Stuart Brafman on behalf of the Sher Family Trust (Dkt. 166 ("Sher Obj.")).

Mr. Fearon is the same attorney who objected in *Feller v. Transamerica Life Ins. Co.,* No. 16-cv-01378 CAS (GJSx), 2019 WL 6605886 (C.D. Cal. Feb. 6, 2019) ("*Feller*"),, only to withdraw his objection and endorse the *Feller* settlement  in return for a substantial fee payment out of the *Feller* common fund. Once again Fearon has moved to hold up the receipt of the Settlement Benefits by thousands of members of the Settlement Class, many of whom are elderly. And once again, Fearon's objection advances the same discredited arguments he ultimately withdrew in supporting the nationwide class settlement in *Feller*.

Fearon lobs these frivolous arguments through a single objection lodged on behalf of two objectors of dubious standing, simultaneously representing both clients even though he argues there are debilitating conflicting interests between them.  In any event, as shown below the Fearon Objection itself is little more than a hyperbolic stew of misstatements and misunderstandings that does not remotely undermine the fairness, reasonableness, or adequacy of the proposed Settlement.

For their part, the Vitale and Sher Objections likewise offer no grounds to scuttle the Settlement. The Vitales simply assert that the Settlement does not to their satisfaction address their individual complaints with Transamerica Life Insurance Company ("TLIC") unrelated to the substance of this class action. Along with similar expressions of individual dissatisfaction with TLIC, Sher argues essentially that the Settlement is inadequate because it does not provide for the total elimination of the challenged MDR Increases.

1

Co-Lead Class Counsel are exceptionally experienced in cost of insurance litigation, and recognized early on that the outcome in this case would turn on a battle of the experts over a number of esoteric actuarial issues, that a class-wide injunction would be very difficult to achieve and subject to an immediate appeal, that TLIC could evade any injunction by devising a new series of even steeper MDR increases, and that further delays would inflict ever-increasing widespread harm on the elderly Policyowners. Joint Declaration of Co-Lead Class Counsel (Dkt. 158 ("Joint Decl.")), ¶¶ 46-48.   Faced with these realities, Co-Lead Class Counsel expeditiously secured Settlement benefits providing (a) account value increases equating to nearly 100% of the past overcharges resulting from the MDR Increases and (b) protections against future new rate hikes. *Id.* ¶ 56.   Co-Lead Class Counsel accordingly endorse as fair and reasonable a compromise settlement under which TLIC agrees to reimburse to Settlement Class Members up to $90 million to be allocated *pro rata* based on the amount of the alleged overcharges by TLIC, including for Policies that were surrendered in the meantime. *Id.,* ¶¶ 36, 59-60.

More than 99% of the Settlement Class members agree. Of the approximately 7,800 Class Policies, only 7 Policies owned by individual Policyowners and only 56 Policies owned by 3 institutional investor Policyowners have been excluded from the Settlement Class, and again there are only 3 objections. Supplemental Declaration of Andrew S. Friedman ("Friedman Final Decl."), ¶ 3.   Plainly this overwhelmingly positive response from the Settlement Class supports approval of the Settlement.   *Feist v. Petco Animal Supplies, Inc.*, No. 3:16-cv-10369-H-MSB, 2018 WL 6040801, at *5 (S.D. Cal. Nov. 16, 2018) (the lack of opposition raises a strong presumption that proposed class settlement is favorable to the class members).

For these reasons, addressed at length below, every aspect of the proposed Settlement Agreement remains fair, adequate, and reasonable. Plaintiffs' motions for approval of the Settlement Agreement and the common fund payment of fees, service awards, and litigation expenses remain well-taken, and should be granted.

## II.  APPLICABLE STANDARD

In evaluating a proposed class action settlement under Federal Rule of Civil Procedure 23(e), the standard is whether the settlement "is fundamentally fair, adequate and reasonable." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *9 (N.D. Cal. July 22, 2020). An objector to a proposed class settlement agreement "bears the burden of proving any assertions they raise challenging the reasonableness of a class action settlement." *In re: Yahoo!*, 2020 WL 4212811, at *16 (quoting *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 583 (N.D. Cal. 2015) (citing *United States v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990))). The Ninth Circuit maintains "a strong judicial policy" that favors class action settlements and it "is the nature of a settlement, as a highly negotiated compromise . . . that it may be unavoidable that some class members will always be happier with a given result than others." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (internal quotation marks omitted).

## III.  LEGAL ARGUMENT[1]

### A. The Fearon Objection

Fearon's objections are so palpably meritless that the Court may readily conclude they were not brought in good faith. *See Pearson v. Target Corp.*, ___ F.3d ___, 2020 WL 4519053, at *1 (7th Cir. Aug. 6, 2020) (decrying figurative class settlement "blackmail" by "selfish holdouts").

#### 1.  Terry Lacks Standing to Object to Approval of the Settlement

The first Fearon objector, Angela Terry as trustee of the Frank 2000 Irrevocable Trust dated January 1, 2000 ("Terry"), is not even a member of the Settlement Class, for she is simultaneously prosecuting her own claims against TLIC on an individual basis in *Terry v. Transamerica Life Ins. Co.*, 1:19-cv-00118-LTS-KEM (N.D. Iowa, filed on October 23, 2019) (the "*Terry* Action"). As a stranger to

---

[1] All page cites to federal court filings in this brief are to the ECF page designation.

the Settlement Class, the Settlement Agreement has no effect whatsoever on Terry or her assertion of claims in the *Terry* Action. Nevertheless, Terry through Fearon objects to being excluded from the Settlement Class in this action, which she argues unfairly deprives her of the opportunity to **oppose** the Settlement on behalf of all of the Settlement Class members who, unlike Terry, have chosen to accept the benefits of the Settlement Agreement rather than litigate their claims individually.

"[N]onclass members have no standing to object to the settlement of a class action." *San Francisco NAACP v. San Francisco Unified School Dist.*, 59 F. Supp. 2d 1021, 1032 (N.D. Cal. 1999) (citing *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989) ("The plain language of Rule 23(e) clearly contemplates allowing only class members to object to settlement proposals."); *see also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 33 F.3d 29, 30 (9th Cir. 1994) (holding that only "an aggrieved class member" has standing to object to a proposed settlement of a class action).

The burden is on the objector to prove that she has standing to object. *See In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1008 (N.D. Cal. 2015). For these reasons, when this Court granted final approval of the class action settlement in *Negrete v. Allianz Life Ins. Co. of N. Am.*, Nos. CV-05-06838-CAS(MANx), CV-05-8909-CAS(MANx), 2015 WL 12592726 (C.D. Cal. March 17, 2015), it concluded that two objectors did "not have standing to object to the settlement" because their insurance policies were "not within the class definition." *Id.,* at *10.

