1
2
3
4
5
6
7
8  **UNITED STATES DISTRICT COURT**
9  **CENTRAL DISTRICT OF CALIFORNIA**
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GAIL THOMPSON, et al.,

　　　　　Plaintiffs,

　　vs.

TRANSAMERICA LIFE INSURANCE COMPANY,

　　　　　Defendant.

Case No. 2:18-cv-05422-CAS-GJSx

CLASS ACTION

**FINAL ORDER APPROVING PLAINTIFFS' MOTION FOR FINAL CERTIFICATION OF SETTLEMENT CLASS AND FINAL APPROVAL OF PROPOSED NATIONWIDE CLASS SETTLEMENT AGREEMENT [DKT. 154]**

Judge:　　Hon. Christina A. Snyder

In 2017 and 2018, Transamerica Life Insurance Company ("TLIC") increased the monthly deduction rates ("MDR") applicable to the Policies issued under the plans set forth in Paragraph 48 of the Parties' Settlement Agreement (the "MDR Increases").

On June 18, 2018, Gail Thompson on behalf of herself and as Power of Attorney for Lois Thompson filed this putative class action against TLIC challenging the MDR Increases. [Dkt. 1.] [1] On May 8, 2019, Gail Thompson, Hans Sunder in his capacity as Trustee for the Sunder Irrevocable Trust, Belinda Bucci in her capacity as Trustee for the Nancy and Charles Barcelona Irrevocable Trust dated May 12, 1998, Debra Lewis, Diana Lewis, Marc Soble in his capacity as Trustee for the Marilyn B. Soble Irrevocable Trust dated 11/19/1997, Michael H. Stephens, Sandra Rosner in her capacity as Trustee for the Rosner 1998 Irrevocable Trust Dated 5/19/98, and Kathleen M. Swift (collectively "Plaintiffs") filed a First Amended Class Action Complaint adding an additional eight (8) named plaintiffs. [Dkt. 91.]

On September 19, 2018, TLIC moved to dismiss the complaint [Dkt. 45], which Co-Lead Class Counsel vigorously opposed through briefing and oral argument to the Court. [Dkt. 65 and 67.] On December 26, 2018, the Court granted in part and denied in part TLIC's motion to dismiss the plaintiffs' claims on the merits and denied TLIC's motion to dismiss for lack of personal jurisdiction. [Dkt. 8.] In denying TLIC's motion to dismiss the plaintiffs' claims, the Court sustained the adequate pleading of both (a) certain of the claims and (b) jurisdiction over claims asserted on behalf of TLIC policyowners residing outside of California. [*Id.*]

On September 24, 2019, Plaintiffs moved for certification of their putative

---

[1] On December 14, 2018, Gail Thompson as Power of Attorney for Lois Thompson moved to voluntarily dismiss her claims without prejudice, which was subsequently granted by the Court.  [Dkt. 86.]

1  class claims under Federal Rule of Civil Procedure 23. [Dkt. 107-115.] Plaintiffs'
2  Counsel assembled a comprehensive record in support of class certification,
3  including expert testimony, as required under the "rigorous analysis" standard
4  applicable under Rule 23. [*Id.*]

5      On April 6, 2020, the Parties executed a Settlement Agreement and Release
6  [Dkt. 143-1 (the "Settlement Agreement")] intended to resolve the Action (the
7  "Settlement"). On April 6, 2020, the Settlement was submitted to the Court along
8  with a Motion for Preliminary Approval [Dkt. 141.]

9      On May 4, 2020, this Court entered its Preliminary Approval Order: (a)
10  preliminarily approving the class action settlement proposed in the Settlement
11  Agreement by the Plaintiffs and TLIC in the Action, (b) conditionally certifying the
12  Settlement Class under Fed. R. Civ. P. 23(b)(3), (c) directing distribution of the Class
13  Notice, and (d) preliminarily enjoining parallel proceedings. [Dkt. 151.] The Court
14  also set a Fairness Hearing for August 31, 2020, (a) to determine whether the
15  proposed Settlement is fair, reasonable, adequate, in the best interests of the
16  Settlement Class, and (b) to consider any application for approval of a common fund
17  payment of attorneys' fees and litigation expenses to Plaintiffs' Counsel and of
18  service awards to the Settlement Class Representatives. [*Id.*]

19      The approved form of Class Notice having been disseminated in form and
20  content directed by the Preliminary Approval Order [Dkt. 153], Plaintiffs on July
21  20, 2020, moved for final approval of the Settlement [Dkt. 154 ("Final Approval
22  Motion")].

23      The Court held the Fairness Hearing on August 31, 2020. [Dkt. 193.] The
24  Court has considered: (i) the Final Approval Motion; (ii) the extensive supporting
25  memoranda of points and authorities; (iii) the supporting declarations and exhibits;
26  (iv) TLIC's separate memoranda supporting final approval of the Settlement and
27  entry of the Final Approval Order in the Action based on the terms and conditions
28

set forth in the Settlement; (v) the Settlement Agreement itself; (vi) the entire record in this proceeding, including but not limited to the memoranda, declarations, and exhibits submitted in support of preliminary approval of the Settlement; (vii) the form and manner of Class Notice of the proposed Settlement provided to the Settlement Class that encompasses more than 7,800 Policies; (viii) the filing of only two objections to the Settlement by Class Members; (ix) the filing of objections by two parties the Court determines below to be non-Class Members without standing to object to the Settlement; (x) the arguments advanced by all Class Member and non-Class Member objectors; (xi) the absence of any objection or response by any state attorneys general, no any insurance official from any state, after they were all provided with the notices required by the Class Action Fairness Act of 2005, 28 U.S.C. §1715; (xii) the oral argument at the Fairness Hearing; (xiii) this Court's experiences and observations while presiding over this Action and similar actions; (xiv) the Court's file herein; and (xv) the relevant law including, but not limited to the factors for class settlement approval set forth in *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004).

Based upon the foregoing considerations, the Court's findings of fact and conclusions of law as set forth in the Preliminary Approval Order, and good cause appearing:

IT IS HEREBY ORDERED AND DECREED:

1.    **Definitions.** The capitalized terms used in this Final Approval Order shall have the meanings and/or definitions given to them in the Settlement Agreement [Dkt. 143-1], or if not defined therein, the meanings and/or definitions given to them in this Final Approval Order.

2.    **Incorporation of Documents.** This Final Approval Order incorporates and makes a part hereof:

(a)    the Settlement Agreement (including the exhibits thereto); and

1          (b)       the Court's findings and conclusions contained in its Preliminary

2 Approval Order.

3          3.     **Jurisdiction and Venue.** The Court has personal jurisdiction over the

4 Parties and the Settlement Class Members. The Court has subject matter jurisdiction

5 over the Consolidated Actions under 18 U.S.C. §1332, including, without limitation,

6 jurisdiction to approve the Settlement, to settle and release all claims alleged in the

7 action and all claims released by the Settlement, including the Released Transactions

8 (as defined in the Settlement), to adjudicate the objections submitted to the proposed

9 Settlement by Settlement Class Members and to dismiss the Consolidated Actions

10 with prejudice. By failing to exclude themselves according to the Court's

11 Preliminary Approval Order, all Settlement Class Members have consented to the

12 jurisdiction of this Court for purposes of this Action and the settlement of this

13 Action. TLIC also has consented to personal jurisdiction of this Court for purposes

14 of the Settlement of this Action. Venue in this District is appropriate under 28 U.S.C.

15 §1391.

16          4.     **Definition of the Class and Settlement Class Members.** The

17 Settlement Class hereby certified by the Court is defined as:

18        All persons or entities who owned a Policy as of the Policy Status Date.

19
20 Excluded from the Settlement Class are: (a) the Honorable Christina A. Snyder,

21 United States District Court Judge of the Central District of California (or other

22 Circuit, District, or Magistrate Judge presiding over the Action through which this

23 matter is presented for settlement) and court personnel employed in Judge Snyder's

24 (or such other Judge's) chambers or courtroom; (b) TLIC and its parents,

25 subsidiaries, successors, predecessors, and any entity in which TLIC has a

26 controlling interest; (c) any officer or director of TLIC reported in its most recent

27 Annual Statements; (d) Policyowners who properly executed and timely filed a

28 request for exclusion from the Class, as set forth in the attached Exhibit A; (e) those

1   Policyowners challenging the MDR Increases in any pending or resolved lawsuit

2   against TLIC other than the Action; and (f) the legal representatives, successors, or

3   assigns of any of the foregoing excluded Policyowners (but only then in their

4   capacity as legal representative, successor, or assignee). [Dkt. 143-1 ¶ 60.]

