**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GAIL THOMPSON, et al.,<br><br>        Plaintiffs,<br><br>vs.<br><br>TRANSAMERICA LIFE INSURANCE COMPANY,<br><br>        Defendant. | Case No. 2:18-cv-05422-CAS-GJSx<br><br>CLASS ACTION<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR COURT APPROVAL OF COMMON FUND PAYMENT OF ATTORNEYS' FEES, LITIGATION EXPENSES, AND SERVICE AWARDS [Dkt. 156]**<br><br>Judge:    Hon. Christina A. Snyder |

1 This matter having come before the Court in the above-captioned action ("the Action") on Plainitffs' Notice of Motion and Motion for Court Approval of Common Fund Payment of Attorneys' Fees, Litigation Expenses, and Service Awards (Dkts. 156, 157 (collectively, "the Motion")), the Court having reviewed and considered the Motion, the supporting Joint Declaration of Co-Lead Class Counsel (Dkt. 158), the supporting Declarations of Plaintiffs' Counsel (Dkts. 159, 160, 161, 162, 163), all perceived objections to any aspect of the Motion filed with the Court (Dkts. 164 ("the Terry/Peck Objection"), 166 (the "Sher Objection"), 170 (the "Vitale Objection")), Plaintiffs' responses to the foregoing objections (Dkts. 176, 177), Plaintiffs' supporting Supplemental Declarations (Dkts. 185, 186, 187), and arguments presented by counsel at the hearing on the matter held on August 31, 2020 (Dkt. 193 ("the Hearing")), the Court hereby ORDERS, ADJUDGES, and DECREES that the Motion be GRANTED in its entirety, for the following reasons.

The Court has fully assessed and finds fair and reasonable the common fund payment to Plaintiffs' Counsel of $19 million in attorneys' fees plus $350,264.27 in litigation expenses, the first $8 million of which is to be paid by Defendant Transamerica Life Insurance Company ("TLIC") in accordance with the terms of the Settlement Agreement as the "TLIC Fee and Expense Contribution." (Dkt. 143-1 ¶ 72(g)).

Where, as here, "a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). "[T]he choice between lodestar and percentage calculation depends on the circumstances, but . . . 'either method may . . . have its place in determining what would be reasonable compensation for creating a common fund.'" *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (third alteration in original) (quoting *Paul, Johnson,*

1

*Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). To guard against an unreasonable result, the Ninth Circuit encourages district courts to "cross-check[] their calculations against a second method." *In re Bluetooth,* 654 F.3d at 944; *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050–51 (9th Cir. 2002) (applying a lodestar cross-check to ensure the percentage-of-recovery method yielded a reasonable result).

For the percentage-of-recovery method, 25% of a common fund is in the Ninth Circuit considered a presumptively reasonable amount of attorneys' fees. *See, e.g.*, *In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); *Six (6) Mexican Workers*, 904 F.2d at 1311 ("[W]e established 25 percent of the fund as the 'benchmark' award that should be given in common fund cases."). That said, "[t]he 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases." *Vizcaino*, 290 F.3d at 1048.

The Court finds that the requested Plaintiffs' Counsel's attorneys' fees and Plaintiffs' Counsel's expenses are fully supported as a percentage of the overall benefit conferred on the Settlement Class by the Settlement, achieved solely through Plaintiffs' Counsel's efforts, the estimated value of which is substantially greater than the net Settlement Common Fund by virtue of the additional forms of Settlement Relief. TLIC agreed to afford immediate settlement benefits to the members of the Settlement Class with a combined objectively determined value of $98.5 million, subject to reduction of the In-Force Policies Settlement Common Fund based the requests for exclusion received. (Dkt. 158 ¶ 38). Only 63 requests for exclusion from the Settlement were received, which resulted in a modest reduction to the In-Force Policies Settlement Common Fund of $5,632,246.68. (Dkt. 177 ¶ 4). Taking this reduction into account, the combined objectively determined value of the immediate settlement benefits afforded to Settlement Class

2

Members is $92.9 million. The Court is confident that $92.9 million is a conservative value of the benefits made available by the Settlement, for it does not include the value of the other Settlement Relief generated by Plaintiffs' Counsel in the form of prospective relief, namely that:

- TLIC has agreed that it will not impose any additional MDR increase(s) on any Class Policy within seven (7) years of the Execution Date, unless ordered to do so by a state regulatory body (the "MDR Increase Protection Benefit"). (Dkt. 143-1 ¶ 72(e)).
- TLIC has agreed it will not seek to void, rescind, cancel, have declared void, or otherwise deny coverage or death claims submitted by Settlement Class Members based on any alleged lack of insurable interest or misrepresentations made in connection with the original application process (the "Non-Contestability Benefit"). *Id*. ¶ 72(f).