As in *Negrete*, the Court should conclude that Fearon Objector Terry here is not included within the class definition and therefore has no standing to object to the settlement. The Class, defined as "[a]ll persons or entities who owned a Policy as of the Policy Status Date[,]" and specifically **excludes** "those Policyowners challenging the MDR Increases in any pending or resolved lawsuit against TLIC other than the Action." Dkt. 151, at 3. This was not some new-found change: Plaintiffs' proposed

4

1    litigation class similarly contained the same exclusion.  Dkt. 112, at 14.

2          On the date the Court entered its order preliminarily approving the Settlement

3    and certifying the Settlement Class, the *Terry* Action was indisputably pending.  In

4    fact, Terry has continued to litigate her individual case even after this class was

5    preliminarily certified, filing on July 2, 2020 a motion to modify the scheduling

6    order and discovery plan, which the Court approved by order entered July 6, 2020.

7    *Terry* Action, Dkt. 20 & 21.

8          As noted in Plaintiffs' final approval memorandum (Dkt. 155, at 31 n.5), the

9    exclusion of litigants with pending individual actions is supported by decisions of

10   the United States Supreme Court and district courts, none of which Terry

11   meaningfully distinguishes. *See Califano v. Yamasaki*, 442 U.S. 682, 689 (1979)

12   (upholding district court's decision to exclude from the relevant class definition

13   those individuals who had already brought suit against the defendant in a different

14   judicial district); *Healthy Future of Texas v. Dep't of Health & Human Servs.*, 326

15   F.R.D. 1, 10 (D.D.C. 2018) (rejecting argument that a class definition "that excludes

16   plaintiffs involved in ongoing or resolved litigation outside of the class action's

17   judicial district *defeats* an otherwise viable nationwide class," based on *Califano*)

18   (emphasis supplied by court); *In re Shopping Carts Antitrust Litig.*, MDL No. 451-

19   CLB, 1983 WL 1950, at *2 (S.D.N.Y. Nov. 18, 1983) (certifying class that excluded

20   "those persons, firms or corporations which have elected to file individual actions

21   against the defendants").

22         Moreover, district courts in this circuit have repeatedly certified similarly

23   defined classes. *See, e.g., Taylor v. Meadowbrook Meat Co.*, No. 3:15-cv-00132-LB,

24   2016 WL 4916955, at *1 (N.D. Cal. Sept. 15, 2016) (granting final approval and

25   certifying class that "excludes any person who, as of the date of the court's

26   preliminary approval of the settlement, has a pending separate lawsuit as a named

27   plaintiff, either individually or as part of a putative class or representative action");

28   *Carrizosa v. Stassinos*, 669 F. Supp. 2d 1081, 1084 (N.D. Cal. 2009) (certifying class

1   that excluded "anyone who has litigation currently pending against any of the

2   defendants, alleging the same claims that are being alleged in this action"); *Santillan*

3   *v. Ashcroft*, No. C 04-2686 MHP, 2004 WL 2297990, at *8 (N.D. Cal. Oct. 12, 2004)

4   (explaining that modification of scope of the class to exclude pending lawsuits

5   "obviated concerns about impinging on other courts" and certifying class).

6          Based on the foregoing facts and law, Terry lacks standing to object to ***any***

7   ***aspect*** of the proposed Settlement, and her objection should be stricken. *See, e.g., In*

8   *re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-cv-05944-JST, 2020 WL

9   1873554, at *4 (N.D. Cal. Mar. 11, 2020) (striking objections of objectors who are

10  expressly excluded by the settlement class definition, and therefore lack standing to

11  object); *Miller v. Ghirardelli Chocolate Co.*, No. 12-cv-04936-LB, 2015 WL

12  758094, at *10 (N.D. Cal. Feb. 20, 2015) ("The court [ ] finds that all three objectors

13  lack standing and strikes their objections").

14          2.   <u>Katz Likewise Lacks Standing to Object, At Least on Behalf of Terminated and No-Lapse Policyowners</u>

15          Katz brings his objection as the "managing member" of Peck Et Al Policy

16  Holdings LLC ("Peck LLC"). But Katz has been the subject of multiple bankruptcies

17  (voluntary and involuntary Chapter 7 bankruptcy proceedings) in the District of New

18  Jersey.[2] Generally speaking, "a Chapter 7 debtor does not have standing to bring

19  suit." *Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 252 n.10 (C.D. Cal. 2006).

20  Fearon has, however, refused Co-Lead Class Counsel's request to depose Katz.

21  Friedman Final Decl., ¶ 6. Given the uncertainty and stonewalling, Fearon has failed

22  to sufficiently demonstrate Katz's standing to object to the Settlement. *Miller*, 2015

23  WL 758094, at *10 (striking objection for failure to meet burden to establish class

24  ———————————————

25  [2] *See In re Levi Katz*, No. 3:19-BK28145 (D.N.J.) (involuntary petition for Chapter 7 bankruptcy filed in September 2019 by creditors); *In re Levi Katz*, No. 3:19-BK-

26  28145 (Bankr. D.N.J.); *In re Levi Katz,* No. 3:18-BK29002 (Bankr. D.N.J.); *In re Levi Katz*, No. 3:18-BK-24290 (Bankr. D.N.J.); *In re Levi Katz, Tirtz Katz*, No. 3:17-

27  BK-10063 (Bankr. D.N.J.); *In re Levi Katz, Tirtz Katz*, No. 3:16-BK-27976 (Bankr.

28  D.N.J.).

membership) (and cases cited therein); *In re Hydroxycut Mktg. & Sales Practices Litig.*, Nos. 09md2087 & 09cv1088 BTM (KSC), 2013 WL 5275618, at *2 (S.D. Cal. Sept. 17, 2013) (striking objection because objector had not "carried his burden of proving standing as a class member").

Assuming *arguendo* that he were at least a member of the Settlement Class, the standing of Fearon Objector Katz is nevertheless still limited to objections to provisions that are actually ***adverse to him***. *See Broomfield v. Craft Brew Alliance, Inc.*, No. 17-cv-01027-BLF, 2020 WL 1972505, at * 20 (N.D. Cal. Feb. 5, 2020) ("Objectors must establish Article III standing to object, which requires an injury, caused by the defendant, that is redressable") (citing *Glasser v. Volkswagen of Am., Inc.*, 645 F.3d 1084, 1088 (9th Cir. 2011); *see also In re First Capital,* 33 F.3d at 30 ("Simply being a member of a class is not enough to establish standing. One must be an aggrieved class member."). As an In-Force Policyowner, Fearon Obj., at 13, Katz (and thus Fearon) lacks standing to object that the settlement is supposedly insufficient on behalf of either the Terminated Policyowners or the No-Lapse Policyowners. At best, only those objections to provisions that purportedly adversely affect the In-Force Policyowners can be presented by Fearon through Objector Katz, all of which are shown below to be substantively meritless.