5       "Policy" or "Policies" means one or more insurance policies issued under the

6   plans set forth in the Settlement Agreement. [Dkt. 143-1 ¶ 48.] All Settlement Class

7   Members are subject to this Final Approval Order and the Final Judgment to be

8   entered by the Clerk of Court in accordance herewith. All Policyowners who fall

9   within the Settlement Class Definition are members of the Settlement Class, whether

10  their Policy is an In-Force Policy, Death Claim Policy,[2] or a Terminated Policy, as

11  those terms are defined in the Settlement.

12      5.    **Findings and Conclusions.** Based on its familiarity with the nature of

13  the case, the record, the procedural history, the Parties and the work of their counsel,

14  the Court finds that the Settlement was not the product of collusion and lacks any

15  indicia of unfairness. The Court finds the Settlement is fair, reasonable, and adequate

16  to the Settlement Class in light of the complexity, expense, and likely duration of the

17  Action (including appellate proceedings), and the risks involved in establishing

18  liability, damages, and in maintaining the Action on a class-wide basis through trial

19  and appeal. The Court finds that the Settlement represents a fair and complete

20  resolution of all claims asserted in a representative capacity on behalf of the

21  Settlement Class and will fully and finally resolve all such claims.

22      In support of the foregoing findings and conclusions, the Court further

23  specifically finds:

24      (a)    There is no evidence of collusion. The Settlement is the product

25  of extensive negotiations between the Parties with the assistance, and direct

26

27  [2] A "Death Claim Policy" means "a Policy for which TLIC has paid or is in the
28  course of processing a death claim as of the Policy Status Date." [Dkt. 143-1 ¶ 28.]

supervision, of an experienced and highly-regarded nationally-renowned mediator, the Honorable Dickran Tevrizian (Ret.), with JAMS in Los Angeles, who conducted a full-day, in-person mediation with all Parties as well as a follow-up mediation telephone conference with all Parties. Before agreeing to settle the Action, Plaintiffs, through Co-Lead Class Counsel and their experts, conducted extensive formal and informal discovery and a thorough investigation of the claims, defenses, and underlying events and transactions that are the subject of the Action. The discovery and investigation included, among other things: (i) evaluation of the evidence and applicable law, including the review and analysis of nearly 500,000 pages of documents, over 25,000 spreadsheets and nearly 500,000 data files containing nearly 328 gigabytes of data produced by TLIC; (ii) consultation with highly experienced actuarial and insurance experts and an economist retained by Co-Lead Class Counsel; (iii) taking and defending depositions of fact witnesses; and (iv) engaging in motion practice, including opposing TLIC's motion to dismiss and briefing Plaintiffs' motion for class certification.

In addition to taking the foregoing actions, the Parties also engaged in extensive activities necessary to adequately prepare for fully-informed settlement negotiations. Before meeting in person, the Parties participated in numerous pre-mediation meetings and calls and exchanged discovery and other data. In advance of the meditation, the Parties prepared and exchanged detailed mediation statements addressing liability, damages, and potential settlement structures. In furtherance of their pre-mediation preparation, Co-Lead Class Counsel acquired licenses to use two different proprietary modeling software programs used by TLIC in determining the MDR Increases that allowed their consulting actuary to examine and evaluate the challenged MDR Increases using alternative actuarial assumptions. Plaintiffs' economic expert also prepared a model to reliably compute the alleged overcharges

associated with the MDR Increases and the values and savings resulting from proposed settlement benefits.

The Parties then participated in a full-day mediation session before Mediator Tevrizian on December 10, 2019, but did not reach a final agreement at that time. Following the in-person mediation, the Parties continued to exchange information and participated in several conference calls, including a follow-up call with Mediator Tevrizian. Following these efforts, the Parties executed the formal Settlement Agreement on April 6, 2020.

Throughout the process, the settlement negotiations were conducted at arm's length by highly qualified and experienced counsel on both sides. Co-Lead Class Counsel have concluded that the proposed Settlement is fair and reasonable, and is a highly successful result for members of the proposed Settlement Class. Co-Lead Class Counsel were well-informed of material facts and the negotiations were hard-fought and non-collusive. Co-Lead Class Counsel analyzed all contested legal and factual issues to thoroughly evaluate TLIC's contentions and defenses, advocated in the settlement negotiation process for a fair and reasonable settlement that serves the best interests of the Settlement Class, and made fair and reasonable settlement demands of TLIC.

(b)     The Settlement provides for substantial cash payments and/or other monetary benefits to Settlement Class Members. Under the Settlement, TLIC agreed to a gross In-Force Policies Settlement Common Fund in the amount of $88 million based on full participation by the entire Settlement Class and a Terminated Policies Settlement Common Fund in the gross amount of just over $2 million (collectively the "Settlement Common Funds"). The Settlement Common Funds amount to the recovery of nearly 100% of the MDR Increases collected by TLIC as of December 31, 2019. The Settlement Common Funds, net of the amounts approved

by the Court's Fee and Expense Order and a reduction for opt-outs,[3] will be distributed to Settlement Class Members in a manner that generally corresponds to the injuries resulting from the alleged contractual breaches that are the focus of the Action; specifically, the net Settlement Common Funds will be allocated among the Settlement Policies based on the difference between (a) the Monthly Deductions withdrawn from the accumulation value of a Policy as of the Policy Status Date; and (b) the Monthly Deductions that would have been withdrawn from the accumulation value of that same Policy as of the Policy Status Date under such Policy's MDR schedules in effect immediately prior to each of the applicable MDR Increases; subject to a minimum allocation of $200. The funds will be distributed as follows and as set forth in further detail in the allocation calculations exchanged between counsel pursuant to Paragraph 72 of the Settlement Agreement:

- In-Force Policyowners will be paid their *pro rata* share of the In-Force Policies Settlement Common Fund by credit to accumulation value, regardless of whether the Policy's accumulation value is negative or positive (the "Accumulation Value Payment").

- For Death Claim Policyowners[4] and for any In-Force Policyowners for which TLIC cannot apply a credit to the accumulation value, their *pro rata* share of the In-Force Policies Settlement Common Fund will be made by check payment (the "Death Claim Payment").

---

[3] Under the Settlement Agreement, the In-Force Policies Settlement Common Fund will be proportionately reduced by the amounts that otherwise would have been distributed to those Policyowners requesting exclusion from the Settlement Class. Thus, the level of exclusion requests does not affect the estimated recovery of each Policyholder who remains in the Settlement Class. Ultimately, as noted below, the actual level of requested exclusions was very modest.

[4] "Death Claim Policyowner" under the Settlement is defined as "the owner of a Death Claim Policy." [Dkt. 143-1 ¶ 29.]

- Terminated Policyowners will be paid their *pro rata* share of the Terminated Policies Settlement Common Fund by check payment (the "Terminated Policy Payment").

The Court finds and concludes that the proposed allocation formula treats all Settlement Class Members in a comparable fashion and that Settlement Class Members with In-Force Policies will receive monetary benefits comparable to those received by Settlement Class Members with Terminated Policies. The net Settlement Common Funds will be distributed automatically to the Settlement Class; Settlement Class Members are not required to fill out a claim form to receive these benefits. There will be no reversion of the net Settlement Common Funds to TLIC.

(c)    In addition to the Settlement Common Funds, the Settlement includes several other monetary benefits to the Class:

- TLIC alone will pay and otherwise bear all administrative expenses incurred after the execution of the Settlement Agreement (including publication, printing, and mailing costs of the Class Notice and administration costs of the Settlement Relief), which will not be paid or otherwise reimbursed by Plaintiffs, Plaintiffs' Counsel, Co-Lead Class Counsel or the Settlement Class should the Settlement be terminated or disapproved for any reason, or should the Final Settlement Date otherwise not be attained for any reason (the "Notice and Administrative Costs Benefit").

- In addition to the Settlement Common Fund, TLIC agrees to pay to Plaintiffs' Counsel the first $8 million of the attorneys' fees and expenses awarded and approved by the Court (the "TLIC Fee and Expense Contribution").

(d)    In addition to the foregoing monetary Settlement benefits, the Settlement also includes valuable prospective relief that directly benefits Settlement

Class Members now and into the future, which is set forth in Paragraph 72(e), and (f) of the Settlement Agreement and is expressly incorporated herein in all respects:

- TLIC agrees that it will not impose any additional MDR increase(s) on any Class Policy within seven (7) years of the Execution Date, unless ordered to do so by a state regulatory body (the "MDR Increase Protection Benefit"). Notwithstanding the foregoing, TLIC will maintain the MDR schedules implemented through the MDR Increases.[5]

- TLIC agrees it will not seek to void, rescind, cancel, have declared void, or otherwise deny coverage or death claims submitted by Settlement Class Members based on any alleged lack of insurable interest or misrepresentations made in connection with the original application process (the "Non-Contestability Benefit").