Accordingly, Plaintiffs' Counsel's requested attorneys' fees equal to only approximately 20% of the amount of the net Settlement Common Fund remaining after reduction for opt-outs (significantly below the 25% benchmark recognized in the Ninth Circuit), which equates to an effective percentage reduction of only 13% of the In-Force Policies Settlement Common Fund and Terminated Policies Settlement Common Fund when the $8 million TLIC Fee and Expense Contribution is taken into account.

The Court furthermore finds a $19 million fee to be a reasonable percentage of the overall value of the benefits obtained by Plaintiffs' Counsel, given (1) the results achieved, (2) the risk of litigation, (3) the skill required and the quality of work, (4) the contingent nature of the fee and the financial burden carried by the plaintiffs, and (5) awards made in similar cases. Here, the $92.9 million in immediate monetary value afforded by the Settlement, standing alone, exceeds the cash settlements in many other major COI class cases involving a greater number policyowners (meaning that the average recovery per class member was less in those cases). *See, e.g.*, *In re Conseco Life Ins. Co. Lifetrend Ins. Sales & Marketing*

3

*Litig.*, No. 3:10-M 02124-SI (N.D. Cal.), Dkts. 496 at 1, 526 at 3 (approving settlement in COI litigation that provided $27 million in benefits (mostly in the form of injunctive relief) and did not create a settlement common fund to refund past overcharges); *Fleisher v. Phoenix Life Ins. Co.*, Nos. 11-cv-8405 (CM), 14-cv-8714 (CM), 2015 WL 10847814, at *10 (S.D.N.Y Sept. 9, 2015) (approving settlement where settlement common fund provided $34,759,820.88 in cash payments to class members, amounting to 68.5% of the plaintiffs' overcharge damages); *37 Besen Parkway v. John Hancock Life Ins. Co. (U.S.A.)*, No. 1:15-cv-09924-PGG-HBP (S.D.N.Y.) Dkts. 143 at 18, 161 at 3 (approving settlement providing for $91.25 million cash payment to policyholders in challenge to life insurance company's cost of insurance rates, amounting to approximately 42% of overcharges). Furthermore, here the gross monetary settlement benefits equate to a refund of 100% of the past overcharges paid by the Class Members through the Settlement Agreement's Execution Date. (Dkt. 158 ¶ 52). Moreover, the Settlement Agreement achieves a result that is not only outstanding but expeditious as well. Expediency is essential given the advanced age of many Settlement Class Members, the growing numbers of lapsed or surrendered Policies and the inevitable lengthy delays were the case to be litigated to conclusion.

  Plaintiffs' Counsel are not only highly experienced in class action litigation generally, but also in COI litigation specifically. This enabled Co-Lead Class Counsel to formulate a targeted discovery program that cut to the crux of the dispute in a highly cost-effective manner. Plaintiffs' Counsel undertook the litigation despite the risk that resolution of the issue would no doubt devolve into a "battle of the experts" with respect to actuarial standards, as well as divergent expert opinions concerning the original and revised pricing assumptions used by TLIC for the insurance products at issue, the methodologies and assumptions used by TLIC to determine the MDR Increases and the reasonableness of TLIC's assumed expectations concerning the future profitability of the Policies. Plaintiffs'

Counsel nevertheless assumed the risk of representation, including devoting millions of dollars in attorney time and advancing $350,264.27 in potentially non-recoverable litigation expenses, on a completely contingent basis.

For purposes of a lodestar cross-check, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). The district court may adjust this lodestar figure "upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors." *Id.* at 941–42.