### 3. There Is No Intra-Class Conflict

As a threshold matter, the Court should summarily dispatch the phony "conflict" accusation that pervades nearly all of Fearon's arguments. Just as in *Feller*,[3] Fearon asserts – with no factual, expert, evidentiary or rational basis – that there is supposedly a conflict between the In-Force Policyowners (like Katz) and the Terminated Policyowners (like Terry). Fearon Obj., at 20-23. Fearon's conflict contention is baseless and contrived.

Plaintiffs commenced this action in 2018 on behalf of a putative class of all TLIC Policyowners who were subjected to an increase in the cost of insurance rates

---

[3] *Feller* Dkt. 424, at 15-17.

used to calculate monthly charges withdrawn from their TLIC Policies (the "MDR Increases"). Plaintiffs in their original Complaint (Dkt. 1 ("Cmplt.")) and in their First Amended Complaint (Dkt. 91 ("FAC")) consistently challenged the propriety of the MDR Increases based on the actuarial principles underlying the Policy provisions authorizing TLIC to impose such increases. To the extent TLIC deviated from those principles and provisions, TLIC allegedly breached the Policy contract when it applied the excessive MDR charges to the Policyowners' Policy accounts. Cmplt., ¶¶ 109-116; FAC, ¶¶ 125-132.  Each of Plaintiffs' complaints accordingly included both In-Force and Terminated Policyowners in the operative class definitions, all of whom were subjected to the challenged MDR Increases. Cmplt., ¶ 95; FAC, ¶ 111.

Plaintiffs accordingly moved for certification of a single litigation class that likewise encompassed *all* allegedly overcharged Policyowners, pursuing common restitutionary relief. Dkt. 116, at 27 ("Restitution will be computed by the same methodology applicable to every Policy owner … across both the in-force and terminated Class Policies[.]"). And as Fearon concedes, the Class Representatives in this case include *both* In-Force and Terminated Policyowners. Fearon Obj. at 21:26-28.

Throughout this litigation, therefore, Plaintiffs asserted precisely the *same* causes of action seeking the *same* form of relief on behalf of all such Policyowners, because *every* such Policyowner held an in-force Policy when TLIC first imposed the challenged MDR Increases. *See generally, Jabbari v. Farmer*, 813 F. App'x 259, 2020 WL 4048683, at *1 (9th Cir. July 20, 2020) (class counsel may make strategic decisions to pursue those claims affording "distinct certification and recovery advantages").

Consistent with the class defined in Plaintiffs' pleadings and class certification motion, the Settlement Class includes both In-Force Policyowners and Terminated Policyowners because all share the same claim for the overcharges

8

credited against their accounts, and all stand to benefit from a voluntary reimbursement of those overcharges; the *pro rata* reimbursements for the Terminated Policyowners will be paid in cash because Terminated Policyowners no longer have a Policy account to credit. Joint Decl. ¶ 39. The Settlement Class likewise draws no distinction for the No-Lapse Policyowners,[4] for they too are entitled to their *pro rata* credit to the same extent their account value was reduced by the challenged MDR Increases.

In short, as Fearon himself acknowledges, "the monetary relief being provided Terminated Policyowners does not differ from the monetary relief being provided to In-Force Policyowners – both portions of the class receive a return of MDR overcharges with a minimum payout of $200." Fearon Obj., at 25 n.8.

There is nothing unfair, let alone nefarious, about treating all Policyowners subjected to the MDR Increases the same way under the Settlement Agreement. To the contrary, such a *pro rata* settlement allocation, with no class member being favored over others, has repeatedly been deemed fair, adequate, and reasonable. *See, e.g., Jabbari*, 2020 WL 4048683, at *1 ("The structure of the settlement, under which class members are reimbursed for their out-of-pocket costs and any remaining funds are distributed pro rata, ensured that any potential intraclass competition was avoided."); *see also, e.g., In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJH, Dkt. No. 2093, p.2 (Oct. 27, 2010) (Order Approving Pro Rata Distribution); *In re Vitamins Antitrust Litig.*, No. 99-197 TFH, 2000 WL 1737867, at *6 (D.D.C. Mar. 31, 2000) ("Settlement distributions, such as this one, that apportions funds according to the relative amount of damages suffered by class members have repeatedly been deemed fair and reasonable."); *In re Lloyds' Am.*

---

[4] "No-Lapse Policyowners" means those In-Force Policyowners who have funded their Policies at sufficient levels to trigger the no-lapse protections made available in the Policies through the Endorsement to Modify the Grace Period – referred to internally at TLIC as the Assured Coverage Endorsement or "ACE." Friedman Final Decl., ¶ 10.

9

*Trust Fund Litig.*, No. 96 Civ.1262 RWS, 2002 WL 31663577, at *19 (S.D.N.Y. Nov. 26, 2002) ("pro rata allocations provided in the Stipulation are not only reasonable and rational, but appear to be the fairest method of allocating the settlement benefits"); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 135 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997) ("pro rata distribution of the Settlement on the basis of Recognized Loss will provide a straightforward and equitable nexus for allocation and will avoid a costly, speculative and bootless comparison of the merits of the Class Members' claims"). Indeed, few allocation plans are fairer or more reasonable than a mathematically determined *pro rata* distribution treating all members of the Settlement Class precisely the same.

Despite the complete alignment of claims and the consistent treatment of all Policyowners under the Settlement Agreement, Fearon argues (as he did in *Feller*[5]) that Plaintiff should have pursued ***additional*** relief for the Terminated Policyowners: reinstatement without the need to comply with the Policy's reinstatement conditions. Fearon Obj., at 22-23 & 28-29. The potential assertion of a different remedy is not, however, a conflict of the sort that could preclude either typicality or adequacy under Rule 23(a)(3) or under Rule 23(a)(4). *See Jabbari v. Farmer*, 965 F.3d. 1001, 1008 (9th Cir. 2020) ("Only rarely will a class assert every possible claim that might offer relief."); *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) ("'Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement.'" (quoting William B. Rubenstein et al., 1 Newberg on Class Actions § 3:58 (5th ed.)); *Lymburner v. U.S. Fin. Funds, Inc.*, 263 F.R.D. 534, 540 (N.D. Cal. 2010) (finding "no authority for the argument that typicality is defeated because the remedies may be different for class members…"). And contrary to Fearon's unfounded speculation otherwise, Fearon Obj., at 21:2 & 21:26-28, Terminated

---

[5] *Feller* Dkt. 424, at 23-26.

Policyowner Plaintiffs Bucci and Swift both fully support the Settlement. Friedman Final Decl., ¶ 7.

Fearon's attempt to contrive a purported intra-class conflict as a ground for objection is perversely and cynically calculated to position him for a parasitic fee claim in this action after Plaintiffs' Counsel performed the hard work to actually litigate this action and achieve the Settlement.  Indeed, Fearon himself is currently challenging the *same* MDR Increases in a case brought by an In-Force Policyowner on behalf of a putative class of *both* In-Force and Terminated Policyowners. S*ee, Shupe v. Transamerica Life Insurance Company*, Case No. 1:19-cv-00045 (N.D. Iowa), Dkt. 1, ¶ 117 (alleging a nationwide class consisting of "all TransUltra 115 Policyowners who have been subjected to Transamerica's monthly deduction rate increases since 2017").