(e)     The Court has considered the realistic range of outcomes in this matter, including the amount Plaintiffs might receive if they prevailed at trial, the strength and weaknesses of the case, the novelty and number of the complex legal issues involved, the risk that Plaintiffs would receive less than the relief afforded by the Settlement Agreement or recover nothing at trial, and the risk of a reversal of any judgment based on a review of the Court's file. The Settlement value is well within a range of reasonableness when considering the value of only the monetary relief recovered on behalf of the Settlement Class, and is even more so considering the other valuable non-monetary benefits afforded to the Settlement Class.

(f)     Before reaching the Settlement, Plaintiffs and TLIC fully and vigorously litigated their claims and defenses before this Court, including: (i) TLIC's motion to dismiss; and (ii) Plaintiffs' motion for class certification.

---

[5] These MDR increases were applied to the age-based changes to MDRs included within the Policies' pre-existing MDR schedules.

(g)     The Settlement Class is and was at all times adequately represented by the Class Representatives and Co-Lead Class Counsel, including in litigating the Action and in entering into and implementing the Settlement, and have satisfied the requirements of *Federal Rules of Civil Procedure,* Rule 23, and applicable law. Co-Lead Class Counsel have demonstrated that they have fully and competently prosecuted all causes of action, claims, theories of liability, and remedies reasonably available to the Settlement Class Members. Co-Lead Class Counsel are highly experienced class action lawyers with specialized knowledge in insurance litigation, and complex class action litigation generally, fully capable of properly assessing the risks, expenses, and duration of continued litigation, including at trial and on appeal. Co-Lead Class Counsel submit that the Settlement is fair, reasonable and adequate for the Settlement Class Members.

(h)     TLIC denies all allegations of wrongdoing and disclaims any liability with respect to any and all claims alleged by Plaintiffs and the Settlement Class, including their claims regarding the propriety of class certification. But TLIC agrees that the proposed Settlement will provide substantial benefits to Settlement Class Members, and considers it desirable to resolve the Action to finally put to rest Plaintiffs' and the Settlement Class's claims and to avoid, among other things, the risks of continued litigation, the expenditure of time and resources necessary to proceed through trial and any subsequent appeals, and the interference with ongoing business operations.

(i)     The selection and retention of the Settlement Administrator was reasonable and appropriate. TLIC provided the Settlement Administrator with a gross estimate of the proposed Settlement Relief due for each Class Policy to be provided upon request by Settlement Class Members. [Dkt. 181 ¶ 9; Dkt. 179 ¶10.] Although not required by the Settlement, TLIC also prepared illustration software and provided the Settlement Administrator with instructions on how Settlement

Class Members could request an illustration of the estimated Settlement Relief from TLIC. [Dkt. 181 ¶ 10; Dkt. 179 ¶10.]

(j)      As further addressed in this Court's Preliminary Approval Order and below, through the mailing of the Class Notice in the form and manner ordered by this Court the Settlement Class has received the best practicable notice of the pendency of this class action, of the Settlement, the Fairness Hearing, and of Settlement Class Members' rights and options, including their rights to opt out, to object to the Settlement, and/or to appear at the Fairness Hearing in support of a properly submitted objection, and of the binding effect of the orders and Judgment in these Action, whether favorable or unfavorable, on all Settlement Class Members. The Settlement Administrator sent the Class Notice to the Settlement Class Members by first-class mail on June 18, 2020, as directed by the Court's Preliminary Approval Order. [Dkt. 151 ¶ 7; Dkt. 153 ¶¶ 1-6.] The Settlement Class Members were given until August 3, 2020, to object to any aspect of the proposed Settlement by filing a written statement of objection with the Court. [Dkt. 151 ¶¶ 11, 12.] The Class Notice fully satisfied all notice requirements under the law, including the Federal Rules of Civil Procedure, and all due process rights under the U.S. Constitution and California Constitution.

(k)      In response to the Class Notice, only two objections opposing approval of the proposed Settlement were filed by Class Members (approximately 0.02% of the Settlement Class). Two objections were also filed by persons or entities that this Court has determined for the reasons set forth below were not Class Members under the terms of the Settlement Agreement, and therefore do not have standing to object. This overwhelmingly positive embrace of the Settlement by Class Members strongly supports approval. *See, e.g., Feist v. Petco Animal Supplies, Inc.*, No. 3:16-cv-01369-H-MSB, 2018 WL 6040801, at *5 (S.D. Cal. Nov. 16, 2018) ("[T]he absence of a large number of objections to a proposed class action settlement

1  raises a strong presumption that the terms of a proposed class settlement action are

2  favorable to the class members.") (quoting *Nat'l Rural Telecomms. Coop. v.*

3  *DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004)); *compare, e.g., Churchill*

4  *Vill.,* 361 F.3d at 577 (same; 45 objections out of approximately 90,000 class

5  members); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal.

6  2008) (same; three objections out of approximately 57,000 class members).

7      6.    **Requests for Exclusion.** A list of those Policyowners who have timely

8  and validly requested exclusion from the Settlement Class are set out by Policy

9  Number in the attached Exhibit A. The Policyowners owning Policies listed on

10 Exhibit A are excluded from the Settlement Class and such persons are therefore not

11 Settlement Class Members, shall not be bound by the Settlement or Final Approval

12 Order and Judgment in the Action, and shall not receive any Settlement Relief. All

13 other Policyowners to whom the Class Notice was mailed are included in the

14 Settlement Class and shall be bound by all proceedings, orders, and judgments in

15 these Action. As a result of the exclusion of Settlement Relief that would have been

16 distributed to those Policyowners requesting exclusion, the net In-Force Settlement

17 Common Fund is reduced from $88 million to $82,367,753.32, prior to any

18 additional reduction resulting from the award of attorneys' fees, litigation costs and

19 service awards. Again, the relatively small number of exclusion requests reinforces

20 this Court's conclusion on behalf of the Settlement Class that the Settlement

21 Agreement is fair, reasonable and adequate.

22     7.    **Notices Pursuant to 28 U.S.C. § 1715.** Based on the requirements of

23 the Settlement Agreement and the declarations submitted in support of final

24 settlement approval, the Court finds that all notices and requirements of the Class

25 Action Fairness Act of 2005, 28 U.S.C. § 1715, have been satisfied. More than ninety

26 (90) days have passed since the service of the foregoing notices. No written objection

27 or response to the Settlement was filed by any federal or state official, including any

28

recipient of the foregoing notices. No federal or state official, including any recipient of the foregoing notices, appeared or requested to appear at the Fairness Hearing.

8.    **Objections to the Proposed Settlement.** As set forth in detail *supra,* full and fair notice of Settlement Class Members' right to object to the Settlement and to appear at the Fairness Hearing in support of such an objection has been provided in the form and manner required by the Settlement Agreement, the Court's Preliminary Approval Order, the requirements of due process, and any other applicable law.

The following objections were timely filed in accordance with the Court's Preliminary Approval Order:

- Dkt. 164: Angela Terry as Trustee for Frank 2000 Irrevocable Trust dated Januay 1, 2000 [sic] ("Ms. Terry"), TLIC Policy No. xxxx0573, and Peck LLC Et Al Policy Holdings, LLC, ("Peck LLC"), TLIC Policy No. xxxx9627 filed by attorney Stephen J. Fearon, Jr. (collectively, the "Fearon Objection");
- Dkt. 166: Stuart Brafman as Trustee for the Sher Family Trust, filed *pro per*, TLIC Policy No. xxxx1266 (the "Sher Objection");
- Dkt. 170: John and Philomena Vitale, filed *pro per*, TLIC Policy No. xxxx2914 ("Vitale Objection").

On August 26, 2020, after the August 3, 2020 deadline to file objections, Fearon on behalf of Ms. Terry and Peck LLC filed a supplemental filing [Dkt. 188] purporting to clarify certain factual assertions in their original objection. In the supplemental filing, Fearon asserted that Ms. Terry was objecting in her capacity as Trustee of the Frank 2000 Irrevocable Trust with respect to TLIC Policy Number xxxx7155 instead of Policy Number xxxx0573, which was listed in her objection. [Dkt. 188 at 6.] According to TLIC's records, however, Ms. Terry was removed as the authorized trustee with respect to TLIC Policy Number xxxx0573 in 2002. [Dkt. 181 ¶ 17.]