This Court has reviewed at length Plaintiffs' Counsel's lodestar submissions in support of their application. Based on those uncontradicted submissions, the Court finds Plaintiffs' Counsel's hourly rates reasonable for complex class action litigation in Los Angeles. The Court also finds the rates charged by Plaintiffs' Counsel consistent with the hourly rates approved in *Feller v. Transamerica Life Ins. Co.* ("*Feller*"), No. 16-cv-01378 CAS (GJSx), 2019 WL 6605886 (C.D. Cal. Feb. 6, 2019), *In re American Equity Annuity Practices and Sales Litig.*, No. CV-05-6735-CAS-MAN (C.D. Cal.), *In re Midland National Life Insurance Co. Annuity Sales Practices Litigation*, No. 2:07-ml-01825-CAS-MAN (C.D. Cal.), and *Negrete v. Fidelity & Guarantee Life Ins. Co.*, No. 05-6837-CAS (MANx) (C.D. Cal.). The hourly rates are commensurate with the skill and experience of the participating attorneys and their legal support.

Likewise, the amount of time devoted to the Action was reasonable, given TLIC's vigorous defense of Plaintiffs' claims. Plaintiffs' Counsel has submitted evidence supporting the total number of hours they devoted to this litigation. In their submissions, Plaintiffs' Counsel provided detailed charts that segregate their time by individual attorney and support personnel, identifying the position of the attorney or support personnel, and their current hourly rates. The charts further

1  segregate each individual's time by twenty-two separate litigation tasks. According
2  to their submissions, Plaintiffs' Counsel firms and attorneys have collectively
3  devoted 6,655.1 hours of attorney and litigation support time to this litigation.
4  Based upon their contemporaneous internal billing records, Plaintiffs' Counsel
5  calculates a total lodestar as of August 19, 2020 of $4,438,700.50. The evidence
6  shows that Plaintiffs' Counsel exercised sound billing practices in a complex case
7  they had to litigate for years against able defense counsel.

8      The Court has observed the zeal with which Co-Lead Class Counsel
9  prosecuted this action in particular, and the Co-Lead Class Counsel's skilled
10 representation of the putative litigation class and the Settlement Class throughout
11 that time. The representation was undertaken on a wholly contingent-fee basis, with
12 no assurance that Plaintiffs' Counsel would be compensated for their efforts on
13 behalf of the Class. It was in this challenging context that Co-Lead Class Counsel
14 succeeded in negotiating a highly beneficial Settlement for the Settlement Class.

15     The Court has furthermore carefully reviewed the task-based summary of
16 Plaintiffs' Counsel's time in this case, submitted by Plaintiffs' Counsel in addition
17 to their overall time and expenses. The Court finds that the role of Plaintiffs'
18 Counsel is adequately set forth and described in Plaintiffs' Counsel's task-based
19 summary and that the hours spent by them were reasonable, appropriate and
20 necessary to the effective and efficient prosecution of this complex and hotly
21 contested litigation. The Court accepts the submissions of Plaintiffs' Counsel.

22     The Court's lodestar cross-check analysis of the fee award yields a current
23 multiplier of 4.2, which is within the range of appropriate multipliers recognized
24 by this Court and by other courts within the Ninth Circuit. *See, e.g.*, *Craft v. Cty.*
25 *of San Bernardino*, 624 F. Supp. 2d 1113, 1123 (C.D. Cal. 2008) (approving a
26 multiplier of 5.2); *McGrath v. Wyndham Resort Dev. Corp.*, No. 15cv1631 JM
27 (KSC), 2018 WL 637858, at *10 n.7 (S.D. Cal. Jan. 30, 2018) (approving multiplier
28 of 4.8); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2013 WL

1365900, at *13 (N.D. Cal. Apr. 3, 2013) (approving multiplier of up to 5.22); *Gutierrez v. Wells Fargo Bank N.A.*, No. C 07-05923 WHA, 2015 WL 2438274, at *7 (N.D. Cal. May 21, 2015) (noting that "this order allows a multiplier of 5.5 mainly on account of the fine results achieved on behalf of the class, the risk of non-payment they accepted, the superior quality of their efforts, and the delay in payment"). The Court further finds that this cross-check multiplier is particularly justified by the efficiencies achieved in this case based on Co-Lead Class Counsel's extensive experience in litigating cost of insurance cases, including the earlier *Feller* case before this Court. In addition, the ultimate multiplier applicable to Plaintiffs' Counsels' lodestar will be reduced by future time that will necessarily be devoted by Plaintiffs' Counsel in connection with further communications with Settlement Class Members and any post-judgment proceedings.