Not only that, but a month after filing the *Shupe* complaint, Fearon filed an evidence-free motion for class certification in an attempt to push his case ahead of this first-filed action. *Shupe* Dkt. 10-1. Fearon not only specifically sought certification of a single class including both in-force and terminated policies, he also explicitly avowed that Shupe (who owned only an in-force policy) was an adequate class representative because "Plaintiff's interests are aligned with those of the proposed Class" members. *Id.* at 18. Fearon even relied on this Court's class certification decision in *Feller* as precedent for his attempted pre-emptive strike.  *Id.*

Fearon's attempt to concoct an intra-class conflict is thus most disingenuous. This case is not remotely like the two California cases he cites, *In Re: Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, No. 3:07-cv-05944-JST, Doc. No. 5362 (N.D. Cal. Nov. 8, 2018) and *Vu v. Fashion Inst. of Design & Merch.*, No. CV 14-08822 SJO (Ex), 2016 WL 6211308 (C.D. Cal. Mar. 22, 2016).  In *CRT*, the court was concerned with a decision by class counsel to allocate *zero* recovery to members of the settlement class residing in states for which they had no class representatives; here, Plaintiffs have submitted a reasonable *pro rata* allocation for all Policyowners

11

nationwide, prosecuted by both In-Force and Terminated Class Representatives. And in *Vu*, the court was concerned with a settlement which – unlike the *pro rata* allocation here – called for a ***flat*** payment of $200 regardless of differences in the size of the settlement class member's non-compensatory, statutory damages under ERISA. *Vu*, 2016 WL 6211308, at *6-7.[6]

In short, the Class Representatives supporting the Settlement are neither atypical nor inadequate. Fearon's suggestion that a "key bargaining chip" was leveraged during "inevitable" settlement negotiations is thus absurd. Fearon Obj., at 23:10-13.

4.    The Settlement Is Not Unreasonable for Lack of Reinstatement Relief

Fearon Objector Katz also argues that the Settlement is "unfair and inadequate" because it does not afford a "reinstatement option" for Terminated Policyowners. Fearon Obj., at 28-29.  As noted above, Katz lacks standing to make this objection. Katz also overlooks that the existing contractual right of all Terminated Policyowners to obtain reinstatement under the terms of the Policy contract is expressly preserved under the Settlement Agreement. Friedman Final Decl., ¶ 8.

In any event, Fearon cites not a single instance in which a plaintiff has successfully obtained reinstatement relief through fully contested litigation, through summary judgment or at trial. Instead, as he did in *Feller*, Fearon invokes the settlement that Co-Lead Class Counsel achieved in *Yue v. Conseco Life Ins. Co.*, 2:11-cv-09506-DSF-SH (C.D. Cal.), Dkt. 168 at 29-33, arguing that there is no

---

[6] Fearon's reliance on a string cite of dated, foreign cases is likewise sorely misplaced, Fearon Obj., at 24:1-19, for none remotely suggest any debilitating conflict undermining the proposed Settlement Class in this case, since Plaintiffs have not in any sense "sacrificed" stronger claims to prosecute weaker claims on a class-wide basis. *See Coleman v. Gen. Motors Acceptance Corp.*, 220 F.R.D. 64, 82 (M.D. Tenn. 2004) (distinguishing Fearon's cases because "they involved actions where the class representatives had left aside the far stronger claims for monetary damages and sought to have the weaker claims certified, for dubious strategic purposes").

reason why the same limited reinstatement benefit achieved in *Conseco* was not obtained in this case.  The circumstances in *Conseco* were, however, starkly different than those here.

In *Conseco* the court had granted summary judgment that the operative policy language allowed Conseco to increase COI charges for one reason only: adverse mortality experience. *Yue v. Conseco Life Ins. Co.*, No. CV 08-1506 AHM (JTLx), 2011 WL 210943, at *9 (C.D. Cal. Jan. 19, 2011). When Conseco attempted to circumvent the court's ruling with a different methodology that again considered factors other than adverse mortality experience, the court preliminarily enjoined Conseco. *Yue v. Conseco Life Ins. Co.*, 282 F.R.D. 469, 471 (C.D. Cal. 2012). This combination of events in *Conseco* enabled the plaintiffs to negotiate a limited ("simplified") reinstatement option in addition to a reduction in the level of the COI rate increase (not an elimination of the increase) going forward.  And even then, the reinstatement option provided in *Conseco* generally required limited underwriting as a precondition for full reinstatement.

Here, the controlling Policy language is far different than the single-factor mortality clause at issue in *Conseco*.  As Transamerica has repeatedly emphasized, unlike *Conseco* the Policy language here authorizes an MDR increase for numerous, non-exclusive reasons in addition to adverse mortality expectations. *See, e.g.,* Dkt. 45-1, at 13-15. For that reason, Plaintiffs argued that the Non-Recoupment Provision operated as an overall limitation on Transamerica's contractual right to impose MDR increases, an actuarial theory not in issue in *Conseco*. This is a much different liability theory.  Joint Decl., ¶¶ 89-90. Furthermore, here the Court had already made it clear in *Feller* that differing motivations and circumstances surrounding a Policyowner's decision to allow a lapse or surrender could be so varied that the Court would find it difficult to find the irreparable injury needed to support such injunctive relief.  Joint Decl., ¶ 44.  And finally, because reinstatement would require owners of Terminated Policies to pay past due MDR charges and continue paying steeply

escalating charges as the elderly Policyowners grow older in future years, any hypothetical reinstatement option was of dubious value to those Settlement Class Members. Friedman Final Decl., ¶ 9.

Given these significant differences in the strength of the claims and given this Court's stated disinclination to grant injunctive relief, a "no underwriting" reinstatement option was not a realistic settlement remedy here. *Jabbari*, 2020 WL 4048683, at *1 ("[o]bjectors' arguments about the size of other settlements beyond this case … do not demonstrate that the district court abused its discretion in approving the settlement"); *Edwards v. Nat'l Milk Producers Fed'n*, No. 11-cv-04766-JSW, 2017 WL 3616638, at *7 (N.D. Cal. June 26, 2017) (overruling objection that settlement did not include injunctive relief in addition to settlement funds).