(a)     **The Fearon Objection.** The Court hereby strikes the Fearon Objection for several independent reasons.

(i)     <u>Neither Fearon nor Sweeney are Admitted to Practice Law before this Court</u>

Fearon and his associate Paul Sweeney practice with the firm Squitieri & Fearon, LLP located in New York City, New York. Fearon filed the Fearon Objection on August 3, 2020, using the ECF filing system for the Central District of California and using log-in credentials received in connection with his admission *pro hac vice* in the closed case, *Feller v. Transamerica Life Insurance Co*., Case No. 16-cv-1378-CAS. At the time of the filing of the Fearon Objection, neither Fearon nor Sweeney had been admitted *pro hac vice* in this Action.

Fearon was aware of the requirement that out-of-state attorneys must be admitted *pro hac vice* in order to appear before the Court in this Action since he satisfied those requirements and was admitted *pro hac vice* in the *Feller* litigation. He also admitted as much during the Fairness Hearing. Instead of securing local counsel and moving for admission *pro hac vice*, on August 14, 2020, Fearon and Sweeney filed the Central District of California's form Notice of Appearance or Withdrawal of Counsel [Dkt. 168, 169], and refiled these Notices of Appearance again on August 17, 2020 [Dkt. 173, 174] in response to a deficiency notice by the Clerk of this Court. This form contains a field for an attorney's "CA Bar Number" and specifically instructs attorneys admitted *pro hac vice* to put "PHV" in this field. This field was conspicuously left blank on the notices of appearance filed by Fearon. At the Fairness Hearing, Fearon professed that he first became personally aware of his failure to obtain *pro hac vice* admission on Friday, August 28, 2020, when the issue was raised in Plaintiffs' Response to Supplemental Submission [Dkt. 190], and determined that the failure to move for *pro hac vice* had been an oversight by his office.

The Local Rules require out-of-state attorneys to complete an Applications of Non-Resident Attorney to Appear in a Specific Case and to designate as Local Counsel "a member of the Bar of this Court" who "maintains an office within the District." L.R. 83-2.1.3.3-4. Fearon was aware of these requirements from his participation in the *Feller* litigation. Furthermore, Fearon should have been aware of his failure to be admitted *pro hac vice* when he filed multiple notices of appearance forms requiring that he indicate his *pro hac vice* admission status. Because neither Fearon nor Sweeney are admitted to practice before this Court, the Court finds that Objections to the Settlement and Class Fee and Expense Application, Memorandum of Law in Support of Objections, and Notice of Intention to Appear [Dkt. 164] and the Supplemental Memorandum of Law in Support of Objections [Dkt. 188] filed by Fearon on behalf of Ms. Terry and Peck LLC do not conform with the rules of court. For this reason, but more importantly for the reasons set forth below, the objection should be stricken. *See Villanueva v. Limousine*, No. 2:12-CV-01473-RCJ, 2013 WL 1007720, at \*3 (D. Nev. Mar. 11, 2013) (striking all filings by attorneys not admitted to practice before the district court).

(ii)    Ms. Terry is Not a Member of the Settlement Class

Ms. Terry is purportedly the authorized Trustee for the Frank 2000 Irrevocable Trust dated January 28, 2000 ("Frank 2000 Trust") as owner of TLIC Policy Number xxxx7155, which was issued on September 8, 2000. [Dkt. 181 ¶¶12-13 & Exh. A.] Ms. Terry surrendered TLIC Policy Number xxxx7155, effective May 21, 2019. [*Id.* ¶¶15-16 & Exh. C.]

The Settlement Class as defined in the Preliminary Approval Order is "All persons or entities who owned a Policy as of the Policy Status Date." [Dkt. 151 ¶ 2.] Specifically excluded from the Settlement Class as defined are "those Policyowners challenging the MDR Increases in any pending or resolved lawsuit against TLIC other than the Action." [*Id.*]

Persons and entities who are not members of the Settlement Class, including by express exclusion under the class definition, have no standing to object to a proposed class settlement. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-CV-05944-JST, 2020 WL 1873554, at *4 (N.D. Cal. Mar. 11, 2020); *see also, Kent v. Hewlett-Packard Co.*, No. 5:09-cv-05341-JF (HRL), 2011 WL 4403717, at *3 (N.D. Cal. Sept. 20, 2011); *Tarlecki v. Bebe Stores, Inc.*, 2009 U.S. Dist. LEXIS 102531, 2009 WL 3720872 (N.D. Cal. Nov. 3, 2009); *Glass v. UBS Fin. Servs., Inc.*, 2007 U.S. Dist. LEXIS 8476, 2007 WL 221862, at *8 (N.D. Cal. Jan. 26, 2007).

On October 23, 2019, Fearon filed an individual lawsuit on behalf of Ms. Terry against TLIC in the Northern District of Iowa challenging the same MDR Increases at issue in this Action. *See Terry v. TLIC Life Ins. Co*., Case No. 19-cv-00118 (N.D. Iowa) (the "*Terry* Action"). The *Terry* Action was filed approximately one month after Plaintiffs moved for certification of a class of in-force and terminated policyowners in this Action. [Dkt. 107.] The *Terry* Action remained pending as of the Fairness Hearing.

Litigants with pending individual actions are appropriately excluded from both litigation and settlement classes. *See Califano v. Yamasaki*, 442 U.S. 682, 689 (1979) (upholding district court's decision to exclude from the relevant class definition those individuals who had already brought suit against the defendant in a different judicial district); *see, e.g.*, *CRT*, 2020 WL 1873554, at *4 (settlement class defined to exclude group of claimants who objected to earlier settlement); *Taylor v. Meadowbrook Meat Co.*, No. 3:15-cv-00132-LB, 2016 WL 4916955, at *1 (N.D. Cal. Sept. 15, 2016) (granting final approval and certifying class that "excludes any person who, as of the date of the court's preliminary approval of the settlement, has a pending separate lawsuit as a named plaintiff, either individually or as part of a putative class or representative action"); *Carrizosa v. Stassinos*, 669 F. Supp. 2d 1081, 1084 (N.D. Cal. 2009) (certifying class that excluded "anyone who has

litigation currently pending against any of the defendants, alleging the same claims that are being alleged in this action"); *Santillan v. Ashcroft*, No. C 04-2686 MHP, 2004 WL 2297990, at *8 (N.D. Cal. Oct. 12, 2004) (explaining that modification of scope of the class to exclude pending lawsuits "obviated concerns about impinging on other courts" and certifying class); *see also, e.g., Healthy Future of Texas v. Dep't of Health & Human Servs.*, 326 F.R.D. 1, 10 (D.D.C. 2018) (rejecting argument that a class definition "that excludes plaintiffs involved in ongoing or resolved litigation outside of the class action's judicial district defeats an otherwise viable nationwide class," based on *Califano*) (emphasis supplied by court); *In re Shopping Carts Antitrust Litig.*, MDL No. 451-CLB, 1983 WL 1950, at *2 (S.D.N.Y. Nov. 18, 1983) (certifying class that excluded "those persons, firms or corporations which have elected to file individual actions against the defendants").

At the Fairness Hearing, Fearon argued that it is unclear as to whether membership in the Settlement Class was determined when the Parties entered into the Settlement, when the Court certified the class at preliminary approval, or after the Court has finally approved the Settlement. Although the Court believes membership in the Settlement Class as of its Preliminary Approval Order is the controlling date, the argument is moot because the *Terry* Action was pending as of *all* of those dates. Accordingly, while the Court does not find any uncertainty in the definition of the Settlement Class, it is nevertheless clear that Ms. Terry is excluded from the Settlement Class by reason of her pending litigation against TLIC in the Northern District of Iowa challenging the same MDR Increases as at issue in this Action.

In their briefing, Fearon and Sweeney cited the Court to *Stetson v. Grissom*, 821 F.3d 1157 (9th Cir. 2016) as authority that Ms. Terry has standing to object to the Settlement despite being excluded from the Settlement Class and thereby wholly unaffected by the Settlement. [Dkt. 188 at 6.] But in *Stetson*, the question before the

Ninth Circuit was not whether a non-member of a settlement class had standing to object to a settlement, but rather whether a member of the settlement class had standing to appeal the denial of an award of fees to its own counsel of record. *See* 821 F.3d at 1164-65. Nothing in *Stetson* suggests that a person actively pursuing individual litigation against the settling defendant in another jurisdiction cannot and should not be excluded from the definition of a proposed settlement class, particularly with the objective of denying the benefits of the settlement to those not suing the defendant individually.