The Court has also considered but overrules all objections to the Motion to the extent discernable from the Terry/Peck LLC Objection, the Sher Objection, and the Vitale Objection. In particular, the Court finds the requested fee award is commensurate to the value of the benefits achieved by Plaintiffs' Counsel for the Settlement Class. Even though it has elsewhere ordered the Terry/Peck LLC Objection stricken, the Court upon independent consideration rejects in particular the argument of the Terry/Peck LLC Objectors at the Hearing that the reasonableness of the fee award should be determined only by comparison to the Terminated Policies Settlement Common Fund, rather than to the overall benefits of the Settlement, including the value of the Settlement Common Funds, the MDR Increase Protection Benefit, the Noncontesability Benefit, and the TLIC Fee and Expense Contribution.

The Court has also reviewed and approved for common fund payment $350,264.27 in litigation expenses, which Plaintiffs' Counsel have fully documented. All submitted expenses are of the sort typically billed by attorneys to paying clients. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). The Court notes

7

that because Plaintiffs' Counsel advanced all of these necessary expenses without assurance that they would ever be recouped, they had every incentive to economize and otherwise avoid unreasonable expenditures.

Accordingly, given the foregoing factors and the result obtained for the Settlement Class, the Court finds the common fund payment of Plaintiffs' Counsel's attorneys' fees and expenses to be reasonable, and approves common fund payment to Co-Lead Class Counsel of attorneys' fees in the amount of $19,000,000, plus litigation expenses in the amount of $350,264.27. The Court directs TLIC to pay the first $8,000,000 of the foregoing $19,350,264.27 in total approved payments directly to Co-Lead Class Counsel within 14 days of this Final Approval Order, and the balance 14 days after the Final Settlement Date, all in accordance with the provisions of the approved Settlement Agreement. (Dkt. 143-1 ¶ 105).

Co-Lead Class Counsel will determine the amount of fees and expenses approved by the Court to be paid to other Plaintiffs' Counsel. The Court will retain sole and exclusive jurisdiction to resolve any disagreements among Plaintiffs' Counsel concerning allocation of their individual shares of the fees and expenses awarded by this Order. Disagreements between or among Plaintiffs' Counsel will have no impact on the effectiveness or the implementation of the Settlement Agreement, nor will such disagreements have any impact on or result in any increase of the obligations imposed upon TLIC by the Court's Order approving the Settlement Agrement.

The Court approves payment of $10,000.00 service awards to each of the Plaintiffs to be paid by TLIC as provided in the Settlement Agreement:

- Gail Thompson,
- Hans Sunder in his capacity as Trustee for the Sunder Irrevocable Trust,
- Debra Lewis,

8

- Diana Lewis,
- Michael H. Stephens,
- Belinda Bucci in her capacity as Trustee of the Nancy And Charles Barcelona Irrevocable Trust dated May 12, 1998,
- Sandra Rosner in her capacity as Trustee of the Rosner 1998 Irrevocable Trust Dated May 19, 1998,
- Kathleen M. Swift, and
- Marc Soble in his capacity as Trustee for the Marilyn B. Soble Irrevocable Trust Dated November 19, 1997.

Based on the declarations of Class Counsel submitted in support of final settlement approval, Plaintiffs have actively participated and assisted Class Counsel in this litigation for the substantial benefit of the Settlement Class despite facing significant personal limitations. Each has waived his or her right to pursue potential individual claims or relief based on the same factual predicate as in the Action. The service awards are premised on the Plaintiffs' pre-Settlement contributions, and were in no way conditioned upon support for the proposed Settlement. Apart from these service awards, the Plaintiffs will receive no settlement payments or benefits of any nature other than their share of the Settlement Relief available to the Settlement Class generally. These service awards are approved to compensate the Plaintiffs for the burdens of their active involvement in this litigation and their commitment and effort on behalf of the Class. As provided in the Settlement Agreement, the Court directs TLIC to pay the foregoing service award payments within 14 days after the Final Settlement Date and receipt from each Plaintiff of an IRS Form W-9 and wire or check mailing instructions. (Dkt. 143-1 ¶ 108).

    The Court retains jurisdiction to enforce or otherwise adjudicate any dispute regarding the terms of this Order.

DATED: September 16, 2020

*Christina A. Snyder*
The Honorable Christina A. Snyder
United States District Court Judge

9