Simply arguing that the recovery in the case should have been better does not render the Settlement itself unfair, unreasonable, or inadequate. *See, e.g., Negrete*, 2015 WL 12592726, at *8 ("That the Objectors may have made another bargain is beside the point; settling parties need not find the most ideal terms.") (quoting *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 8:10-ML 02151 JVS (FMOx), 2013 WL 3224585, at *19 (C.D. Cal. June 17, 2013)). As the Ninth Circuit puts it:

> Of course it is possible, as many of the objectors' affidavits imply, that the settlement could have been better. But this possibility does not mean the settlement presented was not fair, reasonable or adequate. Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *Roberts v. Electrolux Home Prods., Inc.*, Nos. SACV12-1644 and CV13-2339-CAS(VBKx), 2014 WL 4568632, at *11-12 (C.D. Cal. Sept. 11, 2014) (quoting same).

5. <u>The Settlement Benefits for the No-Lapse Policyowners Are Not "Illusory"</u>

Just as in *Feller*,[7] Fearon argues that the values of the Settlement and thus the basis of the fee request is inflated by purportedly "illusory" relief.  This time Fearon focuses on a relatively modest segment of the In-Force Policyowners who have funded their Policies at sufficient levels to trigger a Policy benefit which prevents the Policy from lapsing (the "No-Lapse Policyowners"). Fearon Obj., at 23-26; see also Friedman Final Decl., ¶ 11. Specifically, Fearon argues that these so-called No-Lapse Policyowners "have no realistic way to use the money credited to their accumulation values." Fearon Obj., at 26:4-6; *id.* at 26:13-14 (asserting that such relief "does not alter the economic position of TLIC or the affected Policyowner"). As explained above, however, Fearon Objector Katz again lacks standing to make this objection on behalf of the No-Lapse Policyowners.

Fearon's argument is, in any event, once again misguided and misinformed. The No-Lapse Policyowners have exercised a policy benefit providing that their policies will not lapse so long as they pay a specified "Select Premium" or "Select Monthly Premium" amount (the "Select Premiums"). Friedman Final Decl., ¶ 11. Most of the No-Lapse Policyowners activated this protection ***before*** the MDR Increases were imposed because – due to their advanced age – the Monthly Deductions under the pre-existing rate schedule exceeded the amount of the Select Premiums. *Id*. Thus, the MDR Increases effectively had no impact on the out-of-pocket Monthly Deductions paid by the No-Lapse Policyowners, either in the past or prospectively.  *Id.*

Accordingly, the MDR Increases impacted these No-Lapse Policyowners only by reducing the account values of their In-Force Policies by the overcharges attributable to the increases. Friedman Final Decl., ¶ 12. Like every other In-Force Policyowner, the Settlement will provide each and every No-Lapse Policyowner

---

[7] *Feller* Dkt. 424, at 26.

15

with a credit to their account value equal to their *pro rata* share of the In-Force Policies Settlement Common Fund. *Id.* Stated differently (but ignored by Fearon), the No-Lapse Policyowners receive the same Settlement benefits as every other In-Force Policyowner, including an enhanced *pro rata* credit to their account values equal to approximately 100% of the account value reductions attributable to the MDR Increases. *Id.* These account value credits operate to increase or improve the availability of the cash accumulation feature of the TLIC Policies, one of the primary benefits of universal life policies. *Id.*

      6.   The Settlement Agreement Does Not "Permanently Sanction" Improper and Illegal MDR Increases

Fearon argues that the entire Settlement is unreasonable and inadequate because it does not achieve total capitulation by TLIC, in the form of a complete invalidation of the challenged MDR Increases. Fearon Obj., at 29-31; *but see, e.g., Evans v. Linden Research, Inc.*, No. C-11-01078 DMR, 2014 WL 1724891, at *4 (N.D. Cal. Apr. 29, 2014) (overruling objection the settlement could have been better by providing different or additional relief); *Ross v. Trex Co.*, No. 09-cv-00670-JSW, 2013 WL 6622919, at *4 (N.D. Cal. Dec. 16, 2013) (same). As explained above, however, TLIC indisputably has the contractual right to impose MDR increases, subject only the guaranteed limits and the nuanced actuarial constraints alleged by Plaintiffs; thus, even if the MDR Increases were eliminated completely, TLIC could simply impose a new increase by pulling other actuarial levers or devising a new methodology (just as Conseco attempted in the *Conseco* COI litigation).

A proposed release of likely unattainable prospective remedies on behalf of all class members in exchange for immediate monetary benefits is a hallmark of compromise, not an indicia of conflict or collusion. It is not surprising, therefore, that *every* settlement class certified in actions challenging "cost of insurance" rate increases on universal life policies have included both in-force and terminated policyowners.  Joint Decl., ¶ 51; Friedman Final Decl., ¶ 13. This Court in *Feller*

overruled the same objection seeking disapproval of the Settlement because Plaintiff did not secure the complete elimination of the MDR Increases, holding:

> Here, the Plaintiffs raised questions about the contractual constraints imposed by the contractual provision stating that Transamerica does not recover past losses by changing the monthly deduction rates upon Transamerica's discretion to increase MDRs subject only to the Policy contracts' guaranteed maximum rates - implicating a classic "battle of the experts." A compromise requiring Transamerica to refund almost 65% of the MDR Increases assessed during the Class Period, and establishing durational and substantive limits on any future MDR increase, is not an unreasonable compromise of the dispute.

*Feller*, 2019 6605886, at *10.  Here the Settlement improves on that afforded in *Feller*, reimbursing essentially 100% of the MDR Increases assessed during the Class Period. Joint Decl., ¶¶ 39, 52.

Fearon also denigrates the seven-year freeze on future MDR increases, characterizing it as "illusory" because the MDR Increases will "almost certainly" cause any In-Force Policyowner not benefitting from the No-Lapse Guarantee to "forfeit" their Policies, mooting any need for any further MDR increase. Fearon Obj., at 31. But Fearon offers no evidentiary or expert support for his unsubstantiated assertion that ***every single one*** of the Policies will lapse in the absence of a prospective mandatory injunction invalidating the MDR Increases on a prospective basis. TLIC itself anticipated no such massive level of surrenders or lapses when designing the MDR Increases. Friedman Final Decl., ¶ 14.

Furthermore, Fearon's attempt to trivialize the benefit afforded by the seven-year freeze also ignores that TLIC claims the right to impose rate hikes even higher than the challenged MDR Increases. While the MDR Increases can rightfully be characterized as harsh or severe, TLIC actually capped them at a level lower than the increases called for by the methodology employed by the company, leaving open the distinct possibility for additional increases in future years.  Friedman Final Decl., ¶ 15.  The Settlement prohibits TLIC from imposing any such additional increases for the next seven years (a period two years ***longer*** than the comparable freeze approved in *Feller*).

In sum, Fearon's objection that TLIC did not agree to completely eliminate the MDR Increases once again demonstrates "a failure to appreciate the fact that settlements are by necessity compromises." *Roberts*, 2014 WL 4568632, at *11; *Benedict v. Diamond Resorts Corp.*, No. CV 12-00183 DAE BMK, 2013 WL 12149277, at *2 (D. Haw. June 6, 2013) (overruling objection that settlement "does not go far enough" because defendants "should be responsible for 100% of the water intrusion repair costs").