For each and all the foregoing reasons, the Court finds that Ms. Terry lacks standing to object to the Settlement and her objection is hereby stricken.

### (iii)   Peck LLC is Not a Member of the Settlement Class

Peck LLC through its "Managing Member" Levi Katz objected to the Settlement as the purported owner of TLIC Policy Number xxxx9627. [Dkt. 164 at 7.] The burden is on the objector to establish standing to object to the Settlement. *In re Tracfone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3 993, 1008 (N.D. Cal. 2015). Peck LLC has failed to meet this burden.

The Peck Policy was originally owned by Globalstar 11 Holding LLC ("Globalstar") until its transfer of ownership to Peck LLC on February 25, 2020. [Dkt. 189 ¶¶ 2-6.] Under TLIC's policies and procedures, a transfer of ownership is not effective until all required forms have been submitted in good order, accepted and recorded by TLIC. [*Id.*] On December 30, 2019, TLIC received a "Transfer of Ownership Request Form" purporting to request the transfer of ownership of Policy Number xxx9627 from Globalstar to Peck LLC. [Dkt. 189 ¶ 2.] On January 7, 2020, TLIC informed Globalstar that, in order to process the request for transfer of ownership of the Policy, TLIC must receive a completed "Entity Form" for both Globalstar and Peck LLC. [*Id.* ¶ 3.] On February 5, 2020, Globalstar resubmitted the requested documentation. [*Id.* ¶ 4.] On February 25, 2020, these forms were recorded

by TLIC and the transfer of ownership was effective. [*Id.* ¶ 6.] Up until February 25, 2020, TLIC continued to send all Policy communications to Globalstar. [*Id.* ¶ 5.]

Peck LLC has submitted no evidence to contradict this chronology, which confirms that it had no interest in the Policy on or before December 31, 2019. To the contrary, Peck LLC in the Fearon Objection admits that it **was not** the Policyowner until 2020, after all the required forms had been submitted, accepted and recorded by TLIC, stating: "***In 2020***, Globalstar 11 Holdings LLC—Peck Et Al's predecessor—assigned to Peck Et Al ownership of a TransSurvivor 115 Policy with a face amount of $5,000,000 (Policy No. xxxx9627)." [Dkt. 164 at 13 (emphasis added).] Thus, the record is clear that as of December 31, 2019, Globalstar—not Peck LLC—was the owner of Policy Number xxxx9627.

At the Fairness Hearing, Fearon attempted to deny any corporate distinction between Globalstar and Peck LLC, by suggesting that they were both controlled by Mr. Katz. The Court rejects this invitation to disregard the distinct corporate identities, which runs counter to the entire notion of an assignment from one to the other. Moreover, to the extent Fearon suggests that the corporate entities are indistinguishable from Mr. Katz, it is clear that "Peck Et Al—by Mr. Katz—objects to the Settlement." [Dkt. 164 at 4.] Nor has Fearon presented any evidence in support of piercing the corporate veil, which as noted by Plaintiffs only raises considerable additional standing questions given Mr. Katz's filing of five bankruptcy proceedings in the last three years. *Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 252 n.10 (C.D. Cal. 2006) (generally speaking, "a Chapter 7 debtor does not have standing to bring suit.").

In addition to the foregoing, Peck LLC failed to submit any documentation establishing that Globalstar had in fact assigned to Peck LLC any **claims** arising from the challenged MDR Increases, as opposed to the benefits under the Policy itself. The only assignment submitted on behalf of Peck LLC was TLIC's standard

1    Transfer of Ownership Request Form.

2        Finally, the Court also notes that Fearon declined Plaintiffs' request to depose

3    Mr. Katz regarding ownership of Policy Number xxxx9627, the status of the

4    assignment of any claims relating to this proceeding from Globalstar to Peck LLC,

5    and the impact, if any, of Mr. Katz's bankruptcies on any claims in this Action

6    relating to that Policy. [Dkt. 177 ¶ 6.] Bereft as it is of evidentiary support, Fearon's

7    proof of standing is insufficient for either Peck LLC or Mr. Katz, especially given

8    Fearon's unwillingness to allow Plaintiffs to depose Mr. Katz.

9        Accordingly, for these reasons, the Court finds Peck LLC has not met its

10   burden to establish standing to object to the Settlement, and the Peck LLC objection

11   is therefore hereby stricken.

12                    (iv)    Fearon's Substantive Objections are Overruled

13       Even if Ms. Terry and Peck LLC had standing to object to the Settlement, the

14   Court has independently considered and hereby rejects the entirety of the Fearon

15   Objections as meritless.

16                    (1)    *There is No Intra-Class Conflict*

17       Fearon objects to the Settlement on the ground that there is a conflict between

18   Terminated and In-Force Policyowners. The Court disagrees. Throughout this

19   litigation, Terminated and In-force Policyowners have been treated as a single,

20   cohesive group. The FAC in this Action alleges the same underlying facts, asserts

21   the same claims, and seeks the same damages—that is, the amount of the alleged

22   overcharges resulting from the MDR Increases—on behalf of Terminated and In-

23   Force Policyowners. In addition, Plaintiffs' motion for class certification sought

24   certification of a single class consisting of both In-Force and Terminated

25

26

27

28

1 Policyowners.[6]

2   Fearon further contends that the Settlement Relief provided to Terminated

3 Policyowners "pales in comparison" to the Settlement Relief Provided to In-Force

4 Policyowners. This is incorrect. The measure of damages and benefits provided

5 under the Settlement are the same for Terminated and In-force Policyowners Both

6 In-Force and Terminated Policyowners are receiving their *pro-rata* share of the In-

7 Force Policies Settlement Common Fund and Terminated Policies Settlement

8 Common Fund, respectively, which prior to any reduction for attorneys' fees and

9 expenses, amounts to a recovery of nearly 100% of the alleged overcharges collected

10 from In-Force and Terminated Policyowners. Accordingly, the plan of allocation

11 under the Settlement conforms precisely to the measure of damages in this breach of

12 contract case.

13   *Pro rata* settlement allocation, with no class member being favored over

14 others, such as proposed here, has repeatedly been deemed fair, adequate, and

15 reasonable. *See, e.g., Jabbari v. Farmer*, 813 F. App'x 259, 2020 WL 4048683, at

16 *1 (9th Cir. July 20, 2020) ("The structure of the settlement, under which class

17 members are reimbursed for their out-of-pocket costs and any remaining funds are

18 distributed pro rata, ensured that any potential intraclass competition was avoided.");

19 *see also, e.g., In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No.

20 M-02-1486 PJH, Dkt. No. 2093, p.2 (Oct. 27, 2010) (Order Approving Pro Rata

21 Distribution); *In re Vitamins Antitrust Litig.*, No. 99-197 TFH, 2000 WL 1737867,

22 at *6 (D.D.C. Mar. 31, 2000) ("Settlement distributions, such as this one, that

23

24 [6] Fearon's allegations of intra-class conflict are undermined by his own actions in

25 *Shupe v. Transamerica Life Insurance Co.*, Case No. 1:19-cv-00045 (N.D. Iowa) wherein, challenging the same MDR Increases at issue here, he moved for

26 certification of a single class of both In-Force and Terminated Policyowners, and in

27 doing so avowed to the Iowa Court that he could adequately represent the entire proposed class.

28

apportions funds according to the relative amount of damages suffered by class members have repeatedly been deemed fair and reasonable."); *In re Lloyds' Am. Trust Fund Litig.*, No. 96 Civ.1262 RWS, 2002 WL 31663577, at *19 (S.D.N.Y. Nov. 26, 2002) ("[P]ro rata allocations provided in the Stipulation are not only reasonable and rational, but appear to be the fairest method of allocating the settlement benefits."); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 135 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997) ("[P]ro rata distribution of the Settlement on the basis of Recognized Loss will provide a straightforward and equitable nexus for allocation and will avoid a costly, speculative and bootless comparison of the merits of the Class Members' claims.").

Fearon also claims that the Settlement pits No-Lapse Policyowners[7] against Terminated Policyowners and In-Force Policyowners without the no-lapse protection. The Court again finds no conflict. The Settlement treats all Class Members the same and draws no distinction for the No-Lapse Policyowners, for they too are entitled to their *pro rata* credit to the same extent their accumulation value was reduced by the challenged MDR Increases.