### 7. The Court Has Ample Information to Understand the Value and Allocation of Settlement Benefits

Just as in *Feller*,[8] Fearon argues that the Court has not been provided with sufficient information to understand "the actual recovery for each portion of [the] Settlement Class compared to their potential damages…" Fearon Obj., at 17-19. To make this argument, Fearon disregards the overcharge damages actually sought by Plaintiffs, and instead erroneously equates recoverable damages (for both In-Force or Terminated Policyowners) to the ***face amount*** of the implicated insurance policies. *Id.*, at 18-19. Fearon then estimates the face-amount of all Terminated Policies to be $1 billion, to argue that Plaintiffs are supposedly trading off a "$2 million recovery … for losses that could easily eclipse $1 billion." *Id.* at 18.

Fearon's use of total face amount as the estimated value of Policyowner damages is preposterous, as to either In-Force or Terminated Policies. In doing so, Fearon impermissibly posits that 100% of the Policies would have remained in place until the insureds died, that the Policyowners would pay no future MDR charges to maintain the insurance coverage in place all those years, and that damages would somehow equal the total payout of every dollar of death benefit with no discount to present value. This phantasmagoric, wildly inflated calculation is untethered to any plausible damages methodology based on non-speculative actuarial analysis, let alone one that would pass muster under *Daubert* or be admissible in any courtroom.

---

[8] *Feller* Dkt. 424, at 12-14.

Tellingly, Fearon submits no expert declaration, case law or rationale in support of his outlandish damage postulate.

Fearon's estimate of damages based on the face amount of all Policies subject to the MDR Increases only exposes his lack of experience and understanding of the nature of the claims asserted in the FAC (or in any other cost of insurance class action for that matter). Certainly his misguided damages analysis affords no "reasonable basis" for Fearon's wish-list of requested supplemental information made for the first time on the day objections to the proposed Settlement fell due. *See generally*, *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 619 (S.D. Cal. 2005) (while objectors are entitled to meaningful participation in the settlement proceedings and leave to be heard, they are not automatically entitled to discovery or to question and debate every provision of the proposed compromise); *see, e.g., In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2016 WL 5793336, at *6 (N.D. Cal. Oct. 4, 2016) (objector failed to provide "reasonable basis" for discovery requests), *aff'd sub nom. In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 894 F.3d 1030 (9th Cir. 2018).

8.   There Is No Jurisdictional Impediment to Settlement Approval

Just as in *Feller*,[9] Fearon argues that the risks to continued class certification somehow "disarmed" Co-Lead Class Counsel from negotiating a fair, reasonable, and adequate settlement on behalf of a nationwide class. Fearon Obj., at 26-28. Although Co-Lead Class Counsel quite properly acknowledged some risk that *Bristol-Myers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773 (2017) extended to the class action context, we simultaneously explained that any such risk was remote since (a) the Ninth Circuit was unlikely to rule contrary to the conclusion drawn by most federal district courts in California, and (b) **this** Court had already rejected TLIC's jurisdictional contention in **this** action. *Thompson v. Transamerica Life Ins.*

---

[9] *Feller* Dkt. 424, at 20-21.

*Co.*, No. 2:18-cv-05422-CAS-GJSx, 2018 WL 6790561, at *6 (C.D. Cal. Dec. 26, 2018) (declining to extend *Bristol-Myers* to the class action context in light of these "persuasive" authorities). In addition, Fearon conveniently ignores that specific jurisdiction over TLIC in California exists because the Policies were designed in and issued from California, and that the MDR Increases were modeled by actuaries residing in California. *See, e.g., Feller v. Transamerica Life Ins. Co.*, No. 2:16-cv-1378-CAS(AJWx), 2017 WL 6453262, at *5 (C.D. Cal. Dec. 11, 2017) (finding specific jurisdiction over TLIC in challenge to earlier MDR increase imposed on policies designed in and issued from California).

Furthermore, the footnote quotation from the only case cited by Fearon as suggesting a jurisdictional risk, *Wenokur v. AXA Equitable Life Ins. Co.*, No. CV-17-00165-PHX-DLR, 2017 WL 4357916, at *4 n.4 (D. Ariz. Oct. 2, 2017), has been subsequently recognized as dictum and against the weight of authority within the Ninth Circuit. *See Labrecque v. NewRez LLC*, No. CV-19-00465-TUC-RCC (EJM), 2020 WL 3276699, at *12 (D. Ariz. June 16, 2020), *report and recommendation adopted sub nom. Labrecque v. NewRez LLC*, No. CV-19-00465-TUC-RCC (EJM), 2020 WL 4364215 (D. Ariz. July 30, 2020).

All litigation carries risk. That Co-Lead Class Counsel considered this particular risk in reaching a settlement hardly means the Settlement ultimately reached is "inadequate and unfair." *Retta v. Millennium Prods., Inc.*, No. CV15-1801 PSG AJWx, 2017 WL 5479637, at *8 (C.D. Cal. Aug. 22, 2017) ("[a]rguing that Class Members could have done better elsewhere is not a valid basis for finding a settlement unfair"). Moreover, any risk associated with TLIC's jurisdictional defense is beside the point. If jurisdiction were found to be lacking under *Bristol-Myers*, the California claims would still proceed here (with any adverse decision applicable nationwide given the governing insurance regulations uniformly prohibiting rate discrimination), and there would still be general jurisdiction over TLIC in Iowa. Far from "disarming" Plaintiffs' Counsel, the jurisdictional defenses

20

invoked by TLIC would at most delay and complicate, not abrogate, the litigation and ultimate resolution of Plaintiffs' claims.

Nor does the Supreme Court's personal jurisdiction analysis in *Bristol-Myers* suggest that this Court somehow suddenly lacks jurisdiction to approve a nationwide class settlement, where the settling defendant has voluntarily submitted to personal jurisdiction before the Court for purpose of approval and implementation of the settlement. Fearon Obj., at 27-28; *but see*, *Bristol-Myers*, 137 S. Ct. at 1783 ("Our straightforward application in this case of settled principles of personal jurisdiction will not result in the parade of horribles that respondents conjure up."). Fearon cites no case in support of such a proposition, and Plaintiffs have found none.[10]

9.   The Settlement Common Funds Do Not Revert to TLIC

Fearon also takes issue with the Parties' plan to distribute the Settlement Common Fund by immediate credit to the accumulation accounts of In-Force Policies, rather than sending a check (as will be done for the Terminated Policies). Fearon Obj., at 31-34. This, claims Fearon, supposedly renders the entire Settlement "akin to a coupon settlement." *Id.*, at 33:19; *but see, Feller*, 2019 WL 6605886, at *5 (approving precisely the same distribution process).