(2)    *The Settlement is Not Unreasonable for Lack of a Reinstatement Benefit*

Fearon argues that the Settlement is "unfair and inadequate" because it does not afford a "reinstatement option" for Terminated Policyowners. [Dkt. 164 at 28-29.] Fearon's objection is without any factual or legal basis.

First, contrary to Fearon's position, Settlement Class Members already possess a right to reinstatement under the terms of their Policies if certain conditions

---

[7] "No-Lapse Policyowners" means those In-Force Policyowners who have funded their Policies at sufficient levels to trigger the no-lapse protections made available in the Policies through the Endorsement to Modify the Grace Period—referred to internally at TLIC as the Assured Coverage Endorsement or "ACE."

are met, including that the policy was not voluntarily surrendered, all past due charges under the Policy are brought current, and the Policyowner is insurable.

Second, this is a breach of contract case and as such, any relief awarded must be consistent with the terms of the contract. Fearon's claim for an unfettered right to reinstatement is inconsistent with the terms of the Policies as described above.

Third, this Court voiced its skepticism in the *Feller* litigation regarding the appropriateness of the type of mandatory injunctive relief that would be necessary to enforce a class-wide reinstatement remedy. The Court reiterates that skepticism here.

Fourth, the record is clear that TLIC would not agree to any settlement containing a reinstatement benefit.

Finally, Fearon's preference for a reinstatement benefit is irrelevant to whether the settlement is fair, reasonable and adequate. Under *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), the fact that an objector would prefer different, better or additional benefits is not a basis to disapprove a proposed settlement. 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").

                    (3)    *The Settlement Agreement Does Not "Permanently Sanction" Improper and Illegal MDR Increases*

Fearon argues that the entire Settlement is unreasonable and inadequate because it does not invalidate and undo the challenged MDR Increases. [Dkt. 164 at 29-31.] Arguments that the Settlement could have been better or offered different relief is not a basis for finding that the Settlement as written is unfair, unreasonable or inadequate. *Hanlon*, 150 F.3d at 1027. Moreover, TLIC has the contractual right to impose MDR increases, subject to only the guaranteed limits and the certain other contractual constraints; thus, even if the MDR Increases were eliminated completely,

TLIC could simply impose a new increase by pulling other actuarial levers or devising a new methodology.

This Court in *Feller* overruled the same objection seeking disapproval of the Settlement because Plaintiff did not secure the complete elimination of the MDR Increases, holding:

> Here, the Plaintiffs raised questions about the contractual constraints imposed by the contractual provision stating that TLIC does not recover past losses by changing the monthly deduction rates upon TLIC's discretion to increase MDRs subject only to the Policy contracts' guaranteed maximum rates—implicating a classic "battle of the experts." A compromise requiring TLIC to refund almost 65% of the MDR Increases assessed during the Class Period, and establishing durational and substantive limits on any future MDR increase, is not an unreasonable compromise of the dispute.

*Feller*, 2019 WL 6605886, at *10 (C.D. Cal. Feb. 5, 2019). Here, the Settlement improves on that afforded in *Feller*, reimbursing essentially 100% of the MDR Increases collected from the Settlement Class Members by TLIC.

In arguing that the Settlement's failure to undo the challenged MDR Increases prevents this Court from granting final approval, Fearon dismisses the seven-year moratorium on future MDR increases, characterizing it as "illusory" because the MDR Increases will "almost certainly" cause any In-Force Policyowner not benefitting from the no-lapse protection to "forfeit" their Policies, mooting any need for any further MDR increase. [Dkt. 164 at 31.] Fearon offers no evidentiary or expert support for this assertion. Furthermore, Fearon's dismissal of the benefit afforded by the seven-year moratorium also ignores that TLIC actually capped the challenged MDR Increases at a level lower than the increases called for by the methodology employed by the company, leaving open the distinct possibility for additional increases in future years. The Settlement prohibits TLIC from imposing any such additional increases for the next seven years. The Court finds that the seven-year moratorium on future MDR Increases confers a valuable benefit to the Settlement Class Members.

In sum, Fearon's objection that TLIC did not agree to completely eliminate the MDR Increases demonstrates "a failure to appreciate the fact that settlements are by necessity compromises." *Roberts v. Electrolux Home Prods., Inc.*, Nos. SACV12-1644 and CV13-2339-CAS(VBKx), 2014 WL 4568632, at *11(C.D. Cal. Sept. 11, 2014); *Benedict v. Diamond Resorts Corp.*, No. CV 12-00183 DAE BMK, 2013 WL 12149277, at *2 (D. Haw. June 6, 2013) (overruling objection that settlement "does not go far enough" because defendants "should be responsible for 100% of the water intrusion repair costs").

(4)    *The Settlement Relief Does Not Revert to TLIC*

Fearon objects to the Parties' plan to distribute the In-Force Policies Settlement Common Fund by immediate credit to the accumulation values of In-Force Policies, rather than sending a check (as will be done for the Terminated Policies). [Dkt. 164 at 31-34.] In so doing, Fearon claims that this renders the Settlement "akin to a coupon settlement." *Id.* at 33. The Court rejects Fearon's characterization of the Settlement. This Court approved the same plan for distribution of the Settlement Relief in *Feller* and likewise approves the distribution plan here. *See Feller*, 2019 WL 6605886, at *5.

(5)    *There is No Jurisdictional Impediment to Settlement Approval*

Fearon argues that the risks to continued class certification somehow "disarmed" Co-Lead Class Counsel from negotiating a fair, reasonable, and adequate settlement on behalf of a nationwide class. [Dkt. 164 at 26-28.] However, the record establishes that Co-Lead Class Counsel conducted an extensive investigation into the legal and factual basis for their claims prior to entering into the arm's length negotiations with TLIC, which resulted in the proposed Settlement. Fearon's accusations regarding the alleged ulterior motives of Co-Lead Class Counsel in deciding to enter into settlement negotiations with TLIC are pure speculation and

contrary to facts before the Court. Co-Lead Class Counsel have zealously represented their clients and the Settlement Class throughout this litigation and conducted themselves in an ethical and competent manner.

Moreover, Fearon's argument that the Supreme Court's opinion in *Bristol-Myers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773 (2017), doomed class certification in this case is wrong. Although Co-Lead Class Counsel properly acknowledged some risk that *Bristol-Myers* extended to the class action context, the record establishes that any such risk was remote since (a) the Ninth Circuit is unlikely to rule contrary to the conclusion drawn by most federal district courts in California, and (b) this Court had already rejected TLIC's jurisdictional contention **in this Action**. *Thompson v. TLIC Life Ins. Co.*, No. 2:18-cv-05422-CAS-GJSx, 2018 WL 6790561, at *6 (C.D. Cal. Dec. 26, 2018) (declining to extend *Bristol-Myers* to the class action context in light of these "persuasive" authorities). In addition, Fearon also ignores that specific jurisdiction over TLIC in California exists because the Policies were designed in and issued from California, and that the MDR Increases were modeled by actuaries residing in California. *See, e.g., Feller v. Transamerica Life Ins. Co.*, No. 2:16-cv-1378-CAS(AJWx), 2017 WL 6453262, at *5 (C.D. Cal. Dec. 11, 2017) (finding specific jurisdiction over TLIC in challenge to earlier MDR increases imposed on policies designed in and issued from California).

Finally, under the terms of the Settlement, TLIC has expressly consented to the jurisdiction of this Court. The Supreme Court's personal jurisdiction analysis in *Bristol-Myers* does not suggest that this Court lacks jurisdiction to approve a nationwide class settlement, where the settling defendant has voluntarily submitted to personal jurisdiction before the Court for purpose of approval and implementation of the settlement. *Compare* Dkt. 164 at 27-28 *with Bristol-Myers*, 137 S. Ct. at 1783 ("Our straightforward application in this case of settled principles of personal jurisdiction will not result in the parade of horribles that respondents

conjure up.").

(6)   *The Court Has Ample Information to Understand the Value and Allocation of Settlement Benefits*

Fearon argues that the Court has not been provided with sufficient information to understand "the actual recovery for each portion of [the] Settlement Class compared to their potential damages…." [Dkt. 164 at 17-19.] To make this argument, Fearon disregards the overcharge damages actually sought by Plaintiffs, and instead erroneously equates recoverable damages (for both In-Force or Terminated Policyowners) to the face amount of the implicated Policies. *Id.* at 18-19. In doing so, Fearon ignores reality and assumes (1) that none of the Policies would have lapsed or been surrendered, but rather all Policies would have remained in place until the insureds died; (2) that the Policyowners would pay no future MDR charges to maintain the insurance coverage in place all those years; and (3) that damages would somehow equal the total payout of every dollar of death benefit with no discount to present value. The Court finds that the information sought by Fearon is irrelevant and unnecessary to the Court's determination of the fairness, reasonableness, and adequacy of the Settlement. The Court has determined that the Settlement is fair, reasonable and adequate and has more than sufficient information before it to make that determination.