Affording the In-Force Policyowners with an immediate account credit as in *Feller* does not render the Settlement "akin to a coupon settlement," since no

---

[10] Notably, there is no choice of law objection lodged by anyone (including by New Jersey resident Katz) contending (a) that the standardized Policy contract should be construed differently depending upon the state in which the Policyowner happens to reside, or (b) that the law in any other state is more favorable than the Court's application of California law to interpret the standardized policy contract. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 561-62 (9th Cir. 2019) ("neither the district court nor class counsel [are] obligated to address choice-of-law issues beyond those raised by the objectors, and we will not decertify a class action for lack of such analysis"); *accord*, *Jabbari*, 965 F.3d at 1007 ("a district court does not commit legal error by not conducting a choice-of-law analysis, despite variations in state law, before determining that common issues predominate for a settlement class").

Settlement Class member is required to purchase a new Transamerica product (or do anything) in order to realize the benefit of the Settlement. *See also, e.g., Fleury v. Richemont N. Am., Inc.*, No. C-05-4525 EMC, 2008 WL 3287154, at *2 (N.D. Cal. Aug. 6, 2008) (a "coupon settlement" is one where the relief constitutes "a discount on ***another*** product or service offered by the defendant in the lawsuit") (quotation omitted; emphasis added); *contrast True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1069-70 (C.D. Cal. 2010) (the primary relief offered by the settlement was a "$500 or $1000 rebate given to class members who purchase ***another*** Honda or Acura over the next nineteen months") (emphasis added).

### 10.  The Class Notice Was More than Adequate

Fearon argues that the Class Notice was inadequate because it supposedly "failed to provide an opportunity for Settlement Class Members to determine the amount of their *pro rata* portion of the Settlement Relief." Fearon Obj., at 19-20 & 20:10-11. As his own cited authority makes clear, however, the Ninth Circuit does not require class notice to contain estimates or calculations of individual damages. *Id.*, at 19 (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962-63 (9th Cir. 2009). Class notice is sufficient where, as here, it "contains adequate information, presented in a neutral manner, to apprise class members of the essential terms and conditions of the settlement." *Rodriguez,* 563 F.3d at 962. And as to the distribution of settlement benefits, class notice is sufficient if "it describes the ***aggregate amount*** of the settlement fund and the ***plan for allocation***." *Id.* (emphasis added).

Thus, although the class notice in *Rodriguez* did not "analyze the expected value" of the settlement, the Ninth Circuit did "not see why it should," based on established precedent holding that class notice is not insufficient "because it failed to inform class members of what they could expect to receive from the settlement." 563 F.3d at 962 (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1372 (9th Cir. 1993) (concluding class notice satisfied due process where it "clearly stated the aggregate amount of the settlement and the formula for computing awards")). In

22

*Torrisi*, the Ninth Circuit recognized that estimates of potential recovery are "a matter of conjecture," when it is "unknown how many class members would opt out or submit claims." 8 F.3d at 1374 (quotation omitted).

Here, the Class Notice indisputably contains "the aggregate amount of the proposed settlement and the formula for computing recoveries." *Torrisi*, 8 F.3d at 1374; *accord, Rodriguez*, 563 F.3d at 962. Specifically, the Class Notice provided a detailed breakdown of all the benefits provided by the Settlement (including the amount of money to be distributed to the Class and the prospective relief agreed to by Transamerica) and even an explanation of how settlement payments will be calculated. Dkt. 153-1, at 7-8. This is "all that was required." *Torrisi*, 8 F.3d at 1374; *see also In re Cooper Cos., Inc. Sec. Litig.*, No. SACV 06-00169-CJC(RNBx), 2010 WL 11519148, at *3 (C.D. Cal. Aug. 16, 2010) (concluding class notice is sufficient if it "contain[s] the aggregate amount of the proposed settlement and the formula for computing recoveries"); *Corder v. Houston's Rests., Inc.*, No. SACV 06-1 CJC (ANx), 2007 WL 9702891, at *6 (C.D. Cal. Jan. 5, 2007) (same).

### 11.   A 19-20% Fee Award Is Not "Disproportionate"

Fearon this time closes with a request that the 19% fee award requested by Plaintiffs' Counsel be reduced by some unspecified amount to account for (a) the supposedly "illusory" Settlement Benefit to No-Lapse Guarantee Policyowners and (b) the "likely exclusion requests by institutional investors." Fearon Obj., at 34-35. Neither contention is well-taken.

First, as explained above, no aspect of the Settlement Common Fund is illusory, including specifically with respect to the No-Lapse Policyowners.

Second, the "likely exclusion requests by institutional investors" assumed and postulated by Fearon did not materialize: the level of exclusion requests by institutional investors is in fact *de minimus*, with only 3 institutional investors opting out only 56 Policies. Friedman Final Decl. ¶ 4. Under the terms of the Settlement, these exclusions have resulted in only a minimal reduction of $5.6 million to the In-

Force Policies Settlement Common Fund. *Id*. The relative lack of exclusion requests confirms an appreciation even among institutional investors for the value of the Settlement Benefits generated solely through the efforts of Plaintiffs' Counsel, and even with the small reduction to the In-Force Policies Settlement Common Fund, the resultant fee request (approximately 20%) still falls well-below the Ninth Circuit's 25% "benchmark." *Id.,* ¶ 5.

## B. The Vitale Objection

Though cryptic, the Vitale Objection plainly raises individual issues rather than a class-wide objection. Vitale Obj., at 1-3. Vitale therefore presents no grounds to disapprove a Settlement affording relief with respect to the MDR Increases to the balance of the Settlement Class as anything other than fair and reasonable. *See, e.g., Feller,* 2019 WL 6605886, at *9 (overruling objection that raised individual issues rather than a class-wide objection); *Roberts v. Marshalls of CA, LLC*, No. 13-cv-04731-MEJ, 2018 WL 510286, at *10-11 (N.D. Cal. Jan. 23, 2018) (overruling objection to class settlement based on objector's unique circumstances: "nothing in Ms. Michaels' objection suggests this is a class-wide issue, rather than an individual one").

Furthermore, the concerns described in the Vitale Objection are not based on the same factual predicate as those alleged in the FAC, and as such are not prejudiced by the proposed Settlement. *Feller*, 2019 WL 6605886, at *9 (citing *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (a class settlement agreement may preclude a party from bringing a related claim in the future, but only where the released claim is "based on the identical factual predicate as that underlying the claims in the settled class action") (quoting *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008))); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992) (class may release only those claims based on "the identical factual predicate" as those underlying the claims in the settled class action) (citation omitted)).

24

## C. The Sher Objection

The Sher Objection presents a mixture of the sort of individual circumstances voiced in the Vitale Objection (e.g., Sher Obj. at 2-4, entitled "Our Experience with Transamerica"), and the class-wide concerns concerning aspects of the proposed Settlement similar to, but not quite the same as voiced in the Fearon Objection. Sher Obj., at 4-10. To the extent the former, the objections should be overruled for the reasons as just explained with respect to the Vitale Objection: they are neither pertinent to nor adversely affected by the Settlement.