(7)   *The Class Notice Was More than Adequate*

Fearon objects to the Class Notice claiming it was inadequate for "fail[ing] to provide an opportunity for Settlement Class Members to determine the amount of their *pro rata* portion of the Settlement Relief." [Dkt. 164 at 19-20.] Fearon's objection is contrary to Ninth Circuit precedent. Under the Ninth Circuit's opinion in *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), class notice is sufficient where it "contains adequate information, presented in a neutral manner, to

1  apprise class members of the essential terms and conditions of the settlement" and

2  "describes the aggregate amount of the settlement fund and the plan for allocation."

3  563 F.3d at 962; *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1372 (9th

4  Cir. 1993) (concluding class notice satisfied due process where it "clearly stated the

5  aggregate amount of the settlement and the formula for computing awards"). Here,

6  the Class Notice provided a detailed breakdown of all the benefits provided by the

7  Settlement (including the amount of money to be distributed to the Class and the

8  prospective relief agreed to by TLIC) and even an explanation of how settlement

9  payments will be calculated. [Dkt. 153-1 at 7-8.] The Court finds that the Class

10  Notice provided adequate information to the Settlement Class Members.

11     (b) **Sher Objection.** The Sher Family Trust ("Sher") was a

12  Policyowner as of the Policy Status Date and Stuart Brafman as Trustee for the Sher

13  Family Trust has standing to object to the Settlement. Sher is a No-Lapse

14  Policyowner who can continue its Policy in force irrespective of the challenged

15  MDR Increases so long as it maintains the required Select Premium payments at the

16  same level as before the implementation of those MDR Increases. Sher nevertheless

17  objects to the Settlement, asserting that: (1) the relief provided under the Settlement

18  is *de minimus*; (2) TLIC will recoup the Settlement Relief through its collection of

19  customary charges under the Policies; (3) the MDR Increase Protection Benefit has

20  no value; and (4) the Class Notice was inadequate. [Dkt. 166 at 4-9.] For the reasons

21  explained below, the Court overrules the Sher Objection.

22     The Court notes at the outset that the Sher Objection is largely animated by

23  assertions of individual mistreatment by TLIC, which, while disputed by TLIC, are

24  accepted as true for present purposes. Indeed, assuming the truth of the assertions

25  made by Sher concerning TLIC's failure to provide timely, accurate or responsive

26  information in response to the multiple inquiries made on Sher's behalf, the Court

27  understands and appreciates Sher's legitimate dissatisfaction. However, any such

28

1    actions by TLIC do not give rise to the substantive claims asserted on behalf of the

2    Class in this class action. In reviewing the adequacy of the proposed Class

3    Settlement, the Court must focus on the claims alleged on behalf of the Class. The

4    Sher Objection is therefore overruled to the extent premised on Sher's unhappy

5    individual experiences with TLIC. [Dkt. 166 at 1-4.]

6                      (i)    The Benefit to the Individual Settlement Class Members
7                             Is Not "*De Minimus*"

8          In this case, the Plaintiffs have consistently sought to recover alleged past

9    overcharges imposed by TLIC, rather than seeking a reversal of the MDR Increases

10   as a whole or the recovery of future overcharges. As the Court has noted above, the

11   Court views this approach as judicious, given (a) TLIC's undeniable contractual

12   right to impose MDR increases at its discretion, so long as such increases comply

13   with the applicable policy forms, so long as below the Policy's maximum

14   guarantees; and (b) this Court's past expressions of concern regarding the

15   infeasibility of injunctive relief, including mandated reinstatement without required

16   proof of insurability or a prohibition of future MDR increases in the event the

17   challenged MDR Increases were finally determined to be improper. The Court

18   appreciates Sher's desire to maximize Policyholder recovery from TLIC, but does

19   not concur that the Settlement should be measured against arguments based on

20   claimed damages which take the proof of liability and the availability of class-wide

21   injunctive relief as a certainty.

22         The Court accordingly overrules Sher's objection that the approximately $82

23   million post-exclusion In-Force Policies Settlement Common Fund is a *de minimus*

24   resolution of the class claims alleged in this Action. The Court is well-satisfied that

25   the monetary benefits of the Settlement alone reflect a fair and reasonable

26   compromise of the claims pursued by Plaintiffs, a conclusion significantly

27   reinforced by the value of the Settlement's non-monetary benefits. The Settlement

28

offers Settlement Class Members an immediate monetary benefit amounting to nearly 100% of the overcharges collected from Settlement Class Members by TLIC as a result of the challenged MDR Increases, as of December 31, 2019. This represents a significant economic benefit to Settlement Class Members—many of whom are elderly and may be at risk of losing their Policies during the course of prolonged litigation.

The Court furthermore declines to assess the benefit of the Settlement using Sher's estimate of the total amount TLIC will receive henceforth under the continued MDR Increases as a measure of "future damages." [Dkt. 166 at 4-6.] As just noted, this estimate of damages assumes that the "future damages" are a given without any consideration of the risk in establishing TLIC's liability, let alone speculation over how long Settlement Class Members Policies will remain in force.

Finally, even from this perspective, Sher estimates that its recovery under the Settlement is approximately 8-12% of its actual damages. [Dkt. 166 at 5.][8] The Court does not adopt this measure of Settlement value, but even if the proposed Settlement only provided recovery of 8-12% of the total alleged overcharges that could be collected by TLIC, the Court would still find the Settlement to be fair, reasonable and adequate given the risk of a non-liability determination at trial. *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000) (holding that settlement providing for roughly

---

[8] Sher is a No-Lapse Policyowner, however, and the ACE would keep the policy in force with payment of the same death benefit so long as the Sher continues to pay the Select Monthly Premium (and does not take an action that would remove the ACE protection).

1    one-sixth of the potential recovery was fair and adequate when considering the

2    difficulties in proving the case). !

3         Ultimately, while the Court understands Sher's heartfelt belief that a more

4    robust common fund would have been desirable, the Ninth Circuit has repeatedly

5    held that objections to the quantum of settlement benefits does not, absent a showing

6    that the settlement as a whole is unfair and unreasonable, provide a cognizable basis

7    to deny approval of a proposed class settlement. As the Ninth Circuit put it in

8    *Hanlon*, the question "is not whether the final product could be prettier, smarter or

9    snazzier, but whether it is fair, adequate and free from collusion." 150 F.3d at 1027.

10   The Court has no doubt that the proposed Settlement is indeed "fair, adequate and

11   free from collusion."

12             (ii)    There Is No Basis to Prevent TLIC from Assessing Other
                       Policy Charges

13

14        Sher contends that TLIC will recoup the In-Force Policies Settlement

15   Common Fund credits by increasing other charges TLIC is permitted to assess under

16   the Policy, referred to by Sher as "customary deductions." [Dkt. 166 at 6-8.] The

17   "customary deductions" Sher references are monthly deduction charges that escalate

18   automatically under the Policy contract as the insureds' ages increase each year,

19   irrespective of the challenged MDR Increases. Because these so-called "customary

20   deductions" are not at issue in this Action and are not the subject of or impacted by

21   the MDR Increases or the Settlement, this is not a valid ground on which to object

22   to the Settlement. Although, like Fearon, Sher argues that the seven-year moratorium

23   on future MDR Increases has no value, for the reasons explained above this Court

24   finds genuine value in the MDR Increase Protection Benefit.

             (iii)   The Class Notice was Adequate

25

26        Finally, Sher objects to the Class Notice as deficient because it "(a) gives

27   prominence to the payment to the class, which is small and obscures the real costs

28   to the class, which are large; and (b) creates the misleading impression that the

Policyowners are protected from further increases for 7 years." [Dkt. 166 at 9.] For the reasons previously explained, the payments to the Settlement Class Members do indeed provide a substantial economic benefit that is not overstated in the Class Notice. The Court further finds that the Class Notice adequately informed Settlement Class Members that the challenged MDR Increases would remain in effect and that the Settlement provided a seven-year moratorium on additional MDR Increases beyond those MDR Increases challenged in the Action.