Notably, Sher is a No-Lapse Policyowner who can continue its Policy in force irrespective of the challenged MDR Increases so long as it maintains its premium payments at the same level as before the implementation of those MDR Increases. Friedman Final Decl., ¶ 17.  In any event, Sher's three basic contentions why the Settlement supposedly offers no "meaningful relief of protection" are erroneous.

### 1. The Credit to the Individual Settlement Class Member Is Not "De Minimus"

First, Sher like Fearon belittles the adequacy of the $80-90 million Settlement Common Fund. Sher Obj., at 4-6. Sher does so by comparing that compromise recovery to its estimate of the total amount TLIC will receive henceforth under the continued MDR Increases, which Sher calls "future damages." *Id.* From this perspective, Sher estimates that its recovery is only 8-12% of its actual damages. *Id.* at 5. But Sher mistakenly views such "future damages" as a matter of entitlement, without any consideration of the risk to establishing TLIC's liability in the first instance. *But see, Officers for Justice*, 688 F.2d at 625 ("The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators."); *accord, Hanlon*, 150 F.3d at 1027 ("Settlement is the offspring of compromise;…").  Sher thus sorely understates the value of the "bird in hand."

2.   There Is No Basis to Prevent TLIC from Assessing Other Policy Charges

Sher next argues that TLIC will recoup the In-Force Policies Settlement Common Fund credits by increasing *other* charges TLIC is permitted to assess under the Policy (which Sher refers to as "customary deductions"). Sher Obj., at 6-8. The "customary deductions" Sher refers to are cost of insurance charges that escalate automatically under the Policy contract irrespective of the challenged MDR Increases. Friedman Final Decl., ¶ 18.  In other words, Sher's Policy would have performed in the diminishing fashion it complains of even if there had been no MDR Increases. *Id.*

Sher's recoupment contention is thus based on the application of Policy charges that even Sher recognizes were not the subject of this action.  Sher Obj., at 8. With respect to the MDR Increases that were the subject of this action, however, the Settlement Agreement establishes the seven-year freeze in MDR Increases, which precludes TLIC from any such "claw back" of the In-Force Policies Settlement Common Fund during that extended period, protecting the Settlement Class against the primary risk of TLIC recoupment through a subsequent discretionary cost of insurance increase (since even with the MDR Increases TLIC was still charging less than the maximum guaranteed Monthly Deduction rates permitted under the Policies). *Id.,* ¶ 16.

3.   The MDR Increase Protection Benefit Has Real Value

Third, Sher disparages the MDR Increase Protection Benefit of "no value." Sher Obj. at 8.  As just explained, however, because the challenged MDR Increases were set at levels still *below* the contractual maximum, TLIC definitely has the contractual authority to institute *additional* MDR Increases even after an unfavorable resolution of this action on the merits.  Friedman Final Decl. ¶ 15. Yet Sher contends that the MDR Increase Protection Benefit is "illusory," by assuming that *all* Policies will lapse anyway during the seven-year protection period under the weight of the challenged MDR Increases. Sher Obj., at 8. As explained above in

connection with the Fearon Objection, there is absolutely no basis in fact for such an assumption. *See supra* p. 17.

### 4.   The Class Notice Was Not Deficient

Sher's final objection – that although "technically correct" the Class Notice is allegedly "materially misleading" – is essentially derivative of its forgoing substantive objections:

> The Notice is deficient as it: (a) gives prominence to the payment to the class, which is small and obscures the real costs to the class, which are large; and (b) creates the misleading impression that the Policyowners are protected from further increases for 7 years.

Sher Obj., at 9. As just shown above, both premises to Sher's deficient Class Notice argument are mistaken.

Moreover, contrary to Sher's assertion, the Class Notice specifically advised Settlement Class Members in clear and conspicuous language (a) that the MDR Increases would remain in place, (b) that the seven-year freeze applied only to new MDR increases, and (c) that the MDR schedules implemented through the challenged MDR Increases (which were described in the notices and illustrations distributed at the time of the increases) would remain in place; to wit:

> Transamerica has also agreed that it *will not impose any additional MDR increase(s)* on any Class Policy within seven (7) years of the date of the Settlement Agreement, unless ordered to do so by a state regulatory body. This means that *the MDR Increases will remain in effect and TLIC may continue to maintain the MDR schedules implemented through the MDR Increases in the future*.

Dkt. 153-1, at 7 (emphasis added). The Class Notice thus makes unambiguously clear that although the MDR Increases were not eliminated, the Settlement is a compromise that both reimburses all alleged overcharges assessed to date and precludes TLIC from imposing any *new* MDR Increases for seven years. There is nothing "materially misleading" about the Class Notice, which as in *Feller* amply satisfies the requirements of due process and Rule 23.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter

27

its Order: (1) overruling the Fearon, Vitale and Sher Objections; (2) confirming certification of the Settlement Class; (3) granting final approval of the proposed Settlement; and (4) approving Plaintiff Counsels' requested common fund payment of attorneys' fees, litigation expenses, and service awards.

Respectfully submitted this 17th day of August, 2020.

**BONNETT FAIRBOURN FRIEDMAN & BALINT, PC**

/s/ *Andrew S. Friedman*

Andrew S. Friedman (*Pro Hac Vice*)
Francis J. Balint, Jr. (*Pro Hac Vice*)
2325 East Camelback Road, Suite 300
Phoenix, AZ 85016
Tel: (602) 274-1100
Fax: (602) 274-1199
afriedman@bffb.com
fbalint@bffb.com

**THE MOSKOWITZ LAW FIRM**
Adam M. Moskowitz (*Pro Hac Vice*)
Howard M. Bushman, Esq. (*Pro Hac Vice*)
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
Tel: (305) 740-1423
Fax: (786) 298-5737
adam@moskowitz-law.com
howard@moskowitz-law.com

**CONSUMER WATCHDOG**
Harvey Rosenfield (SBN 123082)
Jerry Flanagan (SBN 271272)
6330 San Vicente Blvd., Suite 250
Los Angeles, CA 90048
Tel: (310) 392-0522
Fax: (310) 392-8874
Harvey@consumerwatchdog.org
jerry@consumerwatchdog.org

***Co-Lead Class Counsel***

## CERTIFICATE OF SERVICE

I certify that I have served a true and accurate copy of the foregoing document on the individuals listed below by placing a copy, postage prepaid in the United States Mail on this the 17th day of August, 2020.

Stuart Brafman, Trustee
Stanley O. Sher, Grantor/Insured
Sher Family Trust
2810 McGill Terrace, N.W.
Washington, DC  20008

John and Philomena Vitale
2512 SW 25th Street
Cape Coral, FL 33914

/s/ *Andrew S. Friedman*
Andrew S. Friedman

29