(c)    **Vitale Objection**. John and Philomena Vitale were Policyowners as of the Policy Status Date and have standing to object to the Settlement. However, the Vitale Objection plainly raises individual issues unique to their dealings with TLIC, rather than taking issue with any particular aspect of the Settlement. [Dkt. 170 at 1-3]. The Court therefore overrules the Vitale Objection in its entirety, finding no grounds presented to disapprove a Settlement affording relief with respect to the MDR Increases for the rest of the Settlement Class as anything other than fair and reasonable.

9.    **Rule 23(e) Compliance.** Recent amendments to Rule 23 require the Court to assess several core considerations in approving a proposed class settlement; namely, whether:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

1

2    Fed. R. Civ. P. 23(e)(2). As these factors are largely subsumed under the traditional

3    Ninth Circuit analysis addressed at length above, the Court hereby expressly

4    confirms that these factors have been considered and support final approval of the

5    Settlement.

6        10.    **Final Settlement Approval and Binding Effect.** The terms and

7    provisions of the Settlement have been entered into in good faith, and are fair,

8    reasonable and adequate as to, and in the best interests of, the Parties and the

9    Settlement Class Members, and in full compliance with all applicable requirements

10   of the Federal Rules of Civil Procedure, the United States Constitution (including

11   the Due Process Clause) and the California Constitution. Therefore, the Settlement

12   is approved. The Settlement, this Final Approval Order and the Judgment shall be

13   forever binding on the Plaintiffs and all other Settlement Class Members, as well as

14   their heirs, beneficiaries, beneficiaries designated under the Policies, conservators,

15   personal representatives, executors and administrators, predecessors, successors and

16   assigns, and shall have *res judicata* and other preclusive effect in all pending and

17   future claims, lawsuits or other proceedings maintained by or on behalf of any such

18   persons, to the fullest extent allowed by law.

19       11.    **Implementation of Settlement.** The Parties are directed to implement

20   the Settlement according to its terms and conditions, subject to the following:

21       (a)    TLIC shall apply the Accumulation Value Payment to each In-

22   Force Class Policy on that Policy's monthiversary date within 60 days following the

23   Final Settlement Date. A Policy's monthiversary date is the date of the month that

24   TLIC processes the monthly deduction, which generally corresponds to the policy

25   date shown in TLIC's administrative system. If TLIC cannot apply the Settlement

26   Relief to an In-Force Policy through a credit to accumulation value (e.g. due to a

27

28

policy status change) within 60 days following the Final Settlement Date, TLIC shall have an additional 45 days to effectuate a check payment.

        (b)    For Terminated Policy Payments and Death Claim Payments, the Settlement Class Member will receive his or her share of the Settlement Common Funds by check. The check will be distributed by the Settlement Administrator, Rust Consulting, within 60 days of the Final Settlement Date, or as soon as practical in the event tax reporting calculations necessitate a longer period.

    12.   **Release.** The Release set forth in Section VIII of the Settlement Agreement is expressly incorporated herein in all respects, is effective as of the date of the entry of this Final Approval Order, and forever discharges the Releasees from any claims or liabilities released by the Settlement, including the Released Claims (as those terms are defined in the Settlement Agreement). This Release covers, without limitation, any and all claims for attorneys' fees and expenses, costs or disbursements incurred by Plaintiffs' Counsel or other counsel representing Plaintiffs or Settlement Class Members in this Action, the administration of the Settlement, and the Released Transactions, except to the extent otherwise specified in this Final Approval Order and the Settlement Agreement.

    In addition, also in accordance with the terms of Section VIII of the Settlement Agreement, this Final Approval Order expressly incorporates TLIC's release and discharge of Plaintiffs, Plaintiffs' Counsel, and Co-Lead Class Counsel, from and against any and all claims, causes of action, debts, liabilities, damages, restitution, equitable, legal and administrative relief, known and unknown, at law or in equity, whether brought directly or indirectly, arising out of or relating to the filing, prosecution, or resolution of claims against TLIC alleged in the Action.

    13.   **Permanent Injunction.** All Settlement Class Members are hereby permanently enjoined from filing, commencing, prosecuting, intervening in, participating in, maintaining, individually, as class members or otherwise, directly

or indirectly through a representative or otherwise, receiving any benefits from, or organizing or soliciting the participation in, directly or indirectly, any lawsuit (including putative class actions), arbitration, remediation, administrative or regulatory proceeding or order in any jurisdiction, asserting any claims based on or relating to the claims or causes of action or the facts and transactions alleged or pursued in the Action or released by the Settlement Agreement; and from organizing Settlement Class Members into a separate class for purposes of pursuing as a purported class action any lawsuit (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) asserting any claims released by this the Settlement Agreement. Nothing in this paragraph, however, shall require any Settlement Class Member to take any affirmative action with regard to other pending class action litigation in which they may be absent class members. The Court finds that issuance of this permanent injunction is necessary and appropriate in the aid of the Court's jurisdiction over the Action and its judgments.

14.    **Enforcement of Settlement.** Nothing in this Final Approval Order shall preclude any action to enforce the Settlement or interpret the terms of the Settlement Agreement. Any action which seeks to enforce or interpret the terms of the Settlement, or which seeks to interpret or avoid in any way any legal consequences of or the effect of the Settlement Agreement, the Preliminary Approval Order, this Final Approval Order, the Permanent Injunction contained in this Final Approval Order, or the Release contained in the Settlement Agreement shall be brought solely in this Court.

15.    **Modification of Settlement Agreement.** The Parties are hereby authorized, without needing further approval from the Court, to agree to and adopt such amendments to, and modifications and expansions of, the Settlement Agreement, if such changes are consistent with this Final Approval Order and do not

limit the rights of Settlement Class Members or any other person entitled to Settlement Relief under the Settlement Agreement.

16.     **Retention of Jurisdiction.** The Court has jurisdiction to enter this Final Approval Order and the Final Judgment. Without in any way affecting the finality of this Final Approval Order or the Final Judgment, for the benefit of the Settlement Class and TLIC, and to protect this Court's jurisdiction, the Court expressly retains continuing jurisdiction as to all matters relating to the Settlement, including but not limited to any modification, interpretation, administration, implementation, effectuation, and enforcement of the Settlement, the administration of the Settlement and Settlement Relief, including notices, payments, and benefits thereunder, the Class Notice and sufficiency thereof, any objection to the Settlement, any request for exclusion from the Settlement Class, the adequacy of representation by Co-Lead Class Counsel and/or the Class Representatives, the amount of attorneys' fees and litigation expenses paid to Plaintiffs' Counsel, the amount of any service awards to be paid to any Plaintiff, any claim by any person or entity relating to the representation of the Settlement Class by Co-Lead Class Counsel, to enforce the release and injunction provisions of the Settlement and of this Final Approval Order and Final Judgment, any remand after appeal or denial of any appellate challenge, any collateral challenge made regarding any matter related to this litigation or this Settlement or the conduct of any party or counsel relating to this litigation or this Settlement, and all other issues related to these Action and Settlement.

17.     **Dismissal of Action.** The Action is hereby dismissed on the merits and with prejudice, without an award of attorneys' fees or costs to any party except as provided in the Court's separately entered Order Approving Award of Common Fund Payment of Attorney's Fees, Payment of Litigation Expenses, and Service Awards.

1    **WHEREFORE,** the Final Approval Motion is **GRANTED** on the terms set

2    forth in this Final Approval Order, and the Parties and their counsel are directed to

3    implement and consummate the Settlement according to the terms set forth in the

4    Settlement Agreement.

5        **IT IS SO ORDERED.**

6

7    DATED: September 16, 2020    ____

8    HONORABLE CHRISTINA A. SNYDER
     UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

| POLICY NUMBERS | | | |
|---|---|---|---|
| 60038859 | 60032840 | 60048634 | 60060038 |
| 60016235 | 60034466 | 60050480 | 60061416 |
| 60017054 | 60036431 | 60051951 | 60061942 |
| 60024441 | 60037356 | 60052215 | 60062342 |
| 60026271 | 60038829 | 60052678 | 60062405 |
| 60027443 | 60039427 | 60053023 | 60063686 |
| 60027802 | 60039642 | 60053031 | 60065549 |
| 60028530 | 60040594 | 60053035 | 60076886 |
| 60029064 | 60041359 | 60053037 | 60081337 |
| 60029141 | 60042712 | 60053282 | 60082867 |
| 60029381 | 60042947 | 60054501 | 60092732 |
| 60030479 | 60044185 | 60055948 | 60112471 |
| 60030922 | 60044234 | 60057581 | |
| 60031264 | 60044282 | 60057877 | |
| 60031487 | 60045228 | 60059035 | |
| 60032396 | 60045500 | 60059287 | |
| 60032605 | 60048270 | 60059431 